23 CV 5212

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MAURICE OPARAJI,<br>Plaintiff,<br>-against-<br>TEACHERS' RETIREMENT SYSTEM OF THE CITY OF NEW YORK ("TRS"), BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF CITY OF NEW YORK, PATRICIA REILLY, SANFORD R. RICH, MELANIE WHINNERY,<br>Defendant. | **Verified Complaint for a Civil Case**<br><br>Case No.<br><br>JURY TRIAL DEMANDED ON ALL COUNTS TRIABLE |

2023 JUN 20 PM 1:25

1. Plaintiff Maurice Oparaji ("Plaintiff") hereby brings this action against Teachers' Retirement System of the City of New York ("TRS"), the Board of Education of the City School District of New York ("BOE"), Patricia Reilly, Sanford R. Rich, and Melanie Whinnery.

2. This action seeks injunction relief and compensatory damages against Teachers' Retirement System of the City of New York Teachers' Retirement System of the City of New York ("TRS"), the Board of Education of the City School District of New York ("BOE"), Patricia Reilly, Sanford R. Rich, and Melanie Whinnery for discrimination against plaintiff and refusal to comply with the Stipulation and Order So Ordered by the United States District Judge, Kimba m. Wood on December 17, 2018. **Exhibit A.**

1. This document was prepared with assistance from the New York Legal Assistance Group's Legal Clinic for Pro Se Litigant's in the SDNY.

3. In 1996 plaintiff was employed as a teacher with the Board of Education of the City School District of New York ("BOE").
4. At the time, the Board of Education of the City School District of New York required permanent teachers to pass various iterations of the Liberal Arts and Sciences Test ("LAST") as a condition of employment, even though the tests were not properly validated and had a disparate impact on plaintiff and other African-American and Latino teachers.
5. As a result, plaintiff was denied permanent teacher position, and eventually lost the teaching position with the Board of Education of the City School District of New York.
6. In 2012, the District Court found that the Board of Education of the City School District of New York's use of the LAST violated Title VII, and in 2013, it certified a remedy-phase class.
7. Since then, the Court enjoined defendant from using the test to make hiring decisions and has ordered that certain class members, including plaintiff be deemed certified for the purposes of BOE hiring decisions.

The District Court ordered that plaintiff and other class members be entitled to pension damages to compensate them for pension benefits that they would have received absent the discrimination for which defendant has been found liable. *See*

38. On January 3, 2022, plaintiff received a "Welcome to TRS" letter and TRS News Publication.

39. On Jun 22, 2022 at 4:28 PM, plaintiff received an email that states "Once a review of your case is completed, you will be notified in writing".

40. Since then, plaintiff has made at least 50 calls, yet received no response from Teachers' Retirement System of the City of New York; hence this complaint.

41. Plaintiff Maurice Oparaji filed and received a Notice of Claim from the City of New York Office of the Comptroller on September 30, 2022, Claim Number: 2022LW027731.

## STATEMENT OF CLAIM

42. The United States District Judge (the Honorable Kimba M. Wood) so-ordered the Pension Stipulation & Order on December 17, 2018. [ECF No. 1014]). On September 9, 2021, Maurice Oparaji, Sr., a class member in a Title V11 class-action (No. 96 CV 8414 (KMW), entered into agreement with the New York City Teachers' Retirement System ("TRS"), the Board of Education Retirement System ("BERS"), and the New York City Employee Retirement System ("NYCERS"). **Exhibit A.**

43. On or about December 17, 2021, plaintiff received a Voucher to make a full payment amount of $2,575.65 from the TRS. "Once the deficit in employee contributions is computed, the Affected System will provide written notice to

contributions is computed, the Affected System will provide written notice to these class members of the amount due and instructions for payment of the amount". **(¶49 p. 18).**

44. On or about December 23, 2021, plaintiff made a full payment amount of $2,575.65 to the TRS. "These class members will then pay the amount to the Affected System within ninety (90) days of the Affected System mailing the notice. For purposes of these computations, the counterfactual service rendered by the class member will be deemed to be service in the position that rendered the class member eligible to participate in the Affected System. **(¶49 p. 18).**

45. The BOE will be responsible for paying the remaining 16% of unpaid employee contributions into a class member's account with the Affected System as identified and invoiced by the Affected System-to compensate class members for their contributions being made on a post-tax basis, when absent the BOE's discrimination these contributions would have been made on a pre-tax basis". ((**¶50 p. 20**).

46. The BOE failed to pay the remaining 16% of unpaid employee contributions into plaintiff's account as contained in the Pension Stipulation & Order. (**¶50 p. 20**).

47. Because the BOE failed to pay the remaining 16% of unpaid employee contributions into plaintiff's account as contained in the Pension Stipulation & Order, the TRS denied pension relief to plaintiff pursuant to this Stipulation & Order. **Exhibit A.**

62.Defendants have willfully and without lawful justification refused to comply the December 17, 2018.Pension Stipulation & Order.

63.Defendants' unlawful conduct has damaged plaintiff in an amount exceeding $10,000,000.

**PRAYER FOR RELIEF**

64. **WHEREFORE**, plaintiff prays for the following:

A. An order prohibiting defendants from future breach of contract;

B. An order requiring defendants to comply with the Pension Stipulation & Order;

C. An award of Compensatory Damages;

D. An award of Punitive Damages;

E. Interest and costs; and

F. Such further relief as this Court may deem just and equitable.

Dated: June 20, 2023

MAURICE OPARAJI
245-11 133 Road
Rosedale, NY 11422
(347) 283-6009
mroparaji@yahoo.com

**State of New York**
**County of New York**

Sworn to before me this

20th day of June, 2023

**Notary Public**
Omar Luciano
Notary Public, State of New York
Reg. No. 04LU6435950
Qualified in New York County
Commission Expires July 5, 2026

To: TEACHERS' RETIREMENT SYSTEM
OF THE CITY OF NEW YORK ("TRS"),
55 Water Street
New York, NY 10041
(888) 869-2877.
(212) 918-9253

BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF CITY OF NEW YORK
65 Court Street
Brooklyn, NY 11201
(718) 935-2200

PATRICIA REILLY
55 Water Street
New York, NY 10041
(888) 869-2877.
(212) 918-9253

SANFORD R. RICH
65 Court Street
Brooklyn, NY 11201
(718) 935-2200

MELANIE WHINNERY
335 Adams Street, Suite 2300
Brooklyn, NY 11201
(347) 643-3000

# EXHIBIT

# A

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________
DATE FILED: 12/17/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELSA GULINO, MAYLING RALPH, PETER WILDS, and NIA GREENE, on behalf of themselves and all others similarly situated,

Plaintiffs,

- against -

THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,

Defendant.

96 Civ. 8414 (KMW)

**STIPULATION AND ORDER**

**WHEREAS:**

1. The Court in this Title VII class action has ordered that class members are entitled to pension damages to compensate them for pension benefits that they would have received absent the discrimination for which the Defendant Board of Education of the City School District of the City of New York ("BOE") has been found liable.[1] To facilitate the provision of these damages and benefits, the signatories agree to the following protocols and procedures. By agreeing to this Stipulation & Order, however, the BOE and Plaintiffs do not waive any other objections they have made to date in this action, or any rights related to those objections.

2. The New York City Teachers' Retirement System ("TRS"), the Board of Education Retirement System ("BERS"), and the New York City Employee Retirement System

[1] *See Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, No. 96-CV-8414 (KMW), 2016 WL 4129111, at *3 (S.D.N.Y. Aug. 3, 2016) ("[T]he parties agree that class members are entitled to the lost pensions they would have received absent the discriminatory LAST.").

("NYCERS")—public pension systems in which a portion of the plaintiff class are current or retired members—consent to those protocols and procedures detailed below that pertain to them.[2]

3. The pension relief a class member is entitled to receive as a result of this case derives from the service history he or she would have accrued and the salary he or she would have earned absent BOE discrimination (the "counterfactual" service and salary history), as determined by the parties' damages experts and found by the Court, as detailed in the class member's individual judgment award.

4. As described below, regularly appointed BOE Teachers who are members of TRS pursuant to Article 15 of the Retirement and Social Security Law ("RSSL"): (1) make contributions to, and accrue benefits from, the TRS Qualified Pension Plan ("QPP"); (2) select, or are mandated to join, supplementary early-retirement plans, depending on membership date; (3) select beneficiaries for certain benefits; and (4) upon retirement, select a retirement-payment option. Due to the BOE's discrimination, certain class members were denied the opportunity to accrue these benefits or make these selections, including class members who have passed away without having made selections.

<u>Employee and Employer Contributions to TRS</u>

5. BOE employees who join TRS are required to make certain employee contributions to TRS QPP accounts.

[2] TRS, BERS, and NYCERS are non-parties that have consented to the terms of this Stipulation & Order that pertain to them and for which consent has not been expressly withheld. TRS, BERS, and NYCERS have consented to these terms solely for the purpose of effectively administering the pension relief due to class members. TRS, BERS, and NYCERS were not parties to the discrimination for which the BOE has been found liable and take no position on the litigation.

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 3 of 52

a. BOE employees who joined TRS after August 31, 1983, but prior to April 1, 2012, are Tier IV members and contribute, generally on a pre-tax basis,[3] 3% of their BOE annual wages to TRS for the first ten (10) years of their credited service. Eligible Tier IV TRS members who opted into, or were mandated to enter, supplementary early-retirement plans make additional member contributions ("AMC"s) above this 3% contribution amount.

b. BOE employees who became TRS members on or after April 1, 2012, without prior public service entitling them to Tier IV membership, are Tier VI members and contribute between 3% and 6% of annual wages to their QPP accounts, depending on the amount of their wages, for the entirety of their credited service with TRS. Tier VI TRS members are not eligible for any supplementary early-retirement plans.[4]

6. In addition, the BOE makes actuarially determined contributions to TRS to fund the pension benefits that TRS members employed by the BOE accrue pursuant to the RSSL and other applicable law.

7. Class members who were unable to join TRS due to the BOE's discrimination will not have made any employee contributions to TRS.

8. Class members who were able to join TRS, and made employee contributions to their QPP accounts during their counterfactual service period, may have made contributions for fewer years and based on lower BOE salaries than would have been the case absent BOE discrimination. Consequently, when a class member's TRS QPP account is adjusted to reflect

[3] These contributions are pre-tax with respect to federal income taxes, but post-tax with respect to New York state and local income taxes. Wherever the phrases "pre-tax" or "post-tax" appear in this Stipulation & Order, they refer solely to the tax treatment of contributions under federal tax law.

[4] TRS members who do not participate in a supplementary early-retirement plan are referred to herein as "basic" members of Tier IV or Tier VI, and the contributions made and benefits received by these members are likewise referred to as "basic."

counterfactual-service-and-salary history, pursuant to the procedures set forth herein, there may be a deficit in historical employee contributions.

9. Class members who were able to join TRS during their counterfactual service period and made contributions to their QPP account during that period may have joined TRS as Tier VI members when they would have been Tier IV members absent BOE discrimination. As Tier VI members, these class members may have made contributions to TRS at rates that exceed Tier IV rates, and if these class members are reclassified as Tier IV members, there may be a surplus in employee contributions in their accounts.

Employee and Employer Contributions to Other Affected Retirement Systems

10. A number of class members, after suffering from BOE discrimination, obtained or maintained employment in positions that permitted or required participation in NYCERS or BERS. The protocol and procedures laid out in this Stipulation & Order afford these class members relief for the pension benefits they were denied, if any, due to BOE discrimination while allowing these class members to remain NYCERS or BERS members.

11. Members of NYCERS or BERS are required, upon joining, to make employee contributions to their pension accounts.[5] Specifically, all NYCERS or BERS members who joined the system on or after August 31, 1983, but prior to April 1, 2012, and are subject to Article 15 of the RSSL are Tier IV members and contribute, generally on a pre-tax basis, 3% of their annual wages to their retirement system for the first ten (10) years of their credited service. Under the RSSL, and to the extent these Tier IV NYCERS and BERS members do not participate in any

[5] New York City Police officers and firefighters are required to join, respectively, the New York City Police Pension Fund and the New York City Fire Department Pension Fund. To the extent class members participate in these funds and are eligible to receive a pension remedy pursuant to this Stipulation & Order, these pensions shall constitute "Outside Pensions," as that term is defined in Paragraph 43 of this Stipulation & Order, and the remedy available to these class members is set forth in Paragraph 61 of this Stipulation & Order.

supplementary early-retirement plan, as described below, the service-retirement benefits these members receive are identical to those of basic TRS Tier IV members.

12. All NYCERS or BERS members who joined the system on or after April 1, 2012, without prior public service entitling them to Tier IV membership, and who are subject to Article 15 of the RSSL, are Tier VI members and contribute between 3% and 6% of annual wages to their member accounts, depending on the amount of their wages, for the entirety of their credited service with the system. Under the RSSL, and to the extent these Tier VI NYCERS and BERS members do not participate in any supplementary early-retirement plan, as described below, the pension benefits these members receive are identical to those of basic TRS Tier VI members.[6]

13. As described below, eligible Tier IV and Tier VI members of NYCERS or BERS who opted into, or were mandated to enter, supplementary early-retirement plans make AMCs in addition to their basic employee contributions. The structure of some of these supplementary early-retirement plans, as set forth in the RSSL and described in Paragraph 27 of this Stipulation & Order, closely resembles that of the supplementary early-retirement plans available in TRS.[7]

14. Class members who were unable to join TRS due to BOE discrimination, but were able to secure positions resulting in membership in NYCERS or BERS may have made contributions, including AMCs, to NYCERS or BERS for fewer years and based on lower salaries than would have been the case absent BOE discrimination. Consequently, when these class members' accounts at their retirement system are adjusted to reflect counterfactual-service-and-salary history, pursuant to the procedures set forth herein, there may be a deficit in historical

[6] BERS and NYCERS members who do not participate in a supplementary early-retirement plan are referred to herein as "basic" members of BERS and NYCERS Tier IV or Tier VI plans, and the contributions made and benefits received by these members are likewise referred to as "basic."

[7] Certain other supplementary early-retirement plans administered by NYCERS and BERS do not closely resemble those available in TRS. These plans are described in Footnote 9 *infra*.

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 6 of 52

employee contributions. The deficit in historical AMCs may include amounts that these class members would not have paid as TRS members during the counterfactual service history, but that would have been required under the relevant NYCERS or BERS plans during that period of time if class members' counterfactual service is deemed to have been rendered in the positions that are the basis for their membership in NYCERS or BERS.

15. Class members who were able to join BERS or NYCERS during their counterfactual service period and made contributions to their member accounts during that period may have joined NYCERS or BERS as Tier VI members when they would have been Tier IV members absent BOE discrimination. As Tier VI members, they may have made contributions to NYCERS or BERS at rates that exceed Tier IV rates, and if these class members are reclassified as Tier IV members there may be a surplus in employee contributions in their accounts.

<u>Interest Accrued on Employee Contributions</u>

16. Ordinarily, when an account of a member of TRS, BERS, or NYCERS (collectively, the "Affected Systems") is adjusted to reflect additional past credited service, the member must pay employee contributions, including AMCs, attributable to that service, as well as interest on these delayed contributions. By law, interest on delayed employee contributions accrues at five percent (5%) per annum, compounded annually.

17. Because class members were either unable to participate in TRS or accrued reduced pension benefits due to BOE discrimination, when their Affected System accounts are created or adjusted to reflect counterfactual service and salary history, there will be statutory interest charges on the class members' delayed contributions that would not exist had the class members secured TRS-mandated positions with the BOE on their counterfactual appointment dates absent discrimination.

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 7 of 52

Tax Adjustment for Employee Contributions

18. As noted above, employee contributions to the Affected Systems that are attributable to ongoing employment are generally made pre-tax out of employees' paychecks in the normal course. Under the pension-relief structure described herein, however, class members will receive backpay awards from Defendant without historical-employee-pension contributions having been withheld and paid to TRS on a pre-tax basis. Class members who receive a pension remedy through one of the Affected Systems will then be required to pay employee contributions to the Affected System attributable to counterfactual service and salary out of their backpay awards. The employee contributions, having been paid to class members in backpay awards, will be taxed as ordinary income. Consequently, as a result of BOE discrimination, these class members will make contributions to the Affected Systems on a post-tax, rather than pre-tax, basis.

Supplementary Early-Retirement Plans in the Affected Systems

19. On February 27, 2008, Chapter 19 of the Laws of 2008 ("Chapter 19") amended the RSSL and the New York City Administrative Code to establish supplementary early-retirement programs to permit regularly appointed BOE teachers to retire prior to age 62.

20. Regularly appointed BOE teachers who were either: (a) in active service as of February 27, 2008; or (b) not in active service on February 27, 2008, but were entitled to a deferred vested benefit[8] based upon service rendered prior to that date and who returned to active service, were entitled to opt in to the "55/25 Plan." Under the 55/25 Plan, eligible TRS members who opted in to the program and paid AMCs, as set forth in the RSSL, could retire at age 55 if they have 25 or

[8] "Deferred vested" members of an Affected System are members not in active service, who have vested benefits, based upon credited service, and who will be eligible to receive a pension at normal retirement age. *See* RSSL § 612.

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 8 of 52

more years of credited service and would receive the same benefit as a basic Tier IV member retiring with the same amount of credited service at age 62.

21. Under Chapter 19, TRS members eligible to opt in to the 55/25 Plan had 180 days from the date of enactment to opt in to the 55/25 Plan (the "Enrollment Period"). Eligible members who did not elect to join the 55/25 Plan remained in the basic Tier IV plan, under which individuals could retire at age 62 provided that they had rendered at least 5 years of credited service, or at age 55 provided they had 30 or more years of credited service, without any reduction in benefits.

22. Regularly appointed BOE teachers who became members of TRS after February 27, 2008 and who had previously been members of a public retirement system of the State of New York prior to the enactment of Chapter 19, but were not eligible to receive a deferred vested benefit as a result of their service, were eligible to opt in to the "55/27 Plan." Under the 55/27 Plan, eligible TRS members who opted in to the program, and paid AMCs as provided in the RSSL, could retire at age 55 if they have 27 or more years of credited service and would receive the same benefit as a basic Tier IV member retiring with the same amount of credited service at age 62.

23. Under Chapter 19, regularly appointed BOE teachers eligible to opt in to the 55/27 Plan had 180 days from the date of returning to active service to opt in to the 55/27 Plan. Eligible members who did not elect to join the 55/27 Plan remained in the basic Tier IV plan.

24. Regularly appointed BOE teachers who joined TRS after February 27, 2008, but prior to April 1, 2012, and who had not previously been members of a public retirement system of the State of New York prior to the enactment of Chapter 19 were automatically enrolled into the 55/27 plan and were required to contribute AMCs as provided in the RSSL.

25. Many class members who would have been regularly appointed BOE teachers during the Enrollment Period absent the BOE's discrimination were either denied the opportunity

to enroll in the 55/25 or 55/27 Plans or made an election under circumstances that would not have existed absent the discrimination.

26. BERS administers 55/25 and 55/27 plans for certain BERS-eligible positions. Under the RSSL, these BERS 55/25 and 55/27 plans are substantially identical to the TRS 55/25 and 55/27 Plans.

27. NYCERS and BERS also administer similar supplementary early-retirement plans pursuant to Chapter 96 of the Laws of 1995 and other laws. In general, the statutory structure of these plans closely resembles that of the 55/25 and 55/27 Plans, insofar as members in an affected position upon the enactment of these plans were permitted to join these plans or remain basic Tier IV members if they declined to join these plans; members in affected positions who joined after the enactment date of the supplementary early-retirement plans were mandated to participate in these plans; and the plans provide that members must pay AMCs in exchange for the ability to retire prior to the standard Tier IV retirement age of 62 without any reduction in benefits, provided that specified age and service-credit requirements are met.[9] Hereinafter, these similar NYCERS and

[9] NYCERS and BERS also administer certain special plans—for sanitation workers, special officers, emergency medical technicians, and employees in certain designated "physically taxing" titles, for example—that require as a condition of the retirement benefit that the member render a specified period of service *in that specific title* and/or provide benefits that do not derive from the generally applicable Tier IV/VI benefit formula, and are therefore not comparable to the 55/27 and 55/25 Plans. To the extent class members participate in these special plans and are eligible to receive a pension remedy pursuant to this Stipulation & Order, such pensions shall constitute "Outside Pensions," as that term is defined in Paragraph 43 of this Stipulation & Order, and the remedy available to these class members is set forth in Paragraph 61 of this Stipulation & Order. NYCERS and BERS also administer similar special plans with respect to Tier VI members in particular titles and these plans likewise constitute "Outside Pensions" for purposes of this Stipulation & Order. In addition, certain claimants who are members of NYCERS or BERS may, by virtue of credited service in multiple positions and multiple retirement plans administered by their retirement system, be eligible for pensions consisting of a combination of benefits calculated under two or more such retirement plans. These multiple-benefit pensions also constitute "Outside Pensions" for purposes of this Stipulation & Order.

BERS supplementary early-retirement plans, along with the basic Tier IV and Tier VI NYCERS and BERS plans and the BERS 55/25 and 55/27 plans, are referred to as "Comparable Plans."[10]

Back-Pension Damages

28. Certain class members who were either never able to participate in TRS due to BOE discrimination, or whose credited service and final average salary, for purposes of the pensions they receive from an Affected System, are lower than they would have been absent BOE discrimination, have retired prior to entry of their individual judgments at or after reaching the normal retirement age required for retirement from an Affected System, or have reached such age since retiring.[11] Since retiring, these class members have either received no pension benefits or received lower monthly pension payments from an Affected System than they would have received based on their counterfactual-service-and-salary histories (the "Back-Pension Damages").

Death Benefits in the Affected Systems

29. When a member of an Affected System dies, either in active service; after separation from service, but before retirement; or following retirement, that member's estate, or beneficiaries

[10] As noted above, certain of the supplementary early-retirement plans available to Tier IV NYCERS and BERS members that constitute Comparable Plans are available to Tier VI members occupying the titles encompassed by the plan. *See*, e.g., RSSL § 604-g (concerning automotive workers). These Tier VI members pay the same AMCs as Tier IV participants in the supplementary early-retirement plan, but are otherwise subject to benefits alterations applicable to Tier VI members, such as changes in vesting periods, final average salary, and basic member contribution rates. These Tier VI supplementary early-retirement plans also constitute "Comparable Plans."

[11] The phrase "normal retirement age" refers to the age at which a member of TRS or an Affected System becomes eligible to retire and receive benefits on the basis of the age and service requirements of the retirement plan in which the member participates. For example, class members who are entitled to basic Tier IV benefits, the phrase "normal retirement age" refers to age 62, with at least five years of credited service. For class members who are entitled to basic Tier VI benefits, "normal retirement age" refers to age 63, with at least ten years of credited service. For class members who are entitled to benefits under the 55/25 Plan, "normal retirement age" refers to age 55, with at least 25 years of credited service. For class members who are entitled to benefits under the 55/27 Plan, "normal retirement age" refers to age 55, with at least 27 years of credited service. For members who have not satisfied these service requirements upon attaining the corresponding age requirements, "normal retirement age" refers to the age when the member will meet the applicable service requirement. With respect to disability retirees, as addressed in Paragraphs 39 and 60 below, "normal retirement age" refers to the date the member was retired for disability.

previously designated by the member, may be eligible to receive a lump-sum death benefit, as determined by law. For retired members, the death benefit also includes any portion of pension payments that may be payable for the month in which the member died (the "Fractional" benefit).

30. Members of an Affected System may designate one or more beneficiaries for the death benefit at any time.[12] If a member fails to designate a beneficiary for the death benefit or if all designated beneficiaries predecease the member, the benefit will be paid to the member's estate upon the member's death.

31. As noted above, certain class members who were denied the opportunity to participate in TRS have passed away. These class members' estates, or other potential beneficiaries, did not, therefore, receive the death benefit to which they would have been entitled absent BOE discrimination.

32. Certain other class members were able to become TRS members, or were able to attain positions that allowed them to become members of NYCERS or BERS, and then passed away either while in active service; after separation from service, but before retirement; or after retirement. These class members' designated beneficiaries, or the class members' estates if no beneficiaries had been designated, may have received lower death-benefit payments than they would have received absent the BOE's discrimination.

Election of a Retirement Payment Option at Retirement

33. Members of an Affected System generally file a retirement-application form to notify their system of their intent to retire and receive benefits. On this form, a member selects how the member's monthly pension payments will be distributed (the "Retirement Payment Option").

[12] NYCERS does not permit a member to designate a beneficiary for the portion of pension payments payable for the month in which a member dies. Such payments pass to the member's estate.

34. Members have a number of choices regarding the Retirement Payment Option. A member could elect one of the following:

a. The maximum monthly pension payments for the rest of his or her life, with no survivor benefits (the "Maximum Option");

b. Reduced monthly payments for the rest of his or her life, followed by ongoing payments for the life of a designated beneficiary after the member's death, provided the beneficiary is living at the time of the member's death (a "Joint and Survivor Option"). Members are permitted to designate a single beneficiary for a Joint and Survivor Option. If that beneficiary predeceases the member, there is no continuing payment after the member's death.[13]

c. Reduced monthly payments for the rest of his or her life, followed by a set number of monthly payments to one or more beneficiaries—in an amount necessary to guarantee either 60 or 120 total monthly payments to the member and all beneficiaries—in the event the member dies before 60 or 120 monthly payments are made (a "5/10 Year Certain Option"). Members who select a 5/10 Year Certain Option may name one or more primary beneficiaries and one or more contingent beneficiaries.[14] If the member dies before receiving the guaranteed number of monthly payments, the primary beneficiaries receive the remaining monthly payments in the proportion dictated by the member. If both the member and all primary beneficiaries die before receiving the specified number of monthly

[13] For this reason, there also exists a "pop-up" Joint and Survivor Option, whereby the member can revert to the maximum retirement allowance in the event the designated beneficiary predeceases the member.

[14] BERS does not permit a member who selects a 5/10 Year Certain Option to name multiple primary beneficiaries; BERS does permit these members to name multiple contingent beneficiaries.

payments, the contingent beneficiaries receive the remaining payments as a lump sum in the proportion dictated by the member.

35. Members may change their Retirement Payment Option within thirty (30) days after the date of payability of their retirement allowances (*i.e.*, the date members begin receiving monthly pension benefit payments). After those thirty days have passed, retired members of an Affected System may not alter their Retirement Payment Option.

36. Members of TRS, prior to selecting their Retirement Payment Option, are generally able to access a "calculator" through TRS's website that estimates the monthly payments a member, and/or that member's designated beneficiary, would receive under the different Retirement Payment Options described above in Paragraph 34 (the "Retirement Allowance Calculator"). This Retirement Allowance Calculator is not publicly available; only TRS members can access it by logging into their online accounts.[15]

37. A number of class members who were denied the opportunity to participate in an Affected System have already retired after reaching the normal retirement age required for retirement from that Affected System, or have reached normal retirement age since retiring. Other class members who were denied the opportunity to participate in an Affected System will retire at the normal retirement age prior to receiving a final judgment in this case. Some class members who were denied the opportunity to participate in an Affected System have retired after reaching the normal retirement age, and have since passed away. The class members described in this paragraph were denied the opportunity to elect a Retirement Payment Option for the pension benefits they would have received absent BOE discrimination.

[15] This estimate is not binding or determinative of the final calculation of the cost of any such option. That calculation is performed by the New York City Office of the Actuary.

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 14 of 52

38. Other class members may have participated in an Affected System and already retired, and elected a Retirement Payment Option upon their retirement. These class members' pension benefits, however, may not reflect the service-and-salary history they would have achieved absent the BOE's discrimination. Had their pension benefits been greater, these class members may have made different decisions regarding their election of a Retirement Payment Option.

Disability Pensions

39. Members of an Affected System who have at least 10 years of credited service and incur an alleged disability[16] are eligible to apply for ordinary disability-retirement benefits, as set forth in RSSL § 605(b)(1). In addition, a member of an Affected System, regardless of length of service, who alleges that his or her alleged disability was the result of an "accident"—as that term appears in the RSSL and is interpreted in case law—that occurred in the course of his or her employment with the City of New York or the BOE, is eligible to apply for accident-disability-retirement benefits provided by RSSL § 605. Class members who, due to BOE discrimination, were unable to obtain TRS-eligible positions or were delayed in participating in an Affected System, and who left the workforce by reason of a disability, may not have been eligible to apply for these disability-retirement benefits.

Pension Mitigation

40. Certain class members who were either denied the opportunity to participate in TRS, or whose TRS membership was delayed by the BOE's discrimination, were able to participate in other defined-benefit pension systems during some or all of their counterfactual service history.

[16] As used herein, the phrase "disability" refers to a condition or impairment of sufficient severity to entitle a member of an Affected System to disability retirement under the RSSL or New York City Administrative Code.

41. As a matter of equity, any defined-benefit pension a class member accrued during his or her counterfactual service history, whether with TRS or any other pension system, serves to mitigate the counterfactual pension the class member would have accrued in TRS absent BOE discrimination.

42. With respect to a pension accrued in TRS or in a Comparable Plan during a class member's counterfactual service history, mitigation is most equitably achieved by incorporating the class member's counterfactual service-and-salary history into the class member's existing pension account at the Affected System, and combining the counterfactual service-and-salary history with the existing service, salary, and contribution history of the class member to yield a single, unified pension account. For periods in which there are both counterfactual and actual service histories, the higher of the counterfactual or actual salary histories would remain.

43. With respect to any other defined-benefit pension accrued during a class member's counterfactual service history (collectively, "Outside Pensions"), including any hybrid pension plan that includes a defined-benefit component, the parties agree that these pensions can be appropriately valued on an actuarial basis for purposes of this Stipulation & Order.

44. The parties agree that employer-sponsored defined-contribution plans that provide for pre-tax employer contributions not includable in the class member's taxable income, such as employer-matching 401(k) plans, do not qualify as "Outside Pensions" for the purposes of this Stipulation & Order.

**IT IS HEREBY ORDERED THAT**: Based on the Special Master's recommendation,

45. The BOE will provide, for each class member who is contemplated to receive a benefit pursuant to this Stipulation & Order, counterfactual service-and-salary information in accordance with the class member's individual judgment award such as is necessary for the

Affected System to determine the pension benefits the class member would have received absent BOE discrimination. The BOE will provide this counterfactual service and salary information to each Affected System or, with respect to class members receiving relief pursuant to Paragraphs 59 and 61 of this Stipulation & Order, to the New York City Office of the Actuary ("NYCOA"). This information will be transmitted by the BOE for each class member as soon as practical following the Court's entry of each class member's individual judgment, in a manner and scope agreed upon by the BOE and the Affected System or NYCOA. For class members receiving relief pursuant to Paragraph 61 of this Stipulation & Order, TRS, NYCERS, and BERS will also provide the NYCOA with any existing pension-account data concerning the class members' non-counterfactual service. When the information described in this paragraph is transmitted to the Affected System or NYCOA, the BOE will also produce this information to Plaintiffs' counsel.

46. For each class member who participates in an Outside Pension that is not administered by a New York City retirement system, Plaintiffs' counsel will provide all necessary documents related to the class member's Outside Pension account to Risk & Regulatory Consulting ("RRC"), the Court-appointed retirement-pension valuation expert.

47. **Pension Relief Optional.** Class members may opt out of the pension relief described in this Stipulation & Order. If a class member fails to make timely payments and elections contemplated by the remaining paragraphs of this Stipulation & Order, or show good cause—as determined by the Special Master on the basis of evidence presented in an individual hearing[17]—

[17] "Good cause," as used in, or required by, this Stipulation & Order, is automatically established without the necessity of a hearing before the Special Master if a class member has not yet received his or her backpay award from the BOE before the date an Affected System mails the class member notice of his or her deficit in required employee contributions pursuant to Paragraph 49 of this Stipulation & Order below. In these cases, Plaintiffs shall notify the Affected System that the 90-day deadline set forth in Paragraph 49 shall be tolled until the date upon which the class member receives his or her backpay award. When the class member receives that award, Plaintiffs will notify the Affected System accordingly.

for having failed to do so, the class member will be deemed to have opted out of the pension relief described herein. Alternatively, at any time prior to the deadline by which a class member must pay employee contributions pursuant to this Stipulation & Order, class members, through Plaintiffs' counsel, may affirmatively notify BOE counsel, in a method agreed upon by the parties, of their intent to opt out of the pension relief described herein.

48. **Tier Reinstatement.**

a. To the extent class members currently participate in TRS as Tier VI members, but would have been Tier IV members on the basis of an earlier membership date established by their counterfactual-service history, TRS will automatically reclassify these members as Tier IV members as soon as practicable after entry of each class member's individual judgment, and will adjust the class members' contribution rates accordingly.

b. To the extent class members currently participate as Tier VI members in a Comparable Plan with NYCERS or BERS, but would have been Tier IV members on the basis of an earlier membership date established by their counterfactual service history, and want to be reclassified as Tier IV members, they must submit a tier-reinstatement form following the entry of their individual judgments, and NYCERS or BERS will adjust the class members' contribution rates following receipt and approval of that form.

49. **Employee Contributions.** Subject to Paragraphs 50 and 57 of this Stipulation & Order, each class member who elects to receive pension relief pursuant to this Stipulation & Order will be required to make all employee contributions, including AMCs, he or she would have made to the Affected System during his or her counterfactual service history, and will receive the pension relief described herein only if all required contributions are made, or if the amounts of those contributions are otherwise credited to the class member's account through the operation of this

Stipulation & Order.[18] Class members will only be eligible to receive credited service for, and will only pay employee contributions on, counterfactual-service-and-salary that is creditable by law.[19] Each class member who receives pension relief pursuant to this Stipulation & Order will receive a membership date in his or her Affected System that corresponds to the earliest date of such creditable counterfactual service, provided this date precedes any existing membership date with respect to the class member.

a. With respect to class members who did not obtain mitigating pensions, TRS will compute the employee contributions attributable to the counterfactual service period that each class member owes as soon as practical following receipt of the necessary information for those calculations from the BOE pursuant to this Stipulation & Order. Once the amount is computed, TRS will send notice to the class members of the amount due and instructions for payment of the amount.[20] Class members will then pay the employee contributions directly to TRS within ninety (90) days of TRS mailing the notice.

b. With respect to class members who are current members of TRS or a Comparable Plan and will remain in the positions that rendered them eligible for

[18] Contributions can be "otherwise credited" to a class members account only as follows: To the extent any class member has a surplus in any member account at an Affected System as a result of this Stipulation & Order or otherwise, that surplus, whether deriving from an account for basic member contributions or AMCs, will be deemed available to satisfy any deficit in any other account resulting from this Stipulation & Order, if the Affected System, in its sole discretion, determines that it is administratively feasible to do so. Any class member that withdrew funds from an Affected System prior to the counterfactual service period must return all withdrawn funds to the Affected System to receive service credit for that time.

[19] For example, if a class member's counterfactual-service-and-salary history reflects a period of unpaid leave, that period of unpaid leave will not be creditable in an Affected System, just as periods of unpaid leave are not creditable in those systems in the normal course.

[20] Prior to the date the BOE transmits counterfactual-service-and-salary information to the Affected Systems pursuant to this Stipulation & Order, Plaintiffs' counsel must provide the Affected Systems with current address information for any class member that will receive correspondence from an Affected System, as well as the class member's date of judgment. Plaintiffs' counsel will promptly inform the Affected Systems of any changes to an address previously provided.

participation; class members who are deferred vested or retired members of TRS or a Comparable Plan; and deceased class members who were members of TRS or a Comparable Plan, the Affected System will compute the employee contributions attributable to the counterfactual-service period that each class member owes in excess of those already paid, if any, as soon as practical following receipt of the necessary information for those calculations from the BOE pursuant to this Stipulation & Order. Pursuant to the Special Master's ruling, class members who participate in comparable plans with NYCERS or BERS, and who wish to receive credit for their counterfactual service in these systems, will be responsible for additional AMCs they would not have paid as TRS members during their counterfactual service history, but that were required by the relevant NYCERS or BERS plans during that period of time. Once the deficit in employee contributions is computed, the Affected System will provide written notice to these class members of the amount due and instructions for payment of the amount. These class members will then pay the amount to the Affected System within ninety (90) days of the Affected System mailing the notice. For purposes of these computations, the counterfactual service rendered by the class member will be deemed to be service in the position that rendered the class member eligible to participate in the Affected System.

c. To the extent any surplus in employee contributions exists in a class member's member account in an Affected System as a result of this Stipulation & Order, and that surplus is not otherwise credited to satisfy a deficit in the class member's member account, the Affected System will refund that surplus to the class member as soon as

practical after the surplus has been calculated, provided that the rules of the Affected System permit refunds of surplus contributions prior to retirement.[21]

50. **Employee Contributions Tax Adjustment.** Class members who, by operation of this Stipulation & Order, incur a deficit in employee contributions attributable to their counterfactual service periods, will be responsible for only 84% of any unpaid employee contributions, including AMCs, attributable to their counterfactual service history. The notice an Affected System sends to class members regarding unpaid employee contributions, as per the process described above in Paragraph 49 of this Stipulation & Order, will notify class members of this reduced unpaid contribution amount. The BOE will be responsible for paying the remaining 16% of unpaid employee contributions into a class member's account with the Affected System—as identified and invoiced by the Affected System—to compensate class members for their contributions being made on a post-tax basis, when absent the BOE's discrimination these contributions would have been made on a pre-tax basis.

51. **Employer Contributions.** The BOE will be required to make all actuarially determined employer contributions attributable to class members' counterfactual service, as determined by the NYCOA.

52. **Statutory Interest Accrued on Delayed Contributions.** Class members will not be responsible for any statutory interest on employee contributions that accrued following the beginning of the class members' counterfactual service periods, which would not have accrued absent BOE discrimination. Specifically, a class member will not be responsible for statutory interest on unpaid contributions, including AMCs, attributable to the class member's counterfactual

---

[21] The Affected Systems that do not permit refunds of a member's surplus contributions prior to retirement refund any surplus contributions subsequent to retirement.

service and salary history. The BOE will instead be responsible for this interest as may be identified by the Affected Systems and invoiced to the BOE. Pursuant to the Special Master's ruling, the statutory interest for which the BOE is responsible includes interest attributable to employee contributions that class members, as a result of their employment in positions that permitted BERS, NYCERS, or TRS membership during the counterfactual service period, would have made had they joined the pension system for which they were eligible.

53. **Supplementary Early Retirement Plans.**

a. For each class member eligible to opt in to the TRS 55/25 or 55/27 plans pursuant to this Stipulation & Order, Plaintiffs' counsel will provide class members with information explaining the costs and benefits of the 55/25 and 55/27 plans and an election form to opt in to the TRS 55/25 or 55/27 plans (the "Early Retirement Plan Election Form"), both of which will be in a format agreed upon by the parties. Class members who would have been eligible to opt in to the TRS 55/25 or 55/27 plans absent BOE discrimination will have ninety (90) days from the date the Court enters their individual judgments to submit the Early Retirement Plan Election Form to TRS. Any class members who elect to opt in to the 55/25 or 55/27 plans will be responsible for any AMCs due as a result of their choice, as determined by TRS. Class members who would have been mandated to join the TRS 55/27 plan absent BOE discrimination will be required to participate in the 55/27 Plan and will be responsible for any AMCs due as a result of that participation, as determined by TRS.

b. Class members who already participate in a Comparable Plan with NYCERS and BERS and will remain in the positions that rendered them eligible for participation, or who are deferred-vested members of, or retirees from, a Comparable Plan, will remain

members of their Comparable Plan, and the counterfactual service rendered by these members will be deemed to have been rendered in the position that rendered them eligible for the Comparable Plan. These class members will be responsible for any AMCs due, in excess of AMCs already paid, as a result of the inclusion of counterfactual service, as determined by the Affected System. The BOE will be responsible for paying statutory interest, as computed by the Affected System, on any unpaid AMCs attributable to the counterfactual service and salary history.[22]

c. Class members who currently participate in TRS and were mandated to join 55/27 or to enroll as basic Tier VI TRS Members based on their membership date, but who would have been basic Tier IV TRS Members eligible to opt in to the TRS 55/25 or 55/27 plans absent BOE discrimination, will have ninety (90) days from the date the Court enters their individual judgments to submit Early Retirement Plan Election Forms to TRS. Plaintiffs' counsel will likewise provide these members with information explaining the costs and benefits of the 55/25 and 55/27 plans, as well as the Early Retirement Plan Election Form. Any class members who elect to opt in to the 55/25 or the 55/27 Plans will be responsible for any AMCs due, in excess of AMCs already paid, as a result of the inclusion of this counterfactual service, as determined by TRS.

54. **Deferred Vested Members.** Certain class members may have participated in TRS or a Comparable Plan during their counterfactual service period and left the positions that rendered them eligible for participation in circumstances that entitle the class member to a deferred-vested

[22] Class members who are currently Tier VI members of NYCERS or BERS, who do not participate in a supplementary early-retirement plan, and who would have participated in a supplementary early-retirement plan constituting a Comparable Plan had they joined NYCERS or BERS in their current title on the date their counterfactual service began, will, as set forth in Paragraph 48 of this Stipulation & Order, be reclassified as Tier IV members and will be deemed to have participated in a Comparable Plan as of the date their counterfactual service began. The payment of AMCs and interest resulting from the reclassification and inclusion of counterfactual service will be governed by this paragraph.

benefit from the Affected System or will entitle the class member to a deferred-vested benefit when an existing membership is combined with counterfactual service. Any deferred-vested benefit for these class members will be adjusted by the Affected System in the manner set forth in Paragraphs 45 through 53 of this Stipulation & Order.

55. **Prior Withdrawals from Affected System Accounts.** Pursuant to the Special Master's ruling, class members who withdrew their employee contributions from an Affected System after leaving BOE service subsequent to failing the LAST exam, and who apply to buy back service credits from their pre-counterfactual service period following the Court's entry of their individual judgments in this case, will be responsible for paying any statutory interest that has accrued on unpaid employee contributions from their pre-counterfactual service period.

56. **Back Pension.** Retired class members are entitled to receive, as Back-Pension Damages, the pension payments they did not receive prior to entry of their individual judgments as a result of BOE discrimination, provided the class members pay all employee contributions owed to the Affected System. The payment of Back-Pension Damages will be made as follows:

a. For class members who retired from TRS or a Comparable Plan, the Affected System will compute the Back-Pension Damages, if any, over and above pension payments already made by the Affected System. The Affected System will then pay the Back-Pension Damages to the class member—along with pre-judgment interest from the dates the class member would have received those prior pension payments to the date of judgment and post-judgment interest that will accrue from the date of judgment to the date of the payment[23]—in a lump sum.

[23] Notwithstanding any other rates of interest applied by the Affected Systems for benefit recalculations or payment delays, the rate of interest to be applied for any calculation of pre-judgment and post-judgment interest pursuant to this

b. For retired class members who did not obtain mitigating pensions, except for class members who died prior to their dates of judgment,[24] TRS will compute Back-Pension Damages, if any, attributable to any period of retirement subsequent to the class member reaching TRS's normal retirement age during which the class member would have been eligible to receive a pension payment from TRS by virtue of his or her counterfactual service. TRS will pay the Back-Pension Damages to the class member, along with pre- and post-judgment interest as described above in Subparagraph 56(a), in a lump sum.

c. For deceased class members who retired from TRS or a Comparable Plan before their deaths, the Affected System will pay any Back-Pension Damages, along with pre- and post-judgment interest, in a lump sum to class members' previously designated beneficiaries or estates as follows, except insofar as Back-Pension Damages attributable to the portion of the pension payable in the month the class member died constitute a component of the death benefits governed by Paragraph 57 of this Stipulation & Order:[25]

i. If a deceased retired class member took the Maximum Option, the Back-Pension Damages shall be paid to the class member's estate.

ii. If a deceased retired class member took a Joint and Survivor Option, any Back-Pension Damages that would have been payable to the class member shall

---

Stipulation & Order will be that set forth in 28 U.S.C. § 1961. The Affected Systems may invoice the BOE for any post-judgment or pre-judgment interest they must pay to class members pursuant to this Stipulation & Order.

[24] These class members' beneficiaries or estates will receive either the lump-sum pension award pursuant to Paragraph 59 of this Stipulation & Order or death benefits pursuant to Paragraph 57, depending on whether they attained TRS's normal retirement age.

[25] To the extent the Affected Systems do not already have the information they require regarding a class member's designated beneficiary or estate, any person or entity seeking a payment from an Affected System pursuant to this Stipulation & Order must satisfy the administrative procedures established by the Affected System for any payment to an estate or beneficiary of a member in the normal course. This generally requires the completion of claim forms, submission of a tax identification number and original letters of administration or letters testamentary with respect to an estate, submission of the name and contact information for executors, and submission of photo identification and social security card with respect to a named beneficiary.

be paid to the class member's estate. Any Back-Pension Damages that would have been paid to the Joint and Survivor beneficiary named by the class member shall be paid to that Joint and Survivor beneficiary. If that beneficiary is deceased, the Back-Pension Damages owed to that beneficiary shall be paid to that beneficiary's estate.

iii. If a deceased retired class member took a 5/10 Year Certain Option, any Back-Pension Damages attributable to the period before the class member died shall be paid to the class member's estate. Any Back-Pension Damages attributable to the period after the class member died shall be paid to the beneficiary named by the class member. If that beneficiary died subsequent to the class member's death, but prior to the end of the guaranteed monthly retirement payments period, the remaining Back-Pension Damages shall be paid to the contingent beneficiary. If the contingent beneficiary also died prior to the end of the guaranteed monthly retirement payments period, or if no contingent beneficiary was named, any remaining Back-Pension Damages shall be paid to the class member's estate.

d. The Affected Systems will pay any Back-Pension Damages governed by this Stipulation & Order as soon as practical after the class member has paid any employee contributions owed for his or her counterfactual service pursuant to Paragraph 49 of this Stipulation & Order.

57. **Death Benefit**. Deceased class members' beneficiaries or estates are entitled to receive the death benefit to which they would have been entitled absent the BOE's discrimination.[26] To the extent a portion of any death benefit for a deceased class member would consist of employee contributions that would otherwise be payable to the Affected System pursuant to Paragraph 49 of

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 26 of 52

this Stipulation & Order, the estate of the class member will not be required to pay those contributions, and the Affected System will calculate the death benefit without reference to a refund of those contributions.[27] The payment of the death benefit for these deceased class members will be made as follows:

a. For deceased class members who did not obtain mitigating pensions, TRS will pay the death benefit, along with pre- and post-judgment interest, to the class members' estates.

b. For deceased class members who participated in TRS or a Comparable Plan and died before retirement, the Affected System will pay the death benefit, in excess of that already paid, along with pre- and post-judgment interest to the date of the payment, to the previously designated beneficiaries. With respect to members who failed to designate a beneficiary before death, the Affected System will pay the death benefit, along with pre- and post-judgment interest, to the class member's estate.

c. For deceased class members who participated in TRS or a Comparable Plan and died after retirement, the Affected System will pay the post-retirement death benefit in excess of any post-retirement death benefit already paid, along with pre- and post-judgment interest to the date of the payment, to the previously designated beneficiaries. With respect to members who failed to designate a beneficiary before death, the Affected System will pay the death benefit, along with pre- and post-judgment interest, to the class member's estate.

---

27 Contributions by class members can be "otherwise credited" pursuant to this Stipulation & Order only by the process set forth in Footnote 18 of this Stipulation & Order.

d. The Affected Systems will pay any death benefit governed by this Stipulation & Order as soon as practical following entry of an individual class member's judgment.

58. **Retirement Payment Option.** The election of a Retirement Payment Option for class members who retired prior to entry of their individual judgments will be made as follows:

a. For each retired class member eligible to make a Retirement Payment Option election pursuant to Subparagraph 58(c) below, Plaintiffs' counsel will provide the class member a form detailing the Retirement Payment Options available under the class member's pension plan (the "Retirement Payment Option Election Form").

b. As soon as practical after the entry of this Stipulation & Order, TRS will provide Plaintiffs' counsel with a document or application, in a form agreed upon by the parties, which substantially replicates the functionality of the Retirement Allowance Calculator, so that Plaintiffs' counsel may assist retired class members in estimating the costs and benefits of available options. The Affected System will update the document or application as it would update the Retirement Allowance Calculator for ordinary system members.

c. Retired class members who have reached TRS's normal retirement age, and who did not obtain mitigating pensions, will have ninety (90) days following the entry of their individual final judgments to complete and return the Retirement Payment Option Election Form to TRS.[28] The subsequent calculation of option costs will be undertaken by the NYCOA as provided by applicable law.

[28] Retired class members who are vested but have not yet reached TRS's normal retirement age will be treated as deferred vested members for purposes of this Stipulation & Order.

d. Retired class members, whether living or deceased, who were able to participate in TRS or a Comparable Plan, and selected a Retirement Payment Option upon their actual retirement, will, as a default rule, maintain the same Retirement Payment Option once their accounts have been adjusted to account for their counterfactual service. However, these class members have the opportunity to prove at an individual hearing before the Special Master that they would have selected an alternative Retirement Payment Option absent the BOE's discrimination. The class member bears the burden of proof, and the burden of proof may be met only if the class member demonstrates with objective, documentary evidence, dated prior to or contemporaneous with the date the class member initially selected a Retirement Payment Option, that he or she would have selected a different Retirement Payment Option had he or she been entitled to a larger pension. If a class member satisfies this burden, and, as a result of this alternative election, the Affected System determines that the class member received higher historical pension payments under the prior Retirement Payment Option than he or she would have received under the new Retirement Payment Option, the amount of those excess historical pension payments, as computed by the Affected System, must be repaid to the Affected System by the class member prior to any option change and within ninety (90) days from the date he or she receives notice from the Affected System of the cost of effecting this option change, absent good cause for a delay in payment, as determined by the Special Master on the basis of evidence presented in an individual hearing. If the class member has died since the initial selection of a Retirement Payment Option, the estate of the class member will have the right to a hearing with respect to the Retirement Payment Option and will bear the burden and,

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 29 of 52

where applicable, repayment obligation for excess historical pension payments described in this paragraph.

59. **Certain Deceased Retirees.** Class members who did not obtain mitigating pensions, and who: (1) retired at, or after, TRS's normal retirement age, or reached that age after their retirement but before entry of their individual judgments; and (2) died after reaching that age, but before entry of their individual judgments,[29] will receive a lump-sum payment equal to the actuarial value of the TRS pension attributable to their counterfactual service as of the later of the date they retired or the date they reached normal retirement age, without regard to the selection of a Retirement Payment Option, less employee contributions that would have been payable to TRS, as determined by the NYCOA. The BOE will make this payment, along with post-judgment interest, to the estate of these class members as soon as practical following the entry of an individual class member's judgment.

60. **Disability Retirement Determinations.** Any class member who permanently left the workforce as a result of an alleged disability during the time period he or she is deemed to have engaged in counterfactual service; who, at the time the class member left the workforce, either was not a member of a pension system that would have permitted him or her to apply for disability retirement benefits on the basis of that disability or was a member of such a pension system and applied for and received disability benefits;[30] and who satisfies the length-of-service requirements

[29] Class members who did not obtain mitigating pensions, who retired, and who died before TRS's normal retirement age will, pursuant to Paragraph 57 of this Stipulation & Order, be eligible to receive the death benefits available to deferred vested members that they would have received absent BOE discrimination.

[30] Any such disability benefits will be taken into account for purposes of pension mitigation. If a class member receives disability benefits from NYCERS or BERS under a Comparable Plan, any additional disability benefits received pursuant to this paragraph—*i.e.*, a higher disability benefit due to the inclusion of counterfactual service and salary—will be administered by NYCERS or BERS.

for ordinary disability retirement set forth in RSSL § 605(b)(1) by virtue of his or her counterfactual service will be eligible to seek ordinary disability retirement benefits provided by that Section.[31] Pursuant to the Special Master's ruling, any class member, regardless of length of service, who alleges that his or her disability was the result of an "accident"—as that term appears in the RSSL and is interpreted in case law—that occurred in the course of the class member's employment with the City of New York or the BOE during his or her counterfactual service period, will be permitted to apply for the accidental disability retirement benefits provided by RSSL § 605. Notwithstanding any contrary procedure set forth in law or board resolution, the following procedures govern applications for disability retirement as part of the relief in this case:[32]

a. Any claim for disability-retirement benefits must be submitted to the BOE counsel prior to the Court's entry of a class member's individual judgment. Claims for disability retirement benefits will be resolved prior to entry of a class member's individual judgment.

b. Any class member who submits a claim for disability retirement benefits pursuant to this paragraph must identify the nature of the disability and the date he or she would have ceased employment with the City of New York or the BOE as a result of the disability. The class member must furnish BOE counsel with all medical records germane to the disability contemporaneously with his or her claim.

---

[31] Class members who were members of an Affected System when they permanently left the workforce as a result of a disability, but did not apply for ordinary disability retirement benefits because they had less than ten years of credited service at that time, may apply for ordinary disability benefits hereunder if they would have had ten or more years of credited service at that time had their counterfactual service been included in their computation of credited service.

[32] NYCERS does not consent to this paragraph but will abide by it once the Court orders this Stipulation & Order.

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 31 of 52

c. Ordinary Disability Retirement

i. On the basis of the evidence provided by the class member, in addition to the considered medical opinion of medical experts retained by BOE counsel, BOE counsel will determine whether the injury alleged constitutes a disability under the standard of RSSL § 605 and, if so, the date on which the disability would have prevented the member from remaining an employee of the City of New York or the BOE. BOE counsel and the medical experts may ask the class member to furnish additional medical records, as needed.

ii. Should BOE counsel find that a class member who seeks ordinary disability retirement benefits would have ceased his or her counterfactual service as a result of a disability, the class member will be entitled to an ordinary disability pension retroactive to the last day he or she would have been eligible to apply for that pension on the basis of the date the class member is deemed to have terminated employment with the City of New York or BOE as a result of the disability. BOE counsel will notify Plaintiffs' counsel as soon as practical of its determination. The Board of Trustees of the Affected System will adopt a resolution ratifying such ordinary disability pension as soon as practical after the class member has paid any employee contributions owed for his or her counterfactual service pursuant to Paragraph 49 of this Stipulation & Order.

d. Accident Disability Retirement

i. Any class member who submits a claim for accidental disability retirement benefits pursuant to this paragraph must further identify and describe the circumstances of the "accident" that the class member claims caused his or her

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 32 of 52

disability. The class member must furnish BOE counsel with all existing documentary evidence substantiating the alleged accident.

ii. On the basis of the evidence provided by the class member, in addition to the considered medical opinion of medical experts retained by BOE counsel, BOE counsel will determine whether the injury alleged constitutes a disability under the standard of RSSL § 605 and, if so, the date on which the disability would have prevented the member from remaining an employee of the City of New York or the BOE. BOE counsel and the medical experts may ask the class member to furnish additional medical records, as needed.

iii. BOE counsel will also determine, on the basis of the documentary evidence provided by the class member, whether the "accident" alleged by the class member: occurred; constituted an "accident" as that term appears in the RSSL and is interpreted in case law; and caused the class member's alleged disability. BOE counsel may ask the class member to furnish additional records, as needed.

iv. Should BOE counsel find that a class member who seeks accidental disability retirement benefits would have ceased his or her counterfactual service as a result of a disability that was caused by an "accident"—as that term appears in the RSSL and is interpreted in case law—that occurred in the course of the class member's employment with the City of New York or the BOE during the time period he or she will be deemed to have engaged in counterfactual service, the class member will be entitled to an accidental disability pension retroactive to the last day he or she would have been eligible to apply for that pension on the basis of the date the class member is deemed to have terminated employment with the City of New York

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 33 of 52

or the BOE as a result of that disability. BOE counsel will notify Plaintiffs' counsel as soon as practical of its determination. The Board of Trustees of the Affected System will adopt a resolution ratifying such accidental disability pension as soon as practical after the class member has paid any employee contributions owed for his or her counterfactual service pursuant to Paragraph 49 of this Stipulation & Order.

e. A class member will have the right to contest any adverse determination should BOE counsel determine: that a class member is not disabled; that the disability would have prevented the class member from remaining an employee of the City of New York or the BOE on a date different than that alleged by the class member; or that a class member seeking accidental disability retirement benefits did not become disabled as the result of an "accident"—as that term appears in the RSSL and is interpreted in case law—that occurred in the course of the class member's employment with the City of New York or the BOE during the time period he or she will be deemed to have engaged in counterfactual service.

f. The exclusive means to contest an adverse determination, as set forth above in subparagraph 60(e), is an individual hearing before the Special Master pursuant to the Special Master's Order of Appointment.[33] The class member bears the burden of proof, and the issue will be decided on the basis of the evidence previously submitted in connection with the class member's claim for disability retirement benefits.[34] Should the Special Master determine that the class member is entitled to the disability retirement benefits sought, the

[33] *See Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, No. 96-CV-8414 (KMW), Order of Appointment, ECF No. 435; *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, No. 96-CV-8414 (KMW), Second Amended Order of Appointment, ECF No. 524.

[34] The Special Master may, at his discretion, request additional evidence from the parties regarding a class member's disability claim; however, the parties retain the right to object to any such evidence.

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 34 of 52

Board of Trustees of the Affected System will adopt a resolution ratifying such disability pension as soon as practical after the class member has paid any employee contributions owed for his or her counterfactual service pursuant to Paragraph 49 of this Stipulation & Order.

g. Eligibility for disability retirement benefits will be specified in a class member's individual judgment. Upon entry of an eligible class member's individual judgment. BOE counsel will communicate the individual's eligibility to the Affected System—or the NYCOA if the class member will receive pension relief pursuant to Paragraph 61 of this Stipulation & Order—as soon as practical.

h. No class member will receive his or her disability retirement benefits until he or she has paid all employee contributions required by this Stipulation & Order, as described in Paragraph 49.

i. Any retroactive component of a disability pension will be treated as Back-Pension Damages. and paid in accordance with the process described in Paragraph 56 of this Stipulation & Order. Pre- and post-judgment interest will accrue on this retroactive component.

j. The Medical Board and Board of Trustees of each Affected System will retain their authority under existing law to order the reexamination of any member who receives disability retirement benefits pursuant to this Stipulation & Order and, if warranted. the Board of Trustees will have the sole discretion to recall a member to active service if, after reexamination. the Medical Board finds the class member is no longer disabled. Alternatively, with respect to a class member found no longer disabled, the Affected System has the authority to convert the class member's disability pension into a service-retirement

pension as of the date he or she is found no longer disabled, subject to payability at normal retirement age.

61. **Pension Mitigation for Class Members with Outside Pensions.** Pension mitigation with respect to an existing membership in TRS or in a Comparable Plan during the counterfactual service period is addressed by the preceding paragraphs of this Stipulation & Order. Class members who participated in an Outside Pension during their counterfactual service history, and who wish to receive pension relief pursuant to this Stipulation & Order, will receive pension relief pursuant to the procedures set forth in this paragraph.

a. As described below, where a class member with an Outside Pension is eligible to receive pension relief and did not die before attaining TRS's normal retirement age, the class member will participate in TRS pursuant to the preceding paragraphs of this Stipulation & Order; however, NYCOA and RRC will calculate an amount by which the Outside Pension will mitigate each pension payment a class member receives from TRS by operation of this Stipulation & Order (the "Monthly Outside Pension Offset").

b. Where the class member is entitled to elect a supplementary early-retirement plan in TRS on the basis of his or her counterfactual service, the class member will submit the Retirement Election Form to the NYCOA before the valuations contemplated in this paragraph are undertaken.

c. Class Members who retired from a New York City retirement system that qualifies as an Outside Pension pursuant to this Stipulation & Order will, as a default rule, maintain in TRS the same Retirement Payment Option and beneficiary or beneficiaries they selected in that New York City retirement system, subject to the procedures set forth above in Paragraph 58(d) of this Stipulation & Order. Class Members who retired from any other

Outside Pension will likewise maintain in TRS the same Retirement Payment Option and beneficiary or beneficiaries they selected in that Outside Pension system, subject to the procedures set forth in Paragraph 58(d) of this Stipulation & Order, insofar as they have selected a Retirement Payment Option that corresponds to a Retirement Payment Option available in TRS.[35] Class members who selected a Retirement Payment Option in the Outside Pension from which they retired that does not correspond to a Retirement Payment Option available in TRS will be permitted to select a Retirement Payment Option in TRS.

d. The value of all pensions from a New York City retirement system, whether counterfactual TRS pensions or Outside Pensions, will be determined by the NYCOA. The value of all other Outside Pensions will be determined by RRC.

e. RRC and the NYCOA will perform the calculations described in this paragraph on a rolling basis, and will submit their determinations to BOE counsel and Plaintiffs' counsel for each class member as soon as practical after the entry of each class member's individual judgment.

[35] For the purposes of this paragraph, a Retirement Payment Option will be deemed to correspond to the Maximum Option if the pension payment to the member is not reduced to provide for benefits to a beneficiary or beneficiaries after the member's death. A Retirement Payment Option will be deemed to correspond to a Joint and Survivor Option if: (1) the pension payment to the member is reduced to provide for ongoing payments, expressed as a percentage of the benefit payable to the member, for the life of a designated beneficiary after the member's death, provided that the beneficiary is living at the time of the member's death; and (2) the percentage chosen by the class member in the Outside Pension is identical to, or within, 10% of a percentage available in TRS for the purposes of a Joint and Survivor Option. A Retirement Payment Option will be deemed to correspond to the "pop-up" variant of a Joint and Survivor Option if it corresponds to a Joint and Survivor Option and possesses the additional feature that the pension payment to the member will revert to a higher amount if the designated beneficiary predeceases the member. A Retirement Payment Option will be deemed to correspond to a 5/10 Year Certain Option if: (1) the pension payment to the member is reduced to provide for monthly payments for the member's life, followed by a specified number of monthly payments to one or more beneficiaries in an amount necessary to guarantee a specified number of total monthly payments to the member and all beneficiaries; and (2) the number of guaranteed monthly payments chosen by the class member in the Outside Pension is identical to, or within, two years of an option for a number of guaranteed monthly payments available in TRS.

f. The below methods constitute the exclusive form of pension relief for any class member with an Outside Pension.

g. Outside Pensions from a New York State Public Retirement System[36]

i. **Class members who are members of a New York State public retirement system and have not yet retired:**

1. RRC or the NYCOA (if the Outside Pension is from a New York City retirement system) will calculate the monetary value of the Outside Pension attributable to the counterfactual service period as an annuity net of employee contributions by subtracting the annual benefit of the Outside Pension that accrued prior to the counterfactual service period from the annual benefit of the entire accrued Outside Pension as of the date the Court enters the class member's individual judgment. The NYCOA will then actuarially adjust the Outside Pension attributable to the counterfactual service period into its equivalent under the plan provisions of the TRS plan the member will enter (the "Outside Pension Annual Benefit").

2. The NYCOA will calculate the monetary value of the TRS pension attributable to the counterfactual service period as an annuity net of employee contributions by subtracting the annual benefit of a TRS pension incorporating all creditable New York State public service rendered by the class member prior to the counterfactual service period from the annual

[36] For the purposes of this Stipulation & Order, Outside Pensions from a New York State public retirement system include pensions from New York City retirement systems that qualify as Outside Pensions under this Stipulation & Order.

benefit of a TRS pension incorporating both prior creditable service and the class member's counterfactual service (the "TRS Pension Annual Benefit").

3. The NYCOA will then subtract the Outside Pension Annual Benefit from the TRS Pension Annual Benefit. If the difference is zero or less, the class member will not receive pension relief. If the difference is greater than zero, the class member's counterfactual-service-and-salary history will be transmitted to TRS, and the preceding paragraphs of this Stipulation & Order will govern the class member's participation in TRS, including the calculation and payment of employee contributions attributable to the class member's counterfactual service, except to the extent inconsistent with this subparagraph.

4. With respect to class members who enter TRS, the Outside Pension Annual Benefit will be divided by twelve to determine the Monthly Outside Pension Offset. Upon the class member's retirement from TRS, the Monthly Outside Pension Offset will be subtracted from the class member's TRS pension payments on an ongoing basis.

5. The class member's TRS account will not be credited with service rendered prior to the counterfactual service period unless that service is already credited in the class member's account at TRS when the account is adjusted pursuant to this subparagraph, and the class member will not be permitted to buy back creditable service with TRS.

ii. **Class Members who died prior to retirement and whose beneficiaries or estates received, or became entitled to receive, death benefits from a New York State public retirement system:**

1. The estate of the class member will receive from the BOE a lump sum that is equal to the difference between the TRS death benefit the class member would have received absent BOE discrimination and the death benefit the estate or any beneficiary has received or will receive from the New York State public retirement system, less the difference between the total employee contributions, including AMCs, that would have been payable to TRS had the class member participated in TRS during his or her counterfactual service period, and the total employee contributions, including AMCs, actually paid to the New York State public retirement system, as determined by RRC or the NYCOA (if the Outside Pension is from a New York City retirement system). If this calculation yields a difference of zero or less, the estate of the class member will receive no pension relief.

2. The BOE will make this lump-sum payment, along with post-judgment interest, as soon as practical following entry of an individual class member's judgment.

iii. **Class members who have retired from a New York State public retirement system**: Pension mitigation for these class members will be calculated pursuant to the procedures set forth above in Subparagraph 61(g)(i), and the Back-Pension Damages, if any, payable to these class members will be paid pursuant to

the procedures set forth in Paragraph 56 of this Stipulation & Order,[37] except insofar as each pension payment included in any calculation of Back-Pension Damages will be reduced by the applicable Monthly Outside Pension Offset, and pre- and post-judgment interest on Back-Pension Damages will be calculated on that reduced amount.

iv. **Class members who retired from a New York State public retirement system and died after attaining TRS's normal retirement age:** Pension mitigation for these class members will be calculated pursuant to the procedures set forth in Subparagraph 61(g)(i), and the Back-Pension Damages, if any, payable to the estates or beneficiaries of these class members will be paid pursuant to the procedures set forth in Paragraph 56 of this Stipulation & Order, except insofar as each pension payment included in the calculation of Back-Pension Damages will be reduced by the applicable Monthly Outside Pension Offset, and pre- and post-judgment interest on Back-pension Damages will be calculated on that reduced amount.

v. **Class members who retired from a New York State public retirement system and died before attaining TRS's normal retirement age:**

1. The estate of the class member will receive a lump-sum payment from the BOE that is equal to the difference between the TRS death benefit the class member would have received absent BOE discrimination and the actuarial value of the class member's Outside Pension from a New

[37] For purposes of this paragraph, the NYCOA and RRC will calculate the value of a class member's Back-Pension Damages pursuant to the actuarial-adjustment process set forth in Subparagraph 61(g)(i). Paragraph 56 of the Stipulation & Order will govern the manner in which Back-Pension Damages will be paid.

York State public retirement system as of the date of the class member's retirement, as determined by RRC or the NYCOA (if the Outside Pension is from a New York City retirement system), less the difference between the total employee contributions, including AMCs, that would have been payable to TRS had such member participated in TRS during his or her counterfactual service period and the total employee contributions actually paid to the Outside Pension. If this calculation yields a difference of zero or less, the class member will receive no pension relief.

2. The BOE will make the lump-sum payment, along with post-judgment interest, as soon as practical following entry of an individual class member's judgment.

h. <u>All Other Outside Pensions</u>

i. **Class members who are members of any other Outside Pension and have not yet retired:**

1. RRC will calculate the monetary value of the Outside Pension attributable to the counterfactual service period as an annuity net of employee contributions by subtracting the annual benefit of the Outside Pension that accrued prior to the counterfactual service period from the annual benefit of the entire accrued Outside Pension as of the date the Court enters the class member's individual judgment. The NYCOA will then determine the Outside Pension Annual Benefit by actuarially adjusting the Outside Pension attributable to the counterfactual service period into its equivalent under the plan provisions of the TRS plan the member will enter.

2. The NYCOA will calculate the monetary value of the TRS Pension Annual Benefit by subtracting the annual benefit of a TRS pension, incorporating all creditable New York State public service rendered by the class member prior to the counterfactual service period, from the annual benefit of a TRS pension, incorporating both prior creditable service and the class member's counterfactual service. The NYCOA will then subtract the Outside Pension Annual Benefit from the TRS Pension Annual Benefit. If the difference is zero or less, the class member will not receive pension relief. If the difference is greater than zero, the class member's counterfactual-service-and-salary history will be transmitted to TRS, and the preceding paragraphs of this Stipulation & Order will govern the class member's participation in TRS, including the calculation and payment of employee contributions attributable to the class member's counterfactual service, except to the extent inconsistent with this subparagraph.

3. With respect to class members who enter TRS, the Outside Pension Annual Benefit will be divided by twelve to determine the Monthly Outside Pension Offset. Upon the class member's retirement from TRS, the Monthly Outside Pension Offset will be subtracted from the class member's TRS pension payments on an ongoing basis.

4. The class member will be permitted to buy back with TRS any creditable service rendered prior to the counterfactual service period on the same terms as other TRS members who buy back prior creditable service.

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 43 of 52

ii. **Class Members who died prior to retirement and whose beneficiaries or estates received, or became entitled to receive, death benefits from an Outside Pension:**

1. The estate of the class member will receive from the BOE a lump sum that is equal to the difference between the TRS death benefit the class member would have received absent BOE discrimination and the death benefit the estate or any beneficiary has received or will receive from the Outside Pension, less the difference between the total employee contributions, including AMCs, that would have been payable to TRS had the class member participated in TRS during his or her counterfactual service period, and the total employee contributions actually paid to the Outside Pension, as determined by RRC. If this calculation yields a difference of zero or less, the estate of the class member will receive no pension relief.

2. The BOE will make the lump-sum payment, along with post-judgment interest, as soon as practical following entry of an individual class member's judgment.

iii. **Class members who have retired from any other Outside Pension**: Pension mitigation for these class members will be calculated pursuant to the procedures set forth above in Subparagraph 61(h)(i), and the Back-Pension Damages, if any, payable to these class members will be paid pursuant to the procedures set forth in Paragraph 56 of this Stipulation & Order, except insofar as each pension payment included in any calculation of Back-Pension Damages will be

reduced by the applicable Monthly Outside Pension Offset, and interest on Back-Pension Damages will be calculated on that reduced amount.

iv. **Class members who retired from any other Outside Pension and died after attaining TRS's normal retirement age:** Pension mitigation for these class members will be calculated pursuant to the procedures set forth in Subparagraph 61(h)(i), and the Back-Pension Damages, if any, payable to estates or beneficiaries of these members will be paid pursuant to the procedures set forth in Paragraph 56 of this Stipulation & Order, except insofar as each pension payment included in the calculation of Back-Pension Damages will be reduced by the applicable Monthly Outside Pension Offset, and interest on Back-Pension Damages will be calculated on that reduced amount.

v. **Class members who retired from any other Outside Pension and died before attaining TRS's normal retirement age:**

1. The estate of the class member will receive a lump-sum payment from the BOE that is equal to the difference between the TRS death benefit the class member would have received absent BOE discrimination and the actuarial value of the class member's Outside Pension as of the date of the class member's retirement, as determined by RRC, less the difference between the total employee contributions, including AMCs, that would have been payable to TRS had the class member participated in TRS during his or her counterfactual service period and the total employee contributions actually paid to the Outside Pension. If this calculation yields a difference of zero or less, the class member will receive no pension relief.

2. The BOE will make the lump-sum payment, along with post-judgment interest, as soon as practical following entry of an individual class member's judgment.

i. If Plaintiffs or Defendant wish to contest any pension-valuation determination made by RRC or the NYCOA pursuant to Paragraph 61 of this Stipulation & Order, either party may seek a hearing before the Special Master, who will resolve all pension-valuation disputes pursuant to his Order of Appointment.[38]

62. **Employer-Sponsored Defined-Contribution Plans.** To the extent a class member received employer contributions in a defined-contribution plan during the class member's counterfactual service period, the portion of the class member's account balance in the plan as of the entry of his or her individual judgment that constitutes employer contributions will mitigate the class member's backpay damages, not the class member's pension relief. Pursuant to a ruling by the Special Master, any investment returns on the portion of the class member's account balance that constitutes employer contributions will also mitigate the class member's backpay damages.

63. Except to the extent necessary to effectuate the relief contemplated by this Stipulation & Order and any future order issued by the Court, the Affected Systems are not obligated to implement policies and procedures not detailed in this Stipulation & Order or any future order of the Court.

64. Except as detailed herein or in any future order issued by this Court, the calculation and administration of benefits for individual class members will be undertaken in accordance with the RSSL and other applicable law. The parties acknowledge that any payment to a class member

---

[38] The Special Master will only review the valuations performed by the NYCOA and RRC as necessary to effectuate the relief set forth in this Stipulation & Order.

contemplated by this Stipulation & Order may be offset to satisfy any deficit—to the extent such a deficit is unrelated to BOE discrimination—that a class member may have relating to his or her participation in an Affected System or other New York City or State public pension system.

65. All functions directed to be performed by an Affected System may be performed by other parties, provided the assignment of the function to another party does not affect the purpose or intent of this Stipulation & Order.

66. To the extent individual class members present unique factual scenarios that are not covered by the terms of this Stipulation & Order; otherwise applicable law; or a rule, policy, or practice of an Affected System, the signatories agree to work together in good faith to determine the appropriate pension relief for those class members. The Court retains jurisdiction over any disputes between the parties related to these class members, and the Special Master's Order of Appointment extends to resolve these disputes.

67. The Court also retains jurisdiction over any disputes regarding the operation of this Stipulation & Order, and the Special Master's Order of Appointment extends to resolve these disputes.

68. This Stipulation & Order may be executed in counterparts, each of them will be deemed an original, and all of them together will constitute one and the same instrument. This Stipulation & Order may be executed by facsimile or PDF signatures.

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 47 of 52

STIPULATED AND AGREED UPON BY:

Joshua S. Sohn
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
*Counsel for Plaintiffs*

William S. Fraenkel
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, NY 10007
*Counsel for Defendant*

Patricia Reilly
Executive Director
Teachers' Retirement System of the City of New York
55 Water Street
New York, NY 10041

Sanford R. Rich
Executive Director
Board of Education Retirement System of the City of New York
65 Court Street, 16th Floor
Brooklyn, NY 11201

Melanie Whinnery
Executive Director
New York City Employees' Retirement System
335 Adams Street, Suite 2300
Brooklyn, NY 11201

STIPULATED AND AGREED UPON BY:

Joshua S. Sohn
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
*Counsel for Plaintiffs*

William S. Fraenkel
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, NY 10007
*Counsel for Defendant*

Patricia Reilly
Executive Director
Teachers' Retirement System of the City of New York
55 Water Street
New York, NY 10041

Sanford R. Rich
Executive Director
Board of Education Retirement System of the City of New York
65 Court Street, 16th Floor
Brooklyn, NY 11201

Melanie Whinnery
Executive Director
New York City Employees' Retirement System
335 Adams Street, Suite 2300
Brooklyn, NY 11201

STIPULATED AND AGREED UPON BY:

____________________
Joshua S. Sohn
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
*Counsel for Plaintiffs*

____________________
William S. Fraenkel
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, NY 10007
*Counsel for Defendant*

Patricia Reilly
Executive Director
Teachers' Retirement System of the City of New York
55 Water Street
New York, NY 10041

____________________
Sanford R. Rich
Executive Director
Board of Education Retirement System of the City of New York
65 Court Street, 16th Floor
Brooklyn, NY 11201

____________________
Melanie Whinnery
Executive Director
New York City Employees' Retirement System
335 Adams Street, Suite 2300
Brooklyn, NY 11201

STIPULATED AND AGREED UPON BY:

____________________
Joshua S. Sohn
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
*Counsel for Plaintiffs*

____________________
William S. Fraenkel
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, NY 10007
*Counsel for Defendant*

____________________
Patricia Reilly
Executive Director
Teachers' Retirement System of the City of New York
55 Water Street
New York, NY 10041

____________________
Sanford R. Rich
Executive Director
Board of Education Retirement System of the City of New York
65 Court Street, 16th Floor
Brooklyn, NY 11201

____________________
Melanie Whinnery
Executive Director
New York City Employees' Retirement System
335 Adams Street, Suite 2300
Brooklyn, NY 11201

STIPULATED AND AGREED UPON BY:

______________________
Joshua S. Sohn
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
*Counsel for Plaintiffs*

______________________
William S. Fraenkel
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, NY 10007
*Counsel for Defendant*

______________________
Patricia Reilly
Executive Director
Teachers' Retirement System of the City of New York
55 Water Street
New York, NY 10041

______________________
Sanford R. Rich
Executive Director
Board of Education Retirement System of the City of New York
65 Court Street, 16th Floor
Brooklyn, NY 11201

Melanie Whinnery
Executive Director
New York City Employees' Retirement System
335 Adams Street, Suite 2300
Brooklyn, NY 11201

ON RECOMMENDATION OF THE SPECIAL MASTER

SO ORDERED.

Dated: December 17, 2018

Kimba M. Wood

KIMBA M. WOOD
United States District Judge

THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELSA GULINO, MAYLING RALPH, PETER WILDS, and NIA GREENE, on behalf of themselves and all others similarly situated,

Plaintiffs,

- against -

THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,

Defendant.

96 Civ. 8414 (KMW)

## SETTLEMENT AND RELEASE AGREEMENT BETWEEN MAURICE OPARAJI SR. AND THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK

This Settlement and Release Agreement (this "Agreement"), effective on this 9th day of Sept. 2021 (the "Effective Date") is entered into by and among Maurice Oparaji Sr. with Claim No.: 1002693 and residing at 245-11 133 Road, Rosedale, NY, 11422, on the one hand, and the Board of Education of the City School District of the City of New York ("BOE"), on the other hand. Maurice Oparaji Sr. and BOE may sometimes be referred to individually as a "Party" and, collectively as the "Parties."

### WITNESSETH

WHEREAS, Maurice Oparaji Sr. is a class member in a Title VII class-action filed against BOE in the United States District Court for the Southern District of New York titled *Gulino et al. v. Board of Education of the City School District of the City of New York*, No. 96 CV 8414 (KMW) (the "Court Action");

WHEREAS, on February 19, 2021, the United States District Court for the Southern District of New York entered an individual final judgment for Maurice Oparaji Sr. against BOE for monetary and non-monetary relief, *Gulino et al. v. Board of Education of the City School District of the City of New York*, No. 96 CV 8414 (KMW), [ECF No. 7422] (the "Judgment");

WHEREAS, Maurice Oparaji Sr.'s total judgment amount equals $37,120.00 (the "Monetary Relief");

WHEREAS, if the Parties continue to litigate the Court Action, and if Maurice Oparaji Sr. were to prevail in an appeal of the Judgment, Maurice Oparaji Sr. would be entitled to post-judgment interest calculated from the date of entry of the Judgment. Post-judgment interest is calculated based on the weekly average one-year constant maturity rate published by the United States Treasury as of the calendar week preceding the date of the Judgment. Currently, the post-judgment interest rate is approximately 0.08% and was approximately 2.5% in 2019;

WHEREAS, to avoid the expense, risk, continued delay, disruption, and uncertainty of BOE's appeal of the Judgment, BOE and Maurice Oparaji Sr. have agreed upon terms by which BOE will satisfy the Judgment to resolve all pending disputes between or among them relating to the Liberal Arts and Sciences Test (the "LAST") and/or the Court Action;

NOW, THEREFORE, in consideration of the mutual agreements, conditions, covenants, promises, and representations set forth in this Agreement, the receipt and sufficiency of which are hereby acknowledged, BOE and Maurice Oparaji Sr. agree to the following:

1. <u>Payment of Monetary Relief to Maurice Oparaji Sr.</u>.

   a. Together with a signed copy of this Agreement, Maurice Oparaji Sr. will submit to the Claims Administrator, Garden City Group ("GCG" also known as Epiq) a completed W-9 form, a copy of which is attached as Exhibit A;

b. The Monetary Relief will be paid no later than December 31, 2021 (the "Payment"). Payment on behalf of BOE will include both back wages and other monetary damages;

c. Upon receipt of a fully executed settlement agreement, payment options will be provided to Maurice Oparaji Sr. and the Payment will be distributed according to Maurice Oparaji Sr.'s payment option election;

d. Maurice Oparaji Sr. understands that the Payment is taxable. BOE will withhold applicable federal, state, and local taxes from the Payment. Maurice Oparaji Sr. is responsible for paying any applicable taxes in connection with the Payment not withheld by BOE;

e. Maurice Oparaji Sr. understands that in exchange for the certainty of the Payment, Maurice Oparaji Sr. is giving up his right to payment of post-judgment interest.

2. Non-Monetary Relief. The non-monetary relief to which Maurice Oparaji Sr. is entitled pursuant to the Judgment remains unaffected by the terms of this Agreement, and BOE will effectuate the non-monetary relief to which Maurice Oparaji Sr. is entitled pursuant to the terms of the Judgment and any other applicable orders of the Court, including the terms of the Court's Order dated December 17, 2018 (Pension Stipulation & Order [ECF No. 1014]).

3. Office of the Gulino Ombudsman. BOE has created a team responsible for monitoring and assisting in effectuating the provision of the Monetary Relief and Non-Monetary Relief described in Paragraphs 1.b.and 2 of this Agreement (the "Office of the Gulino Ombudsman"). The Office of the Gulino Ombudsman can be contacted at: GulinoInquiries@schools.nyc.gov. To the extent Maurice Oparaji Sr. has any questions or concerns related to the administration of his Monetary Relief and/or Non-Monetary Relief,

Maurice Oparaji Sr. can direct those questions and/or concerns to the Office of the Gulino Ombudsman.

4. Release of BOE. Effective upon Maurice Oparaji Sr.'s receipt of the Payment described in Paragraph 1.b., as well as all non-monetary relief described in Paragraph 2., Maurice Oparaji Sr. for himself and on behalf of his respective heirs, successors and assigns, and anyone claiming by, through or under any of the aforementioned persons or entities, hereby releases BOE and all of its current, former or future officials, employees, agents, insurers, representatives, successors, divisions, offices, departments, and agencies, from all manner of liabilities, claims, causes of action, actions, proceedings, suits, demands, debts, damages, and sums of money, related to Maurice Oparaji Sr.'s Title VII Claim and Judgment.

5. Parties to Forgo Appeals. Maurice Oparaji Sr. and BOE each agree to forgo or discontinue any and all appeals of the Judgment, including, but not limited to, a petition for a writ of certiorari to the United States Supreme Court seeking review of the Judgment.

6. Binding Agreement. This Agreement is binding upon and inures to the benefit of Maurice Oparaji Sr. and BOE, and each of their respective agents, officers, directors, partners, employees, representatives, attorneys, successors, predecessors, parents, subsidiaries, affiliates, and assigns.

7. Entire Agreement. This Agreement represents the entire agreement between BOE and Maurice Oparaji Sr. with respect to the subject matter hereof. This Agreement may not be modified, changed, amended, supplemented or rescinded except pursuant to a written instrument duly executed by BOE and Maurice Oparaji Sr..

8. Governing Law. The validity, construction and performance of this Agreement (and any claim, dispute or matter arising under or in connection with it or its enforceability, including,

without limitation, any non-contractual claim, dispute or matter) shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts to be performed wholly within the State of New York.

9. Headings. The headings herein are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

10. Counterparts. The Parties agree that this Agreement may be executed in counterparts, which when taken together shall constitute a single document.

**[THE REST OF THIS PAGE LEFT BLANK]**

IN WITNESS THEREOF, the Parties have executed this Agreement as of the date first written above.

**ACKNOWLEDGED AND AGREED:**

**MAURICE OPARAJI SR.**

By: Maurice Oparaji

STATE OF NEW YORK ) ss:

COUNTY OF QUEENS )

On the 9th day of SEPTEMBER, 2021, before me, the undersigned, a Notary Public in and for the State of NEW YORK, personally appeared Maurice Oparaji Sr., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

MARCIA M PHILLIPS
NOTARY PUBLIC, STATE OF NEW YORK
01PH6152203
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES SEPTEMBER 25, 2022

Marcia M Phillips
NOTARY PUBLIC

**BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK**

By: William S.J Fraenkel

Title: ACC



Claim No.: 1002693

# EXHIBIT

# B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------X

GULINO, ET AL.,

Plaintiffs,

96-CV-8414 (KMW)

**OPINION & ORDER**

-against-

THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,

Defendant.
-----------------------------------------------X

KIMBA M. WOOD, United States District Judge:

On June 13, 2016, Special Master Siffert issued an Interim Report and Recommendation (the "Report"), which addressed (1) Defendant's motion to categorically dismiss certain *per diem* teachers who did not become Provisional Preparatory Teachers, and (2) the damages model to be used at individual hearings. First, the Report recommends denying Defendant's motion to dismiss those claimants who worked as *per diem* substitute teachers prior to 2003 without becoming Provisional Preparatory Teachers. Second, the Report recommends denying the parties' requests for default rulings applicable to all class members as a matter of law, because the damages issues raised are not susceptible to class-wide determination. On June 27, 2016, Defendant Board of Education of the New York City School District ("BOE") filed objections to the Report's recommendations regarding the damages model and individual hearings.

After *de novo* review of all objections, the Court agrees with the Special Master. For the reasons stated below and the reasons stated in the Report, the Court ADOPTS the Special

Master's recommendations. What follows is a summary; even though the Court does not repeat here all of the Report's reasoning, the Court is in agreement with the Report in its entirety.

## I. BACKGROUND

Because neither party objects to the Report's factual background statement, and the Court assumes familiarity with the Report, the Court adopts that portion of the Report in full. *See* (June 13, 2016 Interim Report and Recommendation (the "Report") at 2-4 [Doc. No. 777]).[1]

## II. STANDARD OF REVIEW

As set forth in the Second Amended Order of Appointment and consistent with Federal Rule of Civil Procedure 53(f), the Court reviews *de novo* all objections to conclusions of law made or recommended by the Special Master. (November 12, 2014 Second Amended Order of Appointment at 3 [Doc. No. 524]); Fed. R. Civ. P. 53(f)(4). The Court also reviews *de novo* all objections to findings of fact made or recommended by the Special Master. (November 12, 2014 Second Amended Order of Appointment at 3); Fed. R. Civ. P. 53(f)(3).

Both the final Report and Defendant's filed objections are the products of an iterative process. The Special Master's Report follows extensive briefing by the parties and multiple conferences with the parties and their damages experts. The Special Master submitted one draft summary memorandum and one draft report to the parties and allowed for two rounds of draft objections by both parties before issuing his final Report. *See* Report at 3 & n.1. Although the

[1] The twenty-year history of this case was set forth in this Court's previous decisions. *See Gulino v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 96-CV-8414, 2015 WL 3536694, at *3 (S.D.N.Y. June 5, 2015) (Wood, J.); *Gulino v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 2015 WL 3536694 (Wood, J.) (finding the LAST-2 to be discriminatory under Title VII); *Gulino v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 907 F. Supp. 2d 492 (S.D.N.Y. 2012) (Wood, J.) (finding the LAST-1 to be discriminatory under Title VII on remand); *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361 (2d Cir. 2006) (partially affirming and reversing Judge Motley's original liability decision); *Gulino v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, No. 96-CV-8414, 2003 WL 25764041 (S.D.N.Y. Sept. 4, 2003) (Motley, J.) (original liability opinion); *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, 201 F.R.D. 326 (S.D.N.Y. 2001) (Motley, J.).

final Report incorporates and responds to a few of Defendant's objections, Defendant's final submission raises some new arguments that are discussed below. Plaintiffs did not file objections to the final Report.

The Report proceeds in two parts. First, the Special Master addresses Defendant's motion to categorically dismiss those 232 claimants who were employed as *per diem* substitute teachers prior to 2003, but who did not become Provisional Preparatory Teachers. The Special Master recommends denying Defendant's motion, because individual hearings are necessary to determine whether claimants were denied permanent teaching positions as a result of their LAST scores.[2] *See* Report at 4-7. Since Defendant does not object to that portion of the Report, the Court adopts the Special Master's recommendation.[3]

Second, the Special Master addresses the damages model to be used at individual hearings. The Special Master recommends denying the parties' request for default rulings applicable to all class members as a matter of law, because issues of fact remain to be decided at the individual hearings. The Court has conducted a careful *de novo* review of the Report, the submissions made to the Special Master, and all related material. As explained below, the Court agrees with the Special Master's recommendations and does not find Defendant's objections persuasive.[4]

---

[2] The Court agrees with the Special Master that Defendant is free to raise the Provisional Preparatory Teachers issue at individual hearings. *See* Report at 5-7.

[3] The Court also adopts the Special Master's conclusion regarding post-BOE employment, because there are no objections to his conclusion that Plaintiff's claim for loss of future earning capacity is a form of compensatory damages not available in this case. *See id.* at 26-28; *see also* 42 U.S.C. § 1981a(a)(1); *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 952 (7th Cir. 1998).

[4] Where noted below, the Court does accept a few clarifications noted in Defendant's objections.

## III. DISCUSSION

### A. The Special Master's Report

Both parties have submitted proposed expert reports regarding the damage model to be used at individual hearings, and both seek default rulings applicable to all class members as a matter of law. In the Report, the Special Master addresses the parties' agreements and disagreements regarding the damage model, including the appropriate standards and the burdens of proof for (1) lost BOE salary; (2) health care costs; (3) pension benefits; (4) tax adjustments; and (5) mitigation. After examining each of these issues individually, the Report recommends denying Plaintiff's and Defendant's requests for rulings as a matter of law, because these issues must be resolved at individual hearings.[5] The Court agrees.

#### *(1) Lost Salary*

The Special Master concluded that individual hearings at which both parties can offer relevant evidence are necessary to determine the salary a class member would have earned absent discrimination. *See* Report at 10-26. The damage model should predict how each class member would have advanced through salary steps over the course of her career and should calculate the wages that the class member would have earned had he or she not been forced to

---

[5] The fact-specific questions that need to be resolved at individual hearings include:

1) how long it would have taken a class member to achieve a permanent teaching position after passing the LAST;
2) how a class member would have advanced through the higher educational requirements for permanently appointed teachers;
3) how a class member would have advanced through the BOE's salary steps, including how long the class member would have worked at the BOE as a permanently appointed teacher;
4) the proper measure of damages for out-of-pocket health care expenses that would have been covered if the class member had been a permanently appointed teacher;
5) whether a tax adjustment should be awarded to compensate a class member for the tax consequences of receiving a lump sum backpay award in a single tax year; and
6) whether a class member satisfied the duty to mitigate and the amount of interim earnings that should be deducted from the class member's gross backpay award.

Report at 8.

take the discriminatory LAST. *Id.* at 10-11. After examining the salary table,[6] the Special Master addressed the three inputs necessary to determine a class member's counterfactual salary: counterfactual appointment dates, counterfactual educational advancement, and counterfactual step advancement.[7] *See id.* at 11-26. The Special Master properly concluded that "when a class member would have been appointed, the level of graduate education she would have obtained, how she would have advanced along the salary steps, and how long she would have remained with the BOE are all individualized questions of fact which Plaintiffs are entitled to litigate at individual hearings." *Id.* at 26.

*(2) Health Care Costs*

The Special Master correctly concluded that under Title VII, class members are entitled to recover for loss of health benefits. *See id.* at 28-29; *see Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993). Although there is a split of authority over whether plaintiffs can recover out-of-pocket costs or lost premiums, the Court agrees with the Report and "[m]ost district courts in the Second Circuit" in holding that class members are entitled to recover out-of-pocket expenses. *See United States v. City of N.Y. (Vulcans)*, 847 F. Supp. 2d 395, 422 (E.D.N.Y. 2012) (citing *Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 582-83 (S.D.N.Y. 2010) (Gardephe, J.)). Class members will bear the burden of establishing their out-of-pocket health care costs, and other fringe benefits, at individual hearings.

[6] The Court accepts Defendant's clarifications regarding longevity pay calculations and footnote eleven in the Report. *See* (Defendant's June 27, 2016 Objections ("Def.'s Obj.") at 2 [Doc. No. 783]).

[7] The "counterfactual" salary calculations are estimates of what a class member would have earned absent Defendant's discriminatory conduct.

*(3) Pension Benefits*

The Special Master concluded that findings of fact are necessary to determine the pension each plaintiff would have received absent Defendant's discrimination. *See* Report at 29-30. Although the parties agree that class members are entitled to the lost pensions they would have received absent the discriminatory LAST, calculating the amount owed each individual is complicated and requires findings of fact.[8] *Id.* Thus, individual hearings are the proper procedure for determining each class member's entitlements pursuant to the Teacher Retirement System and other pensions. *See id.*

*(4) Tax Adjustments*

The Special Master concluded that class members are entitled to present evidence at individual hearings that a tax-component award (a "tax gross-up") is necessary to compensate claimants fully for the additional tax liability they will incur as a result of receiving years of backpay in one lump sum. *Id.* at 30-32. Plaintiffs argue that a lump sum backpay award may force class members to pay more in taxes than they would have absent the BOE's discriminatory conduct. *See* (Plaintiff's March 4, 2016 Letter at 27-29). The Court agrees with the Special Master, the Third Circuit, Seventh Circuit, and Tenth Circuit that a tax gross-up is appropriate when necessary to make a claimant whole. *See E.E.O.C. v. N. Star Hosp., Inc.*, 777 F.3d 898, 903-05 (7th Cir. 2015); *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 441-42 (3d Cir. 2009); *Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1456 (10th Cir. 1984). However, as the

---

[8] Claimants are not required to pay back interest on their pension contributions, because any delay in claimants' pension contributions was the result of Defendant's discriminatory conduct. Title VII demands that persons be made whole for the injuries suffered as a result of unlawful discrimination, which in this case includes the delay in claimants' pension contributions. *See United States v. City of N.Y. (Vulcans)*, No. 07-CV-2067, 2015 WL 1800245, at *2-*9 (E.D.N.Y. Apr. 16, 2015).

Report notes, there may be cases where a tax adjustment lowers, rather than increases, awards for class members. *See* Report at 32.

*(5) Mitigation*

The Special Master concluded that the amounts a claimant earned from other employment, or from any interim employment that was available to her or him through reasonable efforts, must be deducted from the backpay a claimant would have earned as an employee of the BOE. *See* Report at 32-33; *Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 96-CV-8414, 2013 WL 4647190, at *7 (S.D.N.Y. Aug. 29, 2013) (Wood, J.). Title VII provides that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5(g)(l). Accordingly, a Title VII plaintiff "must attempt to mitigate her damages by using 'reasonable diligence in finding other suitable employment.'" *Dailey v. Societe Generale*, 108 F.3d 451, 455 (2d Cir. 1997) (quoting *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (1982)). Defendant bears the burden of proving the amounts to be deducted from backpay and proving that a claimant failed to satisfy her/his duty to mitigate.[9] Report at 33.

B. Defendant's Objections

Defendant objects to the Report, arguing that by allowing individual hearings to decide many of the backpay issues, the Report ignores reality and replaces it with "counterfactual speculation." (Defendant's June 27, 2016 Objections ("Def.'s Obj.") at 2 [Doc. No. 783]). Defendant asserts that the parties have actual data on the factors that affect a claimant's backpay

[9] The Court agrees with the Special Master that, "Defendant is not entitled, however, to a ruling as a matter of law that any class member whose earnings dipped below a certain threshold voluntarily withdrew from the labor market, terminating their damages at that point in time." Report at 33. This issue must be decided at individual hearings.

amount, such as: whether claimants obtained an advanced degree, how claimants advanced to higher salary grades, and how long it took claimants to become permanently appointed teachers after passing the LAST.[10] *See id.* 2-4. Defendant wants the Special Master and the Court to assume, for example, that because a claimant did not receive a master's degree after failing to pass the discriminatory LAST exam, that claimant would have failed to obtain a master's degree even if she were not required to take the discriminatory LAST exam. *Id.* at 3. Defendant believes that by requiring individual hearings, rather than making categorical rulings, the Report entertains "claimant fantasies" about what would have happened to claimants absent Defendant's discriminatory conduct.[11] *Id.* at 2.

C. Defendant's Objections are Unavailing

The Court finds that Title VII's goals can best be reached here by examining each claimant's circumstances at individual hearings. *See Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 96-CV-8414, 2015 WL 5603020, at *7 (S.D.N.Y. Sept. 21, 2015) (Wood, J.).

The primary goals of Title VII are to remove discriminatory barriers and make persons whole for injuries suffered as a result of unlawful employment discrimination. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). "Once a violation of Title VII is established, the district court possesses broad power as a court of equity to remedy the vestiges of past discriminatory practices." *Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 278 (2d Cir. 1981) (quoting *Rios v. Enter. Ass'n Steamfitters Local 638 of U. A.*, 501 F.2d 622, 629 (2d Cir. 1974)); *see Louisiana v. United States*, 380 U.S. 145,

[10] Similarly, Defendant argues that "fact rather than fantasy" should be used to decide issues regarding attrition, claimants who were probationary teachers and were fired, and claimants who eventually passed the LAST but did not become BOE teachers. *See* Def.'s Obj. at 2-4.

[11] To address Defendant's concern that the Report does not address important issues, the parties may seek to discuss the efficacy of an additional round of briefing and another Report and Recommendation to resolve any lingering issues.

154 (1965) ("[T]he court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future."). Although this power is not unfettered, uncertainties should be construed against the wrongdoer. *See Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 156 (3d Cir. 1999) (citing *Wooldridge v. Marlene Indus. Corp.*, 875 F.2d 540, 549 (6th Cir. 1989)); *E.E.O.C. v. Joint Apprenticeship Comm. of Joint Indus. Bd. of Elec. Indus.*, 186 F.3d 110, 122 (2d Cir. 1999) (citing *Cohen v. W. Haven Bd. of Police Comm'ns*, 638 F.2d 496, 502 (2d Cir. 1980)); *Ass'n Against Discrimination in Employment*, 647 F.2d at 289.

Defendant asks the Court to ignore Title VII's primary goals and decide uncertainties against the injured party. Defendant argues that the Court should assume that simply because the post-discrimination reality produced certain outcomes, those outcomes necessarily would have occurred absent the discrimination. Although Defendant may be correct that, in some instances, claimants' real life outcomes were not influenced by Defendant's discrimination, Defendant is not entitled to a categorical ruling on the matter.

The Court has not only the power, but also the duty, to ensure that class members are made whole. This requires determining whether a claimant's educational advancement, salary level, appointment time, or any of the other issues identified by the Special Master were tainted by Defendant's discriminatory conduct. These fact-intensive issues cannot be determined without individual hearings. The individual hearings outlined in the Special Master's Report ensure that both Plaintiffs and Defendant are provided the proper opportunity to submit relevant evidence in order to, "as nearly as possible, recreate the conditions and relationships that would have been had there been no unlawful discrimination." *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 372 (1977) (internal citations and quotations omitted).

As noted in the Special Master's Report, courts will use evidence of what actually happened when the events that transpired are not tainted by the defendant's discriminatory action. Report at 16. In *Saulpaugh v. Monroe County Hospital*, the Second Circuit found that the plaintiff could not recover backpay after the date she became disabled, because her disability was not the result of the defendant's discriminatory conduct. 4 F.3d 134, 145 (2d Cir. 1993). In this case, however, Defendant BOE cannot claim that a certain claimant's appointment lag or educational advancement was categorically not the result of its discriminatory conduct. Accordingly, because Defendant's discriminatory conduct may have influenced a claimant's prospects, the Court agrees with the Special Master that individual hearings are necessary. *See Gulino*, 2015 WL 5603020, at *7 ("Individual hearings can best ensure that the requirements of Title VII are met and that claimants are properly compensated.")

## IV. CONCLUSION

For substantially the same reasons stated in the Report and described herein, the Court ADOPTS the June 13, 2016 Interim Report and Recommendation.

SO ORDERED.

Dated: New York, New York
August 3, 2016

/s/
KIMBA M. WOOD
United States District Judge

# EXHIBIT

# C

trs

TEACHERS' RETIREMENT SYSTEM OF THE CITY OF NEW YORK
55 Water Street, New York, NY 10041 • www.trsnyc.org • 1 (888) 8-NYC-TRS

December 17, 2021
TRS Membership No.: 00T814057
Re: *Gulino v. NYCBOE*

Maurice U Oparaji
24511 133Rd Rd
Unit 1
Rosedale, NY 11422-1419

VIA CERTIFIED MAIL
(Return Receipt Requested)

## *GULINO* INVOICE FOR PENSION CONTRIBUTIONS

The information provided in this document is not intended as legal advice. It is not intended to comprehensively describe or explain the pension relief granted by *Gulino v. Board of Education*, 96 Civ. 8414. All governing provisions of law apply except as specifically modified by the *Gulino v. Board of Education* Pension Stipulation and Order (the "Pension Order").

Dear Maurice U Oparaji:

This is an invoice from the Teachers' Retirement System of the City of New York (TRS) for Basic Member Contributions (BMCs) that you must pay in order to receive the retirement service credit awarded to you in *Gulino v. Board of Education*. Please consult your personal judgment documents for details on the specific salary periods for which you are being billed.

**Payment Due**
The below indicates the amount you owe:

The cost of BMCs owed is: $2,575.65.

**TRS must receive your total payment of $2,575.65 within 90 days of the certified mailing date of this letter, or within 90 days of your receipt of the DOE back-pay award, whichever is later.**

Failure to pay the total above amount by the above deadline will result in an opt-out of *Gulino* pension relief and a forfeiture of your right to receive pension credit attributable to *Gulino* (unless otherwise directed by the court).

**Cost of Your BMCs**

In general, the cost of your BMCs is 3% of your counterfactual salary attributable to *Gulino* for the duration of your counterfactual service attributable to *Gulino* that is subject to the payment of BMCs. If you are a current TRS member, the cost of your BMCs pertains to only that increment of counterfactual service and salary attributable to *Gulino* that exceeds existing service and salary already credited in TRS. In addition, the total amount of your BMCs has been reduced by 16%, pursuant to the terms of the Pension Order.

**How to Pay Your Invoice**

You must submit payment in a **single** check for the **total** amount due (partial payments or multiple checks will not be accepted).

Please make your check payable to "Teachers' Retirement System of the City of New York" and indicate "Gulino Invoice for Pension Contributions" on the check. Do not staple anything to your check. Mail your check, **with the attached voucher**, to:

**Teachers' Retirement System of the City of New York**
**Bowling Green Station**
**P.O. Box 5010**
**New York, NY 10274**

**For Further Information**

TRS cannot answer questions about the *Gulino* litigation. For more information, please contact the *Gulino* Plaintiffs' Attorney at the address below:

Stroock & Stroock & Lavan LLP
c/o Rachel Stevens
180 Maiden Lane
New York, NY 10038
212-806-1229

Sincerely,

TRS Member Services

# EXHIBIT

# D

CHASE

-$2,575.65
Total

Jan 6, 2022
Post date

334
Check #

MAURICE U. OPARAJI
24511 - 133RD RD 347-650-7886
ROSEDALE, NY 11422-1419

1-2/210
334

DATE 12/23/2021

PAY TO THE ORDER OF TRS $2,575.65

Two Thousand Five Seventy Five 65/100 DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO BMC-00T814057

⑆021000021⑆ 857773076⑈0334

# EXHIBIT

# E

trs

TEACHERS' RETIREMENT SYSTEM OF THE CITY OF NEW YORK
55 Water Street, New York, NY 10041 • www.trsnyc.org • 1 (888) 8-NYC-TRS

January 03, 2022
TRS Membership No.: 00T142296
Tier: Tier IV

Maurice U Oparaji
24511 133Rd Rd
Unit 1
Rosedale, NY 11422-1419

# Welcome to TRS!

Dear Maurice U Oparaji:

Welcome to TRS. Now that you're a member of TRS, please note the following important information.

- First, go to **www.trsnyc.org** and register for the secure section of our website. Whether you're on a desktop or a mobile device, setting up your username and password is simple.

- Next, complete your enrollment online:

  - Designate your beneficiaries under the Qualified Pension Plan (QPP).
  - Upload proof of your date of birth.

  You can submit a birth certificate, passport, or naturalization document. If you don't have any of those documents, you can submit *two* of the following: driver's license; certificate of military record; Form SSA-2458 (Report of Confidential Social Security Benefit Information); or other government-issued identification. Please note that any date-of-birth documentation in a language other than English must be accompanied by a translation. Photocopies of all documents are acceptable.

Please submit your documentation as soon as possible. TRS cannot calculate your retirement benefits if we do not have this documentation.

TRS is here to serve you!

At any time, feel free to call our 24-hour information line at 1 (888) 8-NYC-TRS. During regular business hours, you can speak to a Member Services Representative at this number, or visit our Member Services Center at 55 Water Street in lower Manhattan.

On behalf of the Trustees of the Teachers' Retirement Board and TRS staff, welcome to TRS!

Sincerely,

TRS Member Services

(EN113)

trs

A publication of the
Teachers' Retirement System
of the City of New York

# New Law Affects Vesting, Contributions



Chapter 56 of the Laws of 2022, enacted in April, brings major changes for TRS members:

## Five-Year Vesting

All members are now considered vested after they have attained five years of service credit. Previously, the requirement was ten years for all Tier VI members as well as UFT-affiliated Tier IV members who joined TRS after December 10, 2009.

As a result of this change, several thousand members are now vested—meaning they qualify for a pension upon reaching retirement age. TRS will contact these members by letter over the summer and is in the process of updating our online materials to reflect this change.

## Tier VI Contribution Rates

For Tier VI members, pension contribution rates are calculated based on each member's projected or recent wages. Chapter 56 excludes "overtime" pay from the calculation for a period of about 24 months. TRS is reviewing the impact of this change, but it is possible that some Tier VI members may have a lower contribution rate temporarily.

We will publish updates on our website and in future editions of *In-Service News* when more information is available.

## Retiree Earnings Limit

Service retirees under age 65 normally are allowed to earn up to $35,000 per year in public employment within New York State without impacting their retirement allowance. As a result of Chapter 56, work in New York State public schools from April 9, 2022 through June 30, 2023 will not count toward that limit.

*Earnings After Retirement*

Retirement Checklist / 2
Pension Calculation / 2
Beneficiary Designations / 3
Especially for New Members:
- Maximize Your Membership / 4
- Avoid Deficits / 4
- Fit TDA in Your Budget / 5

TRS Plans Rank High / 5
Investment Results / 6
Outsmart Web Imposters / 7
Publications / 8
Calendar / 8

# Outsmart Web Imposters and Other Cybercriminals

Today, we live in a virtual environment. And with all the benefits of the Internet, there are some downsides—including cybercriminals. Fraudsters jump at the chance to hack your personal information. Two common gateways are web imposters and fake apps.

## Web Imposters

When a fraudulent web address is created to mimic a popular website, that's a web imposter. Instead of Walmart.com, for example, an imposter may create Wallmart.com. A simple change to the company web address can fool unsuspecting people and can lead to theft of data.

### Avoid becoming the next victim:

When you visit a website, check the address bar for the site's security status.

- A padlock icon should display before the web address. Avoid sites without the icon!
- The padlock indicates that any information you send to the site is sent securely and can't be intercepted.

Dashes and symbols in the domain name (like www.Apple #$%-.com) are a red flag indicating a likely web imposter.

The domain extension is often a clue.

- Common extensions for legitimate businesses: .org, .com, .edu, .gov
- Domain extensions like .biz or .info tend to be illegitimate.
- Note that .com and .net are the easiest extensions to obtain.

When you have trusted websites that you visit frequently, use the bookmark tool on your computer to "remember" those sites. Doing so allows you to visit sites you've previously confirmed with confidence.

## Fake Apps

While it may seem that every company has an application (app) for Apple or Android phones, that's not true. TRS does not have an app. Yet, there are TRS app imposters!

### Don't let imposter apps fool you. Confirm that the app is legitimate:

Obtain apps from Apple's App Store or the Google Play Store.

- Unfortunately, some fake apps may be there, too.
- Read the app score and customer reviews before downloading.

Check the company's website to see if the app is referenced.

- If it's not mentioned on the company website, it probably doesn't exist.

Most apps are available at no cost.

- If there is a cost, confirm the app is legit by contacting the company first.

Change your system settings to not allow third-party apps to be downloaded from untrusted sites.

Think twice before clicking a link or downloading anything on the Internet. Assume all unsolicited requests for information are phishing attempts. Whether it's a web imposter or fake app, spelling errors, bad formatting, and poorly written content are obvious clues. If you keep these tips foremost in your mind, you're less likely to fall into traps set by cybercriminals.

To be sure you're visiting the real TRS online, here are our web locations:




- Website: https://www.trsnyc.org
- Facebook: https://www.facebook.com/mytrsnyc
- Instagram: https://www.instagram.com/trsnyc
- Twitter: https://twitter.com/mytrsnyc
- YouTube: https://www.youtube.com/user/trsnyc

**TRS does not have an app, and we are not currently on any other social media platforms.**

# Semiannual Investment Results: 12/31/2021

## TRS Passport Funds

TRS' Passport Funds are available to all Tax-Deferred Annuity (TDA) Program participants and members in Tiers I and II for a portion of their funds in the Qualified Pension Plan (QPP).

For more recent investment results, please visit our website. (www.trsnyc.org ▶ **Investments** ▶ **Investment Returns**)

For more details about the Passport Funds, please review our annual *Fund Profiles* booklet.

### Annualized Investment Returns

| | 1 Year | 3 Year | 5 Year | 10 Year |
|---|---|---|---|---|
| Diversified Equity Fund | 20.24% | 22.09% | 16.37% | 13.90% |
| Balanced Fund** | 6.22% | 8.19% | N/A | N/A |
| International Equity Fund | 8.44% | 15.08% | 10.89% | 8.95% |
| Sustainable Equity Fund | 30.36% | 30.98% | 20.31% | 16.67% |
| U.S. Equity Index Fund*** | 25.82% | N/A | N/A | N/A |
| International Equity Index Fund*** | 7.81% | N/A | N/A | N/A |

*Returns for the Fixed Return Fund are set by New York State Law. Currently, members affiliated with the United Federation of Teachers are credited with 7% annually on TDA investments in the Fund. Other members' TDA investments in the Fund, and any member's QPP investments in the Fund, are currently credited with 8.25% annually. Historical rates are published on our website. For retirees and annuitants who have Fixed Return Fund investments, the guaranteed return is factored into their monthly payments. Funds that members allocate to the Fixed Return Fund are invested with the Pension Fund.

**5- and 10-year investment returns are not available for the Balanced Fund, which began on 1/1/2018.

***3-, 5-, and 10-year investment returns are not available for the U.S. Equity Index and International Equity Index funds, which began on 1/1/2020. The 1-year returns shown above represent the actual returns of the U.S. Equity Index Fund and the International Equity Index Fund. Any difference between the returns of the U.S. Equity Index Fund and the International Equity Index Fund and that of their underlying mutual funds is due to the timing of cash flows.

### Five-Year Performance vs. Benchmarks

**Diversified Equity Fund:**

- ↓ 0.59% Hybrid Benchmark
- ↓ 2.15% Global Market Composite Benchmark

**Balanced Fund[1]:**

- ↓ 0.11% Custom Benchmark

**International Equity Fund:**

- ↑ 0.9% International Equity Fund Composite Benchmark

**Sustainable Equity Fund:**

- ↓ 2.07% Sustainable Equity Fund Composite Benchmark

[1] As of 1/1/2018, the Bond Fund became the Balanced Fund, so no 5-year comparison is available. A 3-year comparison is shown above.

### TRS Plans

TRS offers two plans to members.

All members participate in the Qualified Pension Plan (QPP), a defined-benefit plan that is funded by employer contributions and member contributions. TRS also administers a Tax-Deferred Annuity (TDA) Program, a supplemental defined-contribution plan. The TDA Program is funded by member contributions.

**QPP Total Investments**
$80.89 Billion*

**TDA Total Investments**
$40.00 Billion*

** As of 12/31/2021 (unaudited)*

# Make Your Next Smoothie at Home

### *Your retired self will thank you*

Ever feel like your paycheck is spent before it hits your bank account? You're not alone. Life is expensive. And retirement costs more than you think.

Of course, many expenses are unavoidable: housing, food, phone, electricity. It's the discretionary expenses where you can exercise some control—and direct the savings toward your future, by investing in TRS' Tax-Deferred Annuity (TDA) Program.

Small changes over time make a huge difference. Consider the person with a smoothie habit. Buying five smoothies a week at $8 a pop incurs a monthly expense of $160! Cutting out some of those smoothies and instead putting that money into a TDA account could lead to a big boost in retirement income. And since TDA contributions are deducted from pay before taxes, TDA participants also reduce their current taxable income.

You can find tons of money-saving tips online, but here are a few:

- Prepare your meals at home instead of buying takeout—and that includes smoothies!
- Limit impulse buys and create shopping lists.
- Create a monthly budget and stick to it.

Consider tracking your expenses for the next 30 days. See exactly where your money is going. Find ways to economize, and then steer those dollars to your TDA account. If you do, more of your paycheck will go to Future You, instead of toward your taxes.



Tips for taking full advantage of TDA:

- Next time you receive a salary increase or a retroactive payment, direct that money to your TDA account.
- Set a reminder to increase your TDA contributions by 1% each year on a date that you choose.
- Consider contributing at your Full-Year, Full-Contribution Rate. This allows you to make the maximum allowable investment in your TDA account from year to year.
- If you're over age 50 or have more than 15 years of City service, you can make extra TDA contributions each year, above the general annual limit ($20,500 in 2022). See the *TDA Program Summary* for details.

## TRS Plans Rank High

According to *Pensions & Investments* magazine's annual survey of retirement funds, TRS' Tax-Deferred Annuity (TDA) Program remains America's:

✓ 2nd largest 403(b) plan

✓ 4th largest public defined-contribution plan

TRS' Qualified Pension Plan (QPP) is part of the combined New York City retirement plan—which is ranked the 5th largest overall fund, and the 4th largest defined-benefit plan in the country.

The *Pensions & Investments* survey was published in the February 14, 2022 issue, based on reported assets as of September 30, 2021.

# Get the Most from Your TRS Membership

## *Tune in to online educational programs*



All year long, TRS offers virtual educational programs that are informative—and free. During the school year, most classes begin at 3:00 p.m. and are completed within two hours. June's offerings are focused on retirement-related classes. In July and August, classes are held throughout the day, and there are offerings for early-, mid-, and late-career members—every phase of your path toward retirement.

Advance registration is required for all programs. The information you'll obtain will help you make important decisions throughout your career and even after you retire.

These programs are specifically designed for newer members of TRS:

**Tier VI—Planning for Tomorrow:** Designed just for Tier VI members, this program describes TRS benefits, contributions, and services. The session also explains purchasing service credit, enrolling in the TDA Program, and using the TRS website to manage your account. **Next session: Monday, August 8**

**What is Service Buyback?:** Service credit is one of the key factors in determining a member's retirement allowance. And increasing service credit means increasing the amount of your retirement allowance. This program will review the different types of creditable service and the options to purchase service. **Next session: Tuesday, August 9**

**Introduction to the TDA Program:** This program is for in-service members who are new to the Tax-Deferred Annuity Program, TRS' supplemental retirement plan. The plan's features and benefits are presented, and the steps for enrolling are explained. Whether you haven't joined TDA yet or you want to learn how to maximize your participation, this session is for you. **Next session: Thursday, August 11**

View the complete schedule on our website's Educational Programs page and register today! (www.trsnyc.org ▶ Resources ▶ Educational Programs)

# Avoid Deficits in Your Pension Contributions

## *Check your pay statements*

Your TRS membership requires you to contribute a portion of your salary toward your pension: 3% to 6% for new members, depending on your salary. This deduction is shown on your pay statements by the code TRS PEN STD. If you're a Tier VI member and you do not see this deduction on your pay statements, the required contributions are not being taken from your pay, and you should contact TRS immediately.

The exact amount of your pension deductions is based on data and wage information that your employer provides to TRS. And, while all members should monitor their pay statements to ensure expected TRS deductions are taken it is especially important for CUNY employees to do this. Currently, CUNY does not have an automated process to provide TRS with employment data for all titles, so errors leading to missed contributions are possible.

When required contributions are not deducted from a member's pay, a "deficit" situation can result. In this case, TRS contacts members by letter to notify them of the missed contributions and provide payment options (usually, one direct payment online or a payment plan of deductions from pay). Interest charges also accrue on the cost of a deficit, so it's better to resolve deficits sooner than later.

TRS makes every effort to prevent deficits and notifies members as soon as possible once a deficit is discovered. But you can help out by keeping an eye on your pay statements for that TRS PEN STD deduction.

# Naming a Charity, Minor, or Trust as Beneficiary?

Designating beneficiaries for your TRS accounts is easy to do in the secure section of our website. For most individual beneficiaries, you'll need to enter a full name, address, date of birth, and Social Security number (except for foreign individuals). But in cases where your beneficiary is a charity, minor, or a trust, you'll need to provide some specialized information:

## Charity (Organization)

- The full name of the charity/organization
- The tax identification number (TIN)
  - *Tip*: Confirm the TIN with the charity (and check for typos)

## Trust

- The full name of the trust document
- "Verification of Trust Instrument Legality" (code EN4), a TRS form available upon request
  - *Tip*: Upload the completed form to TRS' website as part of your online designation

## Minor

- The full name of the minor
- The minor's date of birth and Social Security number (SSN)
- The name, address, email address, and phone number of the custodian



If you provide the needed information when designating your beneficiaries, TRS will be able to implement your wishes without delay. Review your designations periodically to make any changes.

When you need to update contact information for a beneficiary, you can use the Beneficiary Profiles feature. (Log in at www.trsnyc.org ▶ **Beneficiaries** ▶ **Beneficiary Profiles**. If you want to make a change to your actual list of beneficiaries, go to ▶ **Beneficiaries** ▶ **QPP Beneficiaries** or **TDA Beneficiaries** instead.)

## How Is My Pension Calculated?

*(Continued from page 2)*

If you are age 50 or older, your Annual Benefits Statement (published each fall) provides a personalized projection of your pension calculation based on your actual employment. General information is available in the publications listed below and in our online Educational Programs. (www.trsnyc.org ▶ Resources ▶ Educational Programs)

- *Service Retirement Plans and Benefits for Tiers III/IV Members*
- *Service Retirement Plans and Benefits for Tier VI Members*

## Qualified Pension Plan

The QPP is the source of your future pension. It's where your pension contributions go after they are deducted from your pay, and it's also where employer contributions (over $3 billion in 2021) are invested.

The QPP is known as a defined-benefit plan because the pension benefit is established by a pre-defined formula (as described in this article) and not by the performance of investments, like many other retirement plans.

# Are You Retiring This Summer?

Here's a checklist to help you get ready:

✔ **Attend a virtual "Getting Ready for Retirement" session.** Register online on our Educational Programs page. (www.trsnyc.org ▶ Resources ▶ Educational Programs).

✔ **Purchase any outstanding service credit, to boost your retirement allowance.** You'll need to start the purchase process before you retire.

✔ **Make a decision about your TDA account.** You can:

1) annuitize your account and receive an additional monthly payment,
2) roll over (or withdraw) your TDA funds, or
3) elect TDA Deferral status and leave your TDA account at TRS.

✔ **Be aware of any QPP loans.** Outstanding loan balances or new loans you take at retirement will reduce your monthly retirement allowance.

✔ **Consider your beneficiary designations.** Your retirement payment option may provide for one or more beneficiaries, but other benefits require designations too: "Death Benefit #2" applies to most retired members, and there's a smaller "fractional" benefit based on your retirement allowance payment for the month in which you die.

✔ **Get paid electronically.** Unless you file with TRS to change accounts, you'll receive your retirement allowance automatically in the same account where you currently receive paychecks.

✔ **Apply for health insurance benefits.** Once you file with TRS and receive written verification of your retirement date, you should file for health insurance with your employer.

✔ **Plan to file for retirement online.** You can complete the retirement "e-forms" and upload supporting documentation. (Log in at www.trsnyc.org ▶ E-Forms)

# How Is My Pension Calculated?

No matter how far away from retirement you are, it's important to understand how your pension—sometimes called your retirement allowance—will be calculated. The actual calculations differ based on your tier and retirement plan, but in simple terms your pension will be based on four key factors:

1. Age
2. Total Service Credit
3. Final Average Salary (FAS)
4. Benefit Rate – based on your years of service

**Here's the formula: Final Average Salary (FAS) x Service Credit x Benefit Rate = Annual Pension**

For Tier IV or Tier VI members with less than 20 years of service credit, the benefit rate is $1^2/_3$%. With 20 or more years of service credit, the benefit rate increases—which means a higher pension.

Where does age fit in? Full retirement benefits are generally payable at age 62 for Tier IV members and 63 for Tier VI members. If you choose to retire before that age, you can do so as early as age 55, but you will receive a reduced pension in most cases. (*Note: For participants in the Age 55 Retirement Program, the rules differ.*)

TRS' *Service Retirement Plans and Benefits* brochures explain the details of the pension calculation, plus possible reductions related to age, payment option, and loan balances.

(*Continued on page 3*)

# EXHIBIT

# F

STATE OF NEW YORK
**OFFICE OF THE STATE COMPTROLLER**
110 STATE STREET
ALBANY, NEW YORK 12236

**THOMAS P. DiNAPOLI**
STATE COMPTROLLER

**PRESS OFFICE**
Tel: (518) 474-4015
Fax: (518) 473-8940

January 09, 2023

Mr. Prince Oparaji
24511 133rd Rd
Jamaica, NY 11422

Re: FOIL Request #2022-0758

Dear Mr. Prince Oparaji,

This is in reply to your email dated 12/15/2022, receipt of which has previously been acknowledged, wherein, pursuant to the Freedom of Information Law (Public Officers Law, Article 6), you requested information on the Municipal Credit Union Deposit Balance transferred to Office of the State Comptroller.

The information you requested from the New York State Comptroller's Office of Unclaimed Funds is as follows:

MCU Account Number 1084690, in the name of Maurice U. Oparaji, and in the amount of $2,743.40, was reported as unclaimed funds on November 12, 2020. The account was deemed abandoned with the last activity recorded on July 14, 2016.

New York State's Abandoned Property Law requires banks to transfer abandoned accounts to the New York State Comptroller's Office of Unclaimed Funds. The Comptroller serves as the custodian of unclaimed funds until they're claimed by the rightful owners. Interest is paid on bank accounts for a period of five years from the date the funds are received. The current interest rate is 4%.

File a claim by visiting the Comptroller's website at **https://www.osc.state.ny.us/unclaimed-funds** or calling 800-221-9311.

Sincerely,

Jane Hall
Records Access Officer