USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  June 18, 2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

MAURICE OPARAJI,

                    Plaintiff,

        -against-

TEACHERS' RETIREMENT SYSTEM
OF THE CITY OF NEW YORK, *et al*,

                    Defendants,

-------------------------------------------------------X

23-CV-5212 (KMW)

**OPINION AND ORDER**

KIMBA M. WOOD, United States District Judge:

      Plaintiff Maurice Oparaji, proceeding *pro se,* brings this action against the Teachers'
Retirement System of the City of New York ("TRS"), the Board of Education of the City School
District of the City of New York ("BOE"), and individual Defendants Patricia Reilly, Sanford R.
Rich and Melanie Whinnery[1] (collectively, "Defendants").  Plaintiff asserts that (1) Defendants
are in breach of contract for failing to comply with a December 17, 2018 Pension & Stipulation
Order ("Pension Order") in connection with his status as a *Gulino* class member, and (2)
Defendants have discriminated and retaliated against him because of his efforts to enforce
compliance with the Pension Order.  (Am. Compl. ¶¶ 123–134, ECF No. 21.)  Defendants move
to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).
(Defs.' Mem., ECF No. 26.)  For the reasons set forth below, the Court grants Defendants'
motion to dismiss.

---

[1] The parties disputed whether Melanie Whinnery, Executive Director of the New York City Employees Retirement
System was served with a summons at the proper address.  Plaintiff filed a Proposed Certificate of Default against
Ms. Whinnery on February 21, 2024, which the Court denied as deficient.  (*See* Proposed Certificate, ECF No. 28;
Order at 2, ECF No. 33.)  In the interest of judicial efficiency, however, the Court added Ms. Whinnery as a co-
defendant in the case pursuant to Fed. R. Civ. P. 21.  (*Id.*)

## BACKGROUND

Plaintiff, a former BOE teacher, was a class member in the prior *Gulino* class action brought against the BOE.  *See Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, 907 F. Supp. 2d 492 (S.D.N.Y. 2012) (Wood, J.), *aff'd*, 555 F. App'x 37 (2d Cir. 2014) (summary order).  The facts of the *Gulino* class action litigation are fully set forth in previous opinions; this opinion mentions only those facts necessary to understand this complaint.  As is relevant here, in 2012, this Court found that the BOE's use of the "Liberal Arts and Sciences Test" ("LAST"), a test that permanent teachers were required to pass as a condition of employment, was discriminatory.  *Id*.  After making this finding, the Court ordered a two-stage remedial phase to determine the damages that individual *Gulino* class members, including Plaintiff Oparaji, were entitled to receive.  *See Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.* (*Gulino VI*), No. 96-CV-8414, 2013 WL 4647190, at *6–8 (S.D.N.Y. Aug. 29, 2013) (Wood, J.).[2] Hearings were held to calculate each *Gulino* class member's counterfactual employment history (how long each would have been employed as a BOE teacher absent the BOE's discriminatory use of the LAST).  (Am. Compl., Exs. A at 1, D at 4–6.)

With respect to Plaintiff Oparaji, the *Gulino* parties determined that absent the BOE's discrimination, he would have been employed as a regularly appointed teacher for two years and nine months from April 1998, to February 16, 2021.  (*Id*. at 5–6.)  Consistent with this determination, on or about February 19, 2021, the Court approved Plaintiff Oparaji's individual

---

[2] The first stage addressed "classwide issues, including calculation of backpay, pension benefits and seniority," and the second stage addressed "individual issues, including mitigation and the amount of backpay to which each claimant is entitled."  (*Id*. at 6.)  The Court appointed a Special Master to oversee the two-stage remedial phase.  *See id*. at 13; *see also* Order of Appointment, *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 96–CV–8414, ECF No. 435 (S.D.N.Y. May 20, 2014) (Wood, J.).

*Gulino* judgment, which included $21,986 in back pay. [3]  (Am. Compl., Ex. A at 2.)  Plaintiff

then signed a settlement and release agreement in connection with his *Gulino* judgment on or

about September 9, 2021.  (Am. Compl., Ex. C.)  On or about December 27, 2021, Plaintiff

received an invoice in the amount of $2,575.65 from TRS for Basic Member Contributions owed

in connection with his *Gulino* judgment.  (Am. Compl. ¶¶ 69–72.)[4]  Plaintiff paid the invoice and

received a "Welcome to TRS" letter and an email stating that he would be notified in writing

after TRS completed a review of his TRS status following his updated *Gulino* service.  (Defs.'

Mem at 4–5; Am. Compl. ¶¶ 73–75, Ex. L.)  Plaintiff alleges that—despite his repeated attempts

to communicate with TRS—he has not received a response regarding the status of his pension

relief. [5]  (Am. Compl. ¶ 76.)

Plaintiff acknowledges that he signed a settlement agreement releasing all claims

stemming from or in connection with his status as a *Gulino* class member.  (*See id*. ¶¶ 108–109.)

He contends, however, that he is not "challenging the *Gulino* Judgment itself."  (*Id*. ¶ 3.)

(emphasis added).  Instead, Plaintiff contends that he is challenging TRS's use of coercion,

intimidation and retaliation to deny him of monetary relief he alleges he is owed in connection

with pension benefits he never received.  (*Id*. ¶¶ 3, 16, 67.)  In addition, Plaintiff alleges that

Defendants have discriminated against him on the basis of race, age and disability, and retaliated

against him in response to his efforts to recoup the pension benefits he alleges he is owed.  (*Id*.

---

[3] To qualify as a vested member in the TRS system, BOE teachers have to be appointed for five years.  *See* N.Y.C. Admin. Code § 13-173(a)(3).
[4] The invoice stated that a "[f]ailure to pay . . . by the above deadline will result in an opt-out of *Gulino* pension relief and a forfeiture of your right to receive pension credit attributable to *Gulino."*  (Am. Compl., Ex. I at 1.)
[5] Defendants claim that TRS continued to inform Plaintiff about his pension status following his updated *Gulino* service, including in a June 30, 2022 letter and a September 1, 2022 letter, which informed Plaintiff that he is a non-vested inactive member who "must file a QPP [Qualified Pension Plan] application to withdraw his recently deposited [] funds."  (Defs.' Mem. at 6.)

¶¶ 3, 12, 22, 123–134.)  Plaintiff claims that the Pension Order grants this Court subject matter jurisdiction.  (*Id*. ¶ 25.)

## LEGAL STANDARDS

A district court must dismiss an action pursuant to Fed. R. Civ. P 12(b)(1) for lack of subject matter jurisdiction if it determines that the plaintiff lacks constitutional standing to bring the action.  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–417 (2d Cir. 2015).  "The plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that it has standing to sue."  *Id.* at 417 (internal citation, quotation marks and alterations omitted).  Courts must "accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party" but "may also rely on evidence outside the complaint."  *Id*. (internal citation and alterations omitted).

To survive a motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Courts must "accept [ ] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'"  *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (citation omitted).[6]

---

[6] At the motion-to-dismiss stage, a court may consider only (i) the complaint itself, (ii) documents either attached to the complaint or incorporated in it by reference, (iii) documents the plaintiff relied on and knew of when bringing suit, and (iv) matters in the public record that are subject to judicial notice.  *See, e.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).  The Second Circuit has found that the harm to a plaintiff when courts consider material outside of the complaint is "[generally] the lack of notice that the material may be considered."  *Chambers v. Time Warner, Inc*. 282 F.3d 147, 153.  In this case, Defendants attached exhibits A–I.  (*See* Belfield Decl., ECF No. 25.)  Defendants' Exhibits A–C contain the same

When a plaintiff proceeds *pro se*, the complaint must be "liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

Plaintiff asserts three causes of action against Defendants. Count One alleges breach of contract for a failure to comply with the Pension Order; Count Two alleges retaliation for participation in protected activity; and Count Three alleges discrimination on the basis of race and age in violation of 42 U.S.C. Section 2000e-2(a).[7] (Am. Compl. ¶¶ 123–136.) Defendants move to dismiss Plaintiff's claims for several reasons including for lack of federal subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for a failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Defs.' Mem at 3.)

---

documents Plaintiff attached to his Amended Complaint, which are also integral to his claim. Thus, the Court is not concerned that Plaintiff did not have notice of these documents, and the Court may consider Exhibits A–C. *See Kumpf v. New York State United Tchrs.*, 642 F. Supp. 3d 294 (N.D.N.Y. 2022) (stating that Defendant's exhibits that contained the same documents attached to Plaintiff's complaint were properly before the court on a 12(b)(6) motion). In addition, there is no dispute regarding the authenticity, accuracy, or relevance of these documents. *Cf. Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (noting that consideration of materials outside the complaint is permissible on a 12(b)(6) motion if the documents are integral to the complaint, it is clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and the relevance of the document is undisputed). Exhibits D–H relate to communications between the parties and forms filed regarding Plaintiff's non-vested TRS membership status and Exhibit I describes Service Retirement Plans and Benefits for Tier III and IV TRS members. Because this opinion does not address the merits of Plaintiff's breach of contract, discrimination, or retaliation claims, the Court does not consider Exhibits D–I in its analysis of Defendants' 12(b)(6) motion. *TileBar v. Glazzio Tiles*, No. 22–CV–3823, 2024 WL 1186567, at *13 (E.D.N.Y. Mar. 15, 2024) (stating that federal courts have "complete discretion" to determine whether material submitted beyond the pleadings in a 12(b)(6) motion are accepted); *see also Lehmann v. Ohr Pharm., Inc.*, 830 F. App'x 349, 353 (2d Cir. 2020) (summary order) (affirming the district court's assertion that it did not consider evidence submitted outside a plaintiff's complaint).

[7] Count Three does not reference disability discrimination, however, Plaintiff references 42 U.S.C. § 12203 *et seq* in his Amended Complaint. (Am. Compl. ¶ 12.)

I.    **Plaintiff's Breach of Contract Claim Is Dismissed for Lack of Subject Matter Jurisdiction**

   A.   **Plaintiff's Breach of Contract Claim Fails to Establish Federal Question Jurisdiction**

   "It is axiomatic that federal courts are courts of limited jurisdiction." *Krasner v. Cedar Realty Tr., Inc.*, 86 F.4th 522, 526 (2d Cir. 2023) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000)).  Pursuant to 28 U.S.C. § 1331, an action arises pursuant to federal law in two ways.  First, a well-pleaded complaint that relies upon a federal law can create the federal cause of action asserted. *Tantaros v. Fox News Channel, LLC*, 427 F.Supp.3d 488, 492 (S.D.N.Y. 2019) (Carter, J.) (citing *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006)), *aff'd,* 12 F.4th 135 (2d Cir. 2021).  Second, state-law claims that "necessarily depend [ ] on resolution of a substantial question of federal law" may create federal jurisdiction. *Id.* (citation omitted).  Subject matter jurisdiction arising from the second category is rare. *Id.* (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314–315 (2005)).

   In this case, Plaintiff's breach of contract claim, which is governed by state law, fails to establish a federal question.  Claims of breach of contract, which are governed by state law, do not themselves raise a federal question. *See, e.g.*, *Flores-Colin v. La Oaxaquena Rest. Corp.*, No. 18-CV-2966, 2022 WL 2119301, at *2 (S.D.N.Y. May 10, 2022) (Netburn, M.J.)  The plain language of Plaintiff's signed *Gulino* settlement agreement states that the validity, construction and performance, in addition to any disputes arising out of it, "shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts to be performed wholly within the State of New York."  (Am. Compl., Ex. C at 4–5.)  It is apparent from the terms of the settlement agreement that contract disputes arising out of an individual

*Gulino* judgment are governed by New York State Law. Thus, without another basis for conferring jurisdiction, Plaintiff fails to establish that federal subject matter jurisdiction exists with respect to his breach of contract claim. *See Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (stating that when subject matter jurisdiction is disputed, the plaintiff has the burden to establish the existence of subject matter jurisdiction by a preponderance of evidence)).

### B.  Plaintiff Fails to Establish Ancillary Jurisdiction For His Breach Of Contract Claim

Plaintiff argues that this Court maintains ancillary jurisdiction for his breach of contract claim. [8] (Am Compl. ¶ 25.) "[A] federal court may exercise ancillary jurisdiction (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent[,] and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 104–05 (2d Cir. 2001) (internal quotations and citations omitted). With respect to settlement agreements, district courts may exercise ancillary jurisdiction only if they "(1) expressly retain jurisdiction over the settlement agreement, or (2) incorporate the terms of the settlement agreement in the order." *Hendrickson v. United States*, 791 F.3d 354, 358–59. (2d Cir. 2015) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381)). "[E]nforcement [of] ancillary jurisdiction remains a narrow exception to a federal district court's limited subject matter jurisdiction." *Vill. of W. Hampton Dunes v. New York*, 89 F.Supp.3d 433, 443 (E.D.N.Y. 2015) (quoting *Winter v. Novartis Pharms. Corp.*, 39 F. Supp.3d 348, 351 (E.D.N.Y. 2014)).

---

[8] The alleged basis for the Court's ancillary jurisdiction relies on the following statement in the Pension Order: "The Court also retains jurisdiction over any disputes regarding the operation of this Stipulation & Order." (Am. Compl., Ex. B ¶ 67.)

7

Although the Court retained jurisdiction over the operation of the Pension Order, Plaintiff is mistaken that this jurisdiction extends to his claims regarding determinations made in his individual *Gulino* judgment.  The Pension Order establishes protocols and procedures that the signatories agreed to follow to facilitate the administration of pension benefits owed to certain *Gulino* class members.  (Am Compl., Ex. B ¶ 1.)  The Court retained jurisdiction limited to disputes arising between the signatories regarding the operation of protocols established in the Pension Order. [9]  (*Id.* ¶ 67.)  Contrary to Plaintiff's claim, the Court's jurisdiction does not extend to adjudicating disputes individual *Gulino* class members raise about their individual judgments.  Thus, Plaintiff's claims do not fall within the scope of the Court's continuing jurisdiction as it relates to the Pension Order.

In addition, Plaintiff's *Gulino* judgment and settlement agreement do not expressly incorporate the Pension Order's continuing jurisdiction and therefore do not provide an alternative basis for conferring ancillary jurisdiction.  Plaintiff's individual *Gulino* judgment and the settlement agreement both reference the Pension Order.  (*See* Am. Compl., Exs. A, C.)  But there is no language in either document that expressly incorporates the Pension Order's continuing jurisdiction or expressly retains this Court's jurisdiction with respect to class members' individual judgments or settlement agreements.  (*Id.*)  Courts in this district have held that mere references to prior agreements or stipulations that provide continuing jurisdiction are insufficient for providing a basis for ancillary jurisdiction in a subsequent court order.  *See, e.g. Scelsa v. City of Univ. of New York*, No. 92-CV-6690, 1995 WL 571880, at *1 (S.D.N.Y. Sept.

---

[9] Plaintiff is not a signatory to the Pension Order.  The signatories of the Pension Order include Plaintiffs' class counsel, counsel representing Defendants, and the Directors of TRS.  (*See* Am. Compl., Ex. B.)  Moreover, the procedures established in the Pension Order include, for example, protocols regarding how interest accrued on employee contributions and tax adjustments for employee contributions affect the pension benefits that certain *Gulino* claimants are owed.  (*Id.* ¶¶ 10–18.)  None of these protocols relate to claims Plaintiff brings in this action.

27, 1995) (Motley, J.) *aff'd*, 76 F. 3d 37 (2d Cir. 1996).  Accordingly, the Court finds that it does

not have ancillary jurisdiction to adjudicate Plaintiff's breach of contract claim.  *See Flores-*

*Colin*, 2022 WL 2119301, at *2 (stating that a court order approving an agreement without

expressly retaining jurisdiction to later enforce the agreement is an insufficient basis for finding

that the court maintained ancillary jurisdiction).

      Even assuming *arguendo* that Plaintiff's *Gulino* judgment did expressly incorporate the

Pension Order's continuing jurisdiction, ancillary jurisdiction over Plaintiff's breach of contract

claim would still be inappropriate because he asserts new claims in this action.  The Supreme

Court, in addition to courts in this Circuit "have cautioned against the exercise of jurisdiction

over proceedings that are entirely new and original" or "where the relief sought is of a different

kind or on a different principle than that of the prior decree."  *Vill. of W. Hampton Dunes,* 89

F.Supp.3d at 444–45 (quoting *Peacock v. Thomas,* 516 U.S. 349, 358 (1996)).  In *Peacock,* the

Supreme Court found that ancillary jurisdiction could not be properly exercised over an action

brought on theories of relief that did not exist when the court entered judgment in a prior ERISA

suit.  516 U.S. at 358–59.  Here, too, Plaintiff asserts claims based on theories of liability distinct

from the issues that existed when the Pension Order, and his individual *Gulino* judgment and

settlement agreement were executed.  Thus, the Court does not have ancillary jurisdiction to

evaluate Plaintiff's breach of contract claim.[10]  *See, e.g., StreetEasy, Inc. v. Chertok*, 752 F.3d

298, 306 (2d Cir. 2014) ("After-the-fact statements and actions of the parties, and even of the

---

[10] Moreover, even if ancillary jurisdiction existed, Plaintiff would still be barred from bringing this breach of
contract action because of additional procedural deficiencies.  For instance, Plaintiff signed a settlement agreement
releasing all claims in connection with his *Gulino* judgment, and he is a Class 23(b)(3) member bound by principles
of preclusion.  *See e.g., In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16–CV–740, 2020 WL 4694172, at *4
(S.D.N.Y. Aug. 13, 2020) (Furman, J.) (quoting *Cooper v. Fed. Rsrv. Bank of Richmo*nd, 467 U.S. 867, 874 (1984)
("There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly
entertained class action is binding on class members in any subsequent litigation.")).

district court, cannot create ancillary jurisdiction where such jurisdiction was not retained upon dismissal.").  When a district court lacks federal subject matter and ancillary jurisdiction, enforcement is left "for state courts, unless there is some independent basis for federal jurisdiction."  *Ojo v. United States*, No. 15–CV–6089, 2023 WL 8712365, at * 2 (E.D.N.Y. Dec. 18, 2023) (quoting *Hendrickson*, 791 F.3d at 362).  Here, there is no independent basis for Oparaji's breach of contract claim and it is dismissed without prejudice for lack of subject matter jurisdiction.  *See, e.g.*, *Faculty v. New York Univ.*, 11 F.4th 68, 78 (2d Cir. 2021) (explaining that when a case is dismissed for lack of subject matter jurisdiction, courts lack the power to adjudicate the case and to dismiss it with prejudice.)

## II. Plaintiff's Discrimination and Retaliation Claims Are Dismissed For a Failure to Exhaust Administrative Remedies

### A. Plaintiff Failed to Pursue Essential Administrative Remedies

Plaintiff alleges that (1) Defendants discriminated against him on the basis of race, age and disability[11] in violation of 42 U.S. Code § 2000e–2(a) and 42 U.S. Code § 12203 *et seq*; and, (2) Defendants retaliated against him for his participation in protected activities in violation of Title VII and the Age Employment Discrimination Act ("ADEA"), 29 U.S.C. § 621 *et seq*.  (Am. Compl. ¶¶ 12, 128–134.)  As a threshold matter, Plaintiffs must first pursue available administrative remedies and file timely complaints with the EEOC "[a]s a precondition to filing [ ] Title VII [and ADEA] claim[s] in federal court."  *Hardaway v. Hartford Pub. Works Dep't*,

---

[11] Plaintiff fails to provide any details regarding the nature of his disability.  (*See* Am Compl.)  Because Plaintiff has failed to provide any information identifying the nature of his disability, even if he had exhausted the required administrative remedies, the Court dismisses the disability discrimination allegation for failing to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  *See Lee v. Sony BMG Music Ent., Inc*., 557 F. Supp. 2d 418, 424–25 (S.D.N.Y. 2008) (McMahon, J.) (dismissing a disability claim pursuant to the Americans with Disabilities Act when a plaintiff failed to plead or provide facts that identified details regarding the nature of their disability or that plaintiff was discriminated against because of any disability or perceived disability).

879 F.3d 486, 489 (2d Cir. 2018) (quoting *Deravin v. Kerik,* 335 F.3d 195, 200 (2d. Cir 2003));

*See Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001).  The

exhaustion of administrative remedies is considered "an essential element of the Title VII and

ADEA statutory schemes," and plaintiffs may bring Title VII and ADEA suits in federal court

only after they have filed timely complaints with the EEOC and obtained a right-to-sue letter.

*See Legnani* 274 F.3d at 686 (2d Cir. 2001) (internal quotations and citations omitted); *see also*

42 U.S.C. § 2000e–5(e) and (f).  The Second Circuit has repeatedly held that "the failure to

exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court,

rather than a jurisdictional requirement that, "like a statute of limitations, is subject to [equitable

defenses]." *Hardaway*, 879 F.3d at 489, 491 (citations omitted).  In addition, Title VII

exhaustion claims are affirmative defenses, where defendants have the burden of proof to

establish that plaintiffs failed to exhaust their required administrative remedies.  *Id.* at 491; *see*

*also Zipes v. Trans World Airlines, Inc.* 455 U.S. 385, 393 (1982).  Affirmative defenses

normally cannot be decided on a motion to dismiss, however, "where the complaint facially

shows noncompliance with the limitations period and the affirmative defense clearly appears on

the face of the pleading," dismissal may be appropriate.  *In re S. Afr. Apartheid Litig.*, 617 F.

Supp. 2d 228, 287 (S.D.N.Y. 2009) (Scheindlin, J.) (citations omitted).

      In this case, Plaintiff fails to demonstrate that he exhausted Title VII's and the ADEA's

required administrative remedies.  Plaintiff alleges that he raised a claim and assisted and

participated "in a proceeding [that is protected] under EEO laws."  (Am. Compl. ¶ 5.)  The

Amended Complaint, however, does not allege that Plaintiff filed timely charges with the EEOC,

or that he received a right-to-sue letter before initiating this lawsuit.  (*See id*; Defs.' Mem. at 18.)

Because Plaintiff has not satisfied a necessary precondition for his Title VII and ADEA claims,

considering the merits of his discrimination and retaliation claims would be premature.  For these

reasons, Plaintiff's claims are dismissed without prejudice for a failure to exhaust required

administrative remedies.

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED in its

entirety.

Because *pro se* complaints "should not be dismissed without [ ] granting leave to amend

at least once when a liberal reading … gives any indication that a valid claim might be stated,"

*see Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir. 2013) (internal alterations and

quotations omitted), the Court grants Plaintiff leave to amend.  Any Complaint must identify

each legal claim and set forth a short, plain statement of the relevant facts supporting it.  In

addition, should Plaintiff choose to amend his Complaint, he must demonstrate that (1) this Court

has subject matter jurisdiction over any claims and (2) required administrative remedies have

been exhausted in connection with the requirements set forth in this opinion and applicable laws.

Any motion to amend the Complaint must be filed by August 17, 2024.

SO ORDERED.

Dated:  New York, New York
        June 18, 2024                          _____/s/ Kimba M. Wood_____
                                                      KIMBA M. WOOD
                                               United States District Judge