**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MAURICE OPARAJI,<br>Plaintiff,<br>-against-<br>TEACHERS' RETIREMENT SYSTEM OF THE CITY OF NEW YORK ("TRS"), BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF CITY OF NEW YORK, PATRICIA REILLY, SANFORD R. RICH, MELANIE WHINNERY<br>Defendant. | **Second Amended Verified Complaint for a Civil Case**<br><br>Case No.: 23-CV-5212 |

## INTRODUCTION

1. Plaintiff Maurice Oparaji ("Plaintiff") proceeding pro se brings his second amended verified complaint against the Defendants, Teachers' Retirement System of the City of New York ("TRS"), the Board of Education of the City School District of New York ("BOE"), Patricia Reilly, Sanford R. Rich, and Melanie Whinnery for 42 U.S.C. § 1981's Contract Clause[1]; 42 U.S. Code §

[1] Racial discrimination, 42 U.S.C. § 1981's contract clause uniquely focuses on guaranteeing a person's equal right to make and enforce contracts without regard to race. More specifically, § 1981's contract clause provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."

12203- Prohibition against retaliation and coercion2; Title VII3 4, codified at 42 U.S.C. §§ 2000e et seq; Title VI5 6, codified at 42 U.S.C. §§ 2000d et seq.; New York City Human Rights Law (NYCHR).

---

[2] Retaliation under Sec. 2000e-3(a), the section provides in relevant part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter". Sec. 2000e-3(a).

[3] Title VII, codified at 42 U.S.C. §§ 2000e et seq., addresses discrimination based on "race, color, religion, sex, or national origin" by private sector and federal government employers with respect to their employees and applicants for employment. In Bostock v. Clayton County, 140 S. Ct. 1731 (2020), the Supreme Court interpreted Title VII's prohibition of discrimination "because of ... sex" to bar discrimination based on sexual orientation or gender identity. Title VII prohibits specific discriminatory employment actions (such as making compensation decisions because of an individual's protected trait) and created a federal enforcement scheme for receiving, investigating, and addressing discrimination complaints. Title VII also established a federal commission, the Equal Employment Opportunity Commission (EEOC), which enforces Title VII's requirements as to both private and federal sector employers. The Employment Litigation Section of the Department of Justice's Civil Rights Division enforces Title VII with respect to state and municipal government employers. Private individuals may sue under Title VII for damages, injunctive relief, and equitable relief after exhausting administrative prerequisites to suit.

[4] In *Carr v. New York City Transit Authority*, 76 F.4th 172 (2d Cir. 2023), the United States Court of Appeals for the Second Circuit revisited and clarified the appropriate legal standard for analyzing retaliation claims under Title VII of Civil Rights Act of 1964. The Court pointed out, although courts typically use the familiar McDonnell-Douglas burden-shifting framework for assessing both the discrimination and retaliation claims, the framework for analyzing anti-retaliation clause is distinct and broader in scope. First, anti-retaliation claims are not limited to "workplace-related or employment-related retaliatory acts and harm," but can extend to an employer's actions *outside* the workplace. This means that an employer's actions outside of the workplace, such as pursuing civil actions or making public statements, could arguably give rise to a retaliation if the other elements of such a claim are present

[5] Title VI, codified at 42 U.S.C. §§ 2000d et seq., addresses discrimination by recipients of federal financial assistance. Section 601 provides that recipients must comply with the mandate that no person, on the basis of race, color, or national origin, "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under" any federally funded program or activity. Section 602 authorizes federal departments and agencies to "effectuate "Section 601. Thus, when a federally funded program or activity commits race discrimination in violation of Title VI's requirements, the federal agency that

2. Plaintiff is an African-American male who is at least 70-years old, a resident of Queens, a citizen of the State of New York and the United State.

3. Plaintiff is a vested active member Employee Retirement Pension Plan, member in the TRS System, having been appointed five years and three months against New York City Admin. Code Section 13-173 (a) (3), which provides, that the Board of Education of the City of New York teachers have to be appointed for five years.

4. Plaintiff made contributions that was invested by Teachers' Retirement System of the City of New York.

---

disbursed the funds may investigate the potential violation, and terminate or withhold funding to that recipient, subject to certain procedural preconditions. The Supreme Court reads Title VI to permit a private individual to sue a federal funding recipient for intentional discrimination in violation of Section 601. The Court has also addressed whether private individuals may sue to enforce Title VI regulations prohibiting disparate impact The Civil Rights Act of 1964: Eleven Titles at a Glance https://crsreports.congress.gov discrimination, and held in Alexander v. Sandoval, 532 U.S. 275 (2001), that they cannot. Thus, only federal agencies may enforce Title VI regulations prohibiting disparate impact discrimination.

[6]In Peters v. Jenney, 327 F.3d 307, 318 (4th Cir. 2003), Dr. Cheryl Peters appeals from the district court's grant of summary judgment rejecting her retaliation claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d (West 1994), 42 U.S.C.A. § 1983 (West 1994), and the First Amendment to the U.S. Constitution against the Virginia Beach School Board (the School Board or Board) and various individuals associated with the Virginia Beach School District. Because we conclude that Title VI provides a cause of action for retaliation based upon opposition to practices that Title VI forbids, we vacate the district court's grant of summary judgment and remand to provide the parties with an opportunity to further develop the record regarding the nature of the practices that Peters opposed as well as to address other relevant issues. Because we conclude that Peters adequately pleaded a First Amendment retaliation claim and presented evidence sufficient to survive summary judgment as to the requisite causal relationship between her advocacy of changes to the gifted program and the nonrenewal of her contract, we vacate the district court's entry of summary judgment on Peters's First Amendment claim.

5. While Plaintiff was employed as a regular teacher, plaintiff contributed 3% of his reportable salary to the pension System of the City of New York.

6. The Board of Education of the City School District of New York, through its passive acquiescence, the TRS, Patricia Reilly, Sanford R. Rich, and Melanie Whinnery, on or about December 17, 2018, pertinently stipulate and state:

> "The Court also retains jurisdiction over any disputes regarding the operation of this Stipulation & Order, and the special Master's Order of Appointment extends to resolve these disputes" December 17, 2018 Stipulation and Order. ¶67.
>
> The Stipulation & Order may be executed in counterparts, each of them will be deemed an original, and all of them together will constitute one and the same instrument. This Stipulation & Order may be executed by facsimile or PDF signatures. ¶68.

STIPULATED AND AGREED UPON BY:

[illegible]
[illegible] LLP
[illegible] Street
New York, NY 10019
Counsel for Plaintiffs

William S. Fraenkel
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, NY 10007
Counsel for Defendant

Patricia Reilly
Executive Director
Teachers' Retirement System of the City of New York
[illegible]
New York, NY [illegible]

Sanford R. Rich
[illegible]
[illegible] Retirement System of the City of New York
[illegible]

Melanie Whinnery
[illegible]
[illegible] Employees' Retirement System
[illegible]

EXHIBIT A

7. The December 17, 2018 Stipulation & Order, pertinently states, "The Court in this Title VII class action has ordered that class members are entitled to pension damages to compensate them for pension benefits that they would have received absent the discrimination for which the Defendant Board of Education of the City School District of the City of New York ("BOE") has been found liable[7]. December 17, 2018 Stipulation & Order, page 1.

8. The December 17, 2018 Stipulation & Order, further states, "To facilitate the provision of these damages and benefits, the signatories agree to the following protocols and procedures. By agreeing to this Stipulation & Order, however, the BOE and Plaintiffs do not waive any other objections they have made to date in this action, or any rights related to those objections". December 17, 2018 Stipulation & Order, page 1.

9. In connection with Plaintiff Maurice Oparai's race, African-American, the Board of Education of the City School District of New York discriminated against plaintiff by failing to comply with the provision of the pension benefits, the signatories agree upon in the December 17, 2018 Pension Order. **Attachment 5 to the Second Amended Verified Complaint**

10. If not for plaintiff's race African-American, defendant the Board of Education of the City School District of New York, would not have dishonored its December 17, 2018 Pension

[7] The parties agree that class members are entitled to the lost pensions they would have received absent the discriminatory LAST". The Board of Education of the City School District of New York and the TRS In the case of Plaintiff Maurice Oparaji, Sr., but if not for discrimination based on race plaintiff.

agreement, which stipulated and agreed by the Board of Education of the City School District of New York officers and counsel for Defendant Patricia Reilly Executive Director Teachers' Retirement System of the City of New York 55 Water Street New York, NY 10041 Sanford R. Rich Executive Director Board of Education Retirement System of the City of New York 65 Court Street, 16th Floor Brooklyn, NY 11201, Melanie Whinnery Executive Director New York City Employees' Retirement System 335 Adams Street, Suite 2300 Brooklyn, NY II201; and plaintiffs' counsels Joshua S. Sohn, Watson Farley & Williams LLP 250 West 55th Street New York, NY 10019 and Counsel for Plaintiffs William S. Fraenkel Assistant Corporation Counsel The City of New York Law Department 100 Church Street New York, NY 10007. **Attachment 5 to the Second Amended Verified Complaint.**

**11.** The Board of Education of the City School District of New York would have made a different contracting decision were it not for the plaintiff's race

**12.** The 42 U.S. Code § 2000d, prohibits against exclusion from participation on the basis discrimination under federally assisted programs on ground of race, color, or national origin, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance". (Pub. L. 88–352, title VI, § 601, July 2, 1964, 78 Stat. 252.)

**13.** Defendants discriminated against plaintiff in violation of 42 U.S.C. §§ 2000e et seq under federally assisted programs on ground of race, color, or national origin No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. SOURCE (Pub. L. 88-352, title VI, Sec. 601, July 2, 1964, 78 Stat. 252.)

> "IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Mr. Oparaji will be entitled to the following non-monetary relief:
>
> The BOE is ordered to amend its internal service, salary, payroll, and human resources systems as follows:
>
> Incorporate the findings of fact contained in the "Pension Damages" section, Section II (E); b. Incorporate Mr. Oparaji's counterfactual monthly service history.
>
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Court adopts the Special Master's recommendation that this judgment be certified as final and appealable pursuant to Federal Rule of Civil Procedure 54(b) and expressly determines that there is no just reason for delay for the reasons stated in the Special Master's Report and Recommendation. This Judgment Entry is certified and entered by the Court pursuant to Rule 54(b) of the Federal Rules of Civil Procedure".

**14.** In the case of Plaintiff Maurice Oparaji, Sr., but if not for discrimination based on race, defendants would have implemented December 17, 2018 stipulation agreement, [8]which is indeed a contract between plaintiff and defendants that ensures defendants

---

[8] A stipulation agreement is a contract between two parties that guarantees that one or all parties to the contract will do something. For example, a stipulation and agreement might mandate that a certain amount of money will be paid, or that a specific service be provided.

Once the stipulation agreement has been finalized, both parties are legally obligated to uphold their end of the agreement. If one party fails to do so, they may be held liable in court. For this

will fulfill certain obligations, which involve paying pension benefits to plaintiff; here, defendants fails to meet their obligations .

**15.** Plaintiff made contributions that was invested by Teachers' Retirement System of the City of New York; yet, Teachers' Retirement System of the City of New York failed to meet its obligations as contained in the December 17, 2018 stipulation agreement.

**16.** With respect to Plaintiff, the Gulino parties determined that absent the discrimination, plaintiff would have been employed as a regularly appointed teacher for two years and nine months, from April 1998 to February 16, 2021, in addition to two years and four months, from January 1996 to April 1998, totaling five years and three months.

**17.** To qualify as a vested member in the TRS System, the Board of Education of the City of New York teachers have to be appointed for five years. In the case of Plaintiff Maurice Oparaji, Sr., five years and three months, but if not for discrimination based on race, plaintiff would have been enjoying his pension benefits, which 42 U.S.C. § 1981's contract clause uniquely guaranteed.

**18.** 42 U.S.C. § 1981's contract clause provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens".

**19.** Plaintiff was a member of Teachers' Retirement System of the City of New York.

---

reason, this type of contract is often a vital part of major business agreement **Attachment 8 to the Second Amended Verified Complaint.**

20. Plaintiff participated in a class discrimination action against the Board of Education of the City School District of New York, 96-CV-8414 (KMW).

21. Plaintiff raised a claim, assisted and participated[9] in a proceeding under the EEO laws against the Board of Education of the City School District of New York, that is protected, 96-CV-8414 (KMW).

22. Because Plaintiff made a charge, testified, assisted, and participated in a proceeding under the EEO laws against the Board of Education of the City School District of New York, 96-CV-8414 (KMW), the Board of Education of the City School District of New York, through its passive acquiescence, the TRS, Patricia Reilly, Sanford R. Rich, and Melanie Whinnery, wiped out plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

23. The Board of Education of the City School District of New York, through its passive acquiescence, the Teachers' Retirement System of the City of New York issued

[9] One type of protected activity is participation. An individual is protected from retaliation for having made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII, the ADEA, the EPA, the ADA, the Rehabilitation Act, or GINA. Participation may include, for example, filing or serving as a witness in an administrative proceeding or lawsuit alleging discrimination. The EEO laws make it unlawful to discriminate because an individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII, the ADEA, the EPA, the ADA, the Rehabilitation Act, or GINA. This language, known as the "participation clause," provides protection from retaliation for many actions, including filing or serving as a witness for any side in an administrative proceeding or lawsuit alleging discrimination in violation of an EEO law. The participation clause applies even if the underlying allegation is not meritorious or was not timely filed.

another TRS Membership Account Number 00T142296, without plaintiff's consent and knowledge.

**24.** Teachers' Retirement System of the City of New York cover up the nature of the wiping out plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account by removing and hiding the original TRS Membership Account Number 00T814057.

**25.** Teachers' Retirement System of the City of New York breached the December 17, 2018 Pension Stipulation & Order.

**26.** The Board of Education of the City School District of New York, through its passive acquiescence, the TRS retaliated against plaintiff for having participated in a class action against the Board of Education of the City School District of New York ("BOE"), case number 96-CV-8414 (KMW), which was heard in the United States District Court, Southern District of New York.

**27.** Plaintiff is a class member entitled to the lost pensions he would have received absent the Board of Education of the City School District of New York discriminatory.

**28.** Defendants discriminated took an adverse employment action against plaintiff because plaintiff opposed unlawful employment practice, and because of his race, African-American.

**29.** The Supreme Court has interpreted § 1981 as enacted under Congress's authority to enforce the Thirteenth and Fourteenth Amendments to the Constitution. Laws enforcing

the Thirteenth Amendment concern, among other things, eliminating "the badges and incidents" of American slavery, and may apply to private and state actors. Laws enforcing the guarantees of Section 1 of the Fourteenth Amendment, including equal protection of the laws, need not relate to slavery and may address discrimination based on race.

**30.** The initial case of discrimination was heard in the United States District Court, S.D. New York[10] [11].

---

[10]The case was initially assigned to the Honorable Constance Baker Motley in 1996. In 2003, following "an epic bench trial that lasted more than eight weeks and filled over 3,600 pages of trial transcript," Gulino v. Bd. Of Educ. of the City Sch. Dist. of the City of N.Y., No. 96-CV-8414, 2003 WL 25764041 at *1, (S.D.N.Y. Sept. 4, 2003), Judge Motley ruled that the Board of Education of the New York City School District ("BOE") had not violated Title VII by adopting the New York State Education Department's requirement that teachers pass the LAST-1 in order to receive permanent licenses. Id. at *30-31. Although Judge Motley held that Plaintiffs had established a prima facie case of disparate impact, id. at *30, she ultimately found that the LAST-1 was not unfairly discriminatory because it qualified as job-related. Id. at *30-31. On appeal, the Second Circuit affirmed in part and reversed in part. Relevant to the instant proceedings, the panel held that Judge Motley had erred by not assessing the LAST-1's job-relatedness under the standard established in Guardians Association of New York City Police Department, Inc. v. Civil Service Commission of the City of New York, 630 F.2d 79 (2d Cir. 1980), and remanded so that the district court could apply that standard. Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 380 (2d Cir. 2006)

[11] In the case of Gulino v. The Bd. of Educ. of the City Sch. Dist. of N. Y, the plaintiffs brought an action against the defendant, The Board of Education of the City School District of the City of New York. The case number is 96-CV-8414 (KMW). The case was heard in the United States District Court, S.D. New York. The case was referred to Special Master John S. Siffert on May 20, 2014, pursuant to Federal Rule of Civil Procedure 53 (a) (1) (B) and the court's inherent equitable powers and authority. On June 1, 2013, Special Master Siffert filed a Report and Recommendation ("R&R") regarding a cohort of claimants whose damages awards were reduced to proposed judgments (the "May 2013 Cohort"). The Special Master recommended that the court adopt the Proposed Findings of Fact and Conclusions of Law for each claimant, direct entry of the Proposed Judgments for those claimants, and certify those Proposed Judgments as final and appealable pursuant to Federal Rule of Civil Procedure 54 (b). The court reviewed de novo all objections to conclusions of law and findings of fact made or recommended by the Special Master and adopted the Special Master's R&R in its entirety.

31. Plaintiff is challenging the defendants' use of retaliation, coercion, and intimidation to deny and deprive him of his pension relief. The plaintiff is not challenging the Gulino Judgment itself.

32. Because Plaintiff Maurice Oparaji participated in a class discrimination action against the Bd. of Educ. of the City Sch. Dist. of N. Y, 96-CV-8414 (KMW), the defendants Teachers' Retirement System of the City of New York Teachers' Retirement System of the City of New York ("TRS"), the Board of Education of the City School District of New York ("BOE"), Patricia Reilly, Sanford R. Rich, and Melanie Whinnery retaliated against him.

33. Plaintiff Maurice Oparaji raised a claim, assisted and participated in a proceeding under the EEO laws, that is protected, 96-CV-8414 (KMW).

34. Defendants' discrimination[12] and retaliation[13] perpetrated against Plaintiff Maurice Oparaji, because of his race and because he opposed unlawful employment practices, and because of his race, African-American.

---

[12] Title VII of the Civil Rights Act prohibit employers from discriminating against their employees due to reasons such as race, gender, color, creed, national origin, and disability status. What many people do not know, however, is that these protections also extend to people who are retaliated against for reporting discrimination.

In discrimination law, "retaliation" refers to any act taken by an employer against a worker, or any other individual, who reports discrimination they experience or witness. Acts of retaliation may be responses to a report of discrimination to a company's Human Resources department, or it can be in response to a complaint to a government agency. They can be overt, explicitly, responses to a complaint of retaliation, or they can be more subtle or indirect, but either way, they are a violation of employment law.

[13] The Supreme Court has defined retaliation as an intentional act in response to a protected action. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173-74 (2005). Citing Jackson, the court in Gutierrez underscored the intentional nature of a retaliation complaint: "Retaliation is,

**35.** Teachers' Retirement System of the City of New York, the Board of Education of the City School District of New York, Patricia Reilly, Sanford R. Rich, and Melanie Whinnery, discriminated and retaliated against plaintiff, by refusing to comply with the Stipulation[14] and Order dated December 17, 2018, that provides:

> "IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Mr. Oparaji will be entitled to the following non-monetary relief:
>
> The BOE is ordered to amend its internal service, salary, payroll, and human resources systems as follows:
>
> Incorporate the findings of fact contained in the "Pension Damages" section, Section II (E); b. Incorporate Mr. Oparaji's counterfactual monthly service history.

---

by definition, an intentional act. It is a form of "discrimination" because the complainant is being subjected to differential treatment." Gutierrez, 2005 WL 2346956, at *5. The complained of matter need not be a complaint; it can be any lawful conduct that an individual engages in connected with a protected right. "The very concept of retaliation is that the retaliating party takes action against the party retaliated against after, and because of, some action of the latter." Fed. Mar. Bd. v. Isbrandtsen Co., 356 U.S. 481, 514 (1958). It carries with it the notion of "getting even." See id. As noted in a 2011 law review article: Retaliation is a deliberate action used to send a clear message that complaining is unwelcome and risky. It is employed to instill fear in others who might consider making a complaint in the future. Those with cause for complaining are frequently among the most vulnerable in an institution. Once they complain, they are labeled "troublemakers." Retaliation, and the fear of retaliation, becomes a potent weapon used to maintain the power structure within the institution.

[14]Under federal law, a stipulation is generally defined as an agreement, a bargain, proviso, or condition. If the stipulation complies with an applicable statute or rule of court, it will be binding. In the context of contracts, a stipulation is used to define an agreement that ended with specific formalities in a ceremony. In contemporary use, stipulation means a material condition or a requirement in an agreement_

Here, this Court has determined that the Settlement and Release Agreement signed by plaintiff Maurice Oparaji and the Board of Education of the City School District of the City of New York "is binding upon and inures to the benefit of Maurice Oparaji Sr. and BOE, and each of their respective agents, officers, directors, partners, employees, representatives, attorneys, successors, predecessors, parents, subsidiaries, affiliates, and assigns".

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Court adopts the Special Master's recommendation that this judgment be certified as final and appealable pursuant to Federal Rule of Civil Procedure 54(b) and expressly determines that there is no just reason for delay for the reasons stated in the Special Master's Report and Recommendation. This Judgment Entry is certified and entered by the Court pursuant to Rule 54(b) of the Federal Rules of Civil Procedure".

**36.** The Teachers' Retirement System of the City of New York Teachers' Retirement System ("TRS"), the Board of Education of the City School District of New York ("BOE"), Patricia Reilly, Sanford R. Rich, and Melanie Whinnery, breached the so ordered Pension Stipulation[15] & Order entered on December 17, 2018[16] [17] by the United States District Judge (the Honorable Kimba M. Wood), and retaliated against him for having participated in a class action against the Board of Education of the City School District of New York

[15] A stipulation is a contract and may be enforced as one. If a landlord breaches a stipulation and keeps a deposit that they are not entitled to, a legal action can be brought to force the landlord to return the deposit and correct the credit. The contract is to be construed as a whole, and the intention of the parties is to be gathered from the four corners of the instrument.

[16] Contractual stipulations are generally interpreted by courts in the strictest sense and courts endeavor to permit them their literal meaning. This is the conventional manner in which courts interpret contractual stipulations whereby they adhere to the letter of the document and glean the intention of the parties from the four corners of the contract itself. Generally construction of the contract's meaning begins with its specific language. The words used in the contract are afforded the plain meaning that a reasonable person would give to them. The intention of the parties is to be determined from the language of the agreement and the words should be given their common and generally accepted meaning.

[17] See January 24, 2018 Special Master Conference Summary, Classwide GULCS 000380-387 ("The parties stated that they agree claimants will receive retroactive seniority with respect to salary-step advancement, longevity bonuses, accrual of years of service for pension, post-retirement health care benefits, accrual of CAR days, sabbatical leave rights, restoration of health leave rights, and hardship transfers").

("BOE"), case number 96-CV-8414 (KMW), which was heard in the United States District Court, Southern District of New York.

**37.** The Board of Education of the City School District of New York, through its passive acquiescence, the TRS, Patricia Reilly, Sanford R. Rich, and Melanie Whinnery, breached the so ordered Pension Stipulation & Order entered on December 17, 2018 by the United States District Judge (the Honorable Kimba M. Wood).

**38.** The Board of Education of the City School District of New York, through its passive acquiescence, the TRS retaliated against plaintiff for having participated in a class action against the Board of Education of the City School District of New York ("BOE"), case number 96-CV-8414 (KMW), which was heard in the United States District Court, Southern District of New York.

**39.** Teachers' Retirement System of the City of New York coerced and intimidated plaintiff to deny and deprive[18] plaintiff of his pension relief by compelling withdrawal of contributions with TRS.

[18] The Fifth Amendment of the U.S. Constitution, ensures that no person shall be deprived of life, liberty, or property without due process of law, and that private property cannot be taken for public use without just compensation. In the case of Plaintiff's pensions, the Fifth Amendment clause is relevant where defendants' actions affect plaintiff's pension rights. As in here, Defendant, Teachers' Retirement System of the City of New York wiped out plaintiff's years of contribution and issued another Member Contribution account number which has nothing in it because of plaintiff's race, African America and because he opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation. § 2000e–3(a)". Teachers' Retirement System of the City of New York actions violated plaintiff due process rights. In Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), Justice Breyer delivered the opinion of the Court. The Supreme states: "Title VII of the Civil Rights Act of 1964 forbids employment discrimination against any individual"

**40.** Teachers' Retirement System of the City of New York sent a package (forms) to plaintiff to withdraw his contributions with TRS.

**41.** 42 U.S. Code § 12203 prohibits retaliation and coercion. The law states that no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter. It is also unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter. 42 U.S. Code § 12203.

**42.** The defendants' retaliation by refusing to comply with the Pension-related relief pursuant to the terms of the Court's Orders, causing him to suffer major depression.

**43.** Defendants' action and conducts denied/deprived Plaintiff of his pension relief.

---

based on that individual's race, color, religion, sex, or national origin." Pub. L. 88–352, §704, 78 Stat. 257, as amended, 42 U. S. C. §2000e–2(a). A separate section of the Act—its anti-retaliation provision—forbids an employer from "discriminating] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. §2000e–3(a).

We conclude that the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace. We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

**44.** Plaintiff was awarded monetary relief pursuant to the terms of the Judgment and other applicable orders of the Court, including the terms of the Court's Order dated December 17, 2018 (Pension Stipulation & Order.

**45.** Also, plaintiff is entitled to the lost pensions he would have received absent the discriminatory.

**46.** Defendants refused to comply with the Stipulation and Order So Ordered by the United States District Judge, Kimba M. Wood on December 17, 2018

**47.** As a result of defendants' refusal to comply with the Court so ordered Stipulation & Order entered on December 17, 2018, caused him to suffer major depression.

**48.** In BURLINGTON NORTHERN & SANTA FE RAILWAY CO. v. Sheila WHITE, June 22, 2006, Justice BREYER delivering an opinion of the Court, pertinently states:

> "Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." Pub.L. 88–352, § 704, 78 Stat. 257, as amended, 42 U.S.C. § 2000e–2(a).
>
> A separate section of the Act—its anti-retaliation provision—prohibits an employer from "discriminating against an employee or job applicant because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation. § 2000e–3(a)". (BURLINGTON NORTHERN & SANTA FE RAILWAY CO.v. Sheila WHITE).

## JURISDICTION

**49.** The Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. 1981(a), because the question of whether to establish a claim of racial discrimination under 42 U.S.C. 1981(a)[19] is a federal question; whether a plaintiff must prove that race was the but-for cause of the denial of the right to make and enforce contracts under 28 U.S.C. § 1331.

**50.** This Court has jurisdiction over this action under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §§ 1331, 1343(a), and 1345.

**51.** Defendants, Teachers' Retirement System of the City of New York ("TRS"), the Board of Education of the City School District of New York ("BOE"), Patricia Reilly, Sanford R. Rich, and Melanie Whinnery, discriminated against plaintiff in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq, by requiring plaintiff to pass certain discriminatory certification exams in order to secure a teaching license. Without that teaching license, Plaintiffs are not eligible for employment as New York City public school teachers.

---

[19] Section 1981 provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts * * * as is enjoyed by white citizens." 42 U.S.C. 1981(a). As amended, the statute prohibits purposeful discrimination both by private entities and "under color of State law." 42 U.S.C. 1981(c); see General Bldg. Contractors Assn v. Pennsylvania, 458 U.S. 375, 391 (1982). And although the statute does not expressly provide a private cause of action for damages, this Court has long determined that such actions are available. See, e.g., Runyon v. McCrary, 427 U.S. 160, 168 (1976)

52. Defendants retaliated[20] against Plaintiff Maurice Oparaji Sr. by refusing to comply with the December 17, 2018 Court because of plaintiff's race, African-American.

## VENUE

53. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because it is where a substantial part of the events or omissions giving rise to the cause of action occurred

## THE PARTIES

54. Plaintiff is an African-American male who is at least 70-years old, a resident of Queens, a citizen of the State of New York and the United States.

55. At all times relevant to this suit, plaintiff is a class member entitled to the lost pensions he would have received absent the discriminatory LAST").

[20] Title VII of the Civil Rights Act of 1964 (the "Act") prohibits an employer from retaliating against an employee who has "made a charge, testified, assisted or participated in" any charge of unlawful discrimination under the Act. Until recently, federal courts were split as to the definition of that term. Some courts held, for example, that it had to be an "ultimate employment decision" such as hiring, terminating, promoting or compensating, while others held that it was any "materially adverse change in the terms and conditions of employment," such as suspension without pay or demotion. On June 22, 2006, the United States Supreme Court resolved this split, issuing a decision which expands the rights of employees under Title VII. In *Burlington Northern Santa Fe Railroad Co. v. White*, the Court held that an employer's actions will be considered an adverse employment action if the conduct "would have been *materially adverse* to a reasonable employee or job applicant," and the action could "dissuade a *reasonable worker* from making or supporting a charge of discrimination." In addition, the Court expanded the scope of the definition of "adverse employment action" by stating that it "extends beyond workplace-related or employment-related retaliatory acts and harms." This expansive definition, therefore, could include things that occur beyond everyday interactions in the office, such as vandalism, refusing to provide post-employment information (such as references), or continually calling or driving by an employee's home for intimidation purposes.

56. Plaintiff is a member of Teachers' Retirement System of the City of New York.

57. Plaintiff made contributions that was invested by Teachers' Retirement System of the City of New York.

58. At all times relevant this suit, Teachers' Retirement System of the City of New York is an employee benefit plan administrator.

59. At all times relevant to this suit, Teachers' Retirement System of the City of New York is a party in interest TRS Plans

60. At all times relevant to this suit, Teachers' Retirement System of the City of New York provides services to the Plans.

61. At all relevant to this suit, Teachers' Retirement System of the City of New York wiped out plaintiff's contributions.

62. At all relevant to this suit, Teachers' Retirement System of the City of New York changed plaintiff's contribution account number.

63. At all relevant to this suit, Teachers' Retirement System of the City of New York issued another account number that plaintiff was not aware.

64. At all relevant to this suit, Teachers' Retirement System of the City of New York provides no service to plaintiff.

65. At all relevant to this suit, Teachers' Retirement System of the City of New York refused to provide benefits because of plaintiff's race, African-American.

**66.** At all relevant to this suit, Teachers' Retirement System of the City of New York concealed plaintiff actual contribution to the plan.

**67.** At all relevant to this suit, Teachers' Retirement System of the City of New York discriminated against plaintiff because plaintiff opposed unlawful employment practices.

**68.** At all relevant to this suit, Teachers' Retirement System of the City of New York retaliated against plaintiff because plaintiff filed a charge, cooperated in the investigation and litigation against BOE.

**69.** Teachers' Retirement System of the City of New York provides New York City educators with retirement, disability, and death benefits.

**70.** Teachers' Retirement System of the City of New York collects contributions, and make investment of retirement funds.

**71.** Teachers' Retirement System of the City of New York is responsible for disbursement of member benefits, and the delivery of member services.

**72.** Teachers' Retirement System of the City of New York (TRS) manages the retirement benefits for educators in New York City, including, disbursement of Member Benefits, ensuring that retirees receive their pensions and other benefits in a timely manner, and providing support and information to active and retired members.

**73.** The Board of Education of the City School District of New York is responsible for operating the public school program in New York City.

**74.** While Plaintiff was employed as a regular teacher, Plaintiff contributed 3% of his reportable salary to the pension fund, Teachers' Retirement System of the City of New York ("TRS"), and Board of Education of the City School District of New York ("BOE") wiped all Plaintiff contributions, and created another TRS Membership Account Number 00T142296.

**75.** Plaintiff's Membership Account Number while employed as a regular teacher was TRS Membership Account Number 00T814057.

**76.** As a result of Teachers' Retirement System of the City of New York, and the Board of Education of the City School District of New York's acts and conducts, Plaintiff Maurice Oparaji Sr. benefits lost that he is entitled to receive through the December 17, 2018 Pension Stipulation Order.

**77.** State law vests control of the Board of Education of the City School District of New York with a Chancellor who is appointed by the Mayor of the City of New York. N.Y. Educ. Law § 2590-h.

**78.** The City is also responsible for appointing a majority of the members to the Panel for Educational Policy, which runs the Board of Education of the City School District of New York.

**79.** The Chancellor is tasked with overseeing every aspect of the schooling of New York City children.

**80.** The City is a recipient of federal financial assistance related to the provision of educational services.

**81.** At all material times herein, the Board of Education of the City School District of New York is a municipal entity created and authorized under the laws of the State of New York.

**82.** Patricia Reilly is the Executive Director of the Teachers' Retirement System of City of the New York.

**83.** Sanford R. Rich is the Executive Director Board of Education Retirement System of City of the New York.

**84.** Melanie Whinnery is the Executive Director of the New York City Employee 'Retirement System.

**85.** Sanford R. Rich; Patricia Reilly; and Melanie Whinnery, signed the Pension Stipulation & Order on behalf of Teachers' Retirement System of the City of New York ("TRS"), and the Board of Education of the City School District of New York ("BOE").

**EEOC CHARGE**

**86.** Maurice Oparaji filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") (Charge No. 520-2024-06548) on or about July 22, 2024, alleging that Defendants discriminated against him in employment based on race. And because he made a charge, testified, assisted, and participated in an

investigation, proceeding, hearing, in a class discrimination action against the Bd. of Educ. of the City Sch. Dist. of N. Y, 96-CV-8414 (KMW).

**87.** Teachers' Retirement System of the City of New York and the Board of Education of the City School District of New York ("BOE"), retaliated against him as follows: First, Retirement System of the City of New York Teachers' Retirement System of the City of New York ("TRS"), and Board of Education of the City School District of New York ("BOE"), failed or refused to comply with the Stipulation and Order So Ordered by the United States District Judge, Kimba M. Wood. Second, Teachers' Retirement System of the City of New York ("TRS"), and Board of Education of the City School District of New York ("BOE"), refused to comply with the Stipulation between parties.

**88.** Under false pretense, Retirement System of the City of New York Teachers' Retirement System of the City of New York ("TRS"), and Board of Education of the City School District of New York ("BOE") created another TRS Membership Account Number, as if Plaintiff never contributed to his Qualified Pension Plan (QPP) account.

**89.** While Plaintiff was employed as a regular teacher, Plaintiff contributed 3% of his reportable salary to the pension fund, Teachers' Retirement System of the City of New York ("TRS"), and Board of Education of the City School District of New York ("BOE") wiped all Plaintiff contributions, and created another TRS Membership Account Number 00T142296.

**90.** Plaintiff's Membership Account Number while employed as a regular teacher was TRS Membership Account Number 00T814057.

**91.** Because Plaintiff made a charge, testified, assisted, participated in an investigation, proceeding, against the Bd. of Educ. of the City Sch. Dist. of N.Y, 96-CV-8414 (KMW), the TRS retaliated against him by wiping out his contributions and changing Charging Party's Membership Account Number from 00T814057 to 00T142296, without Charging Party's consent and knowledge.

**92.** Plaintiff testified, assisted, participated, and cooperated in the investigation and litigation of Gulino case.

**93.** Because Plaintiff testified, assisted, participated, and cooperated in the investigation and litigation of Gulino case, TRS willfully and blatantly flouted the December 14, 2018 Order of the Court.

**94.** Similarly, TRS violated December 17, 2018 Stipulation and Order of the Court.

**95.** In addition, because Plaintiff testified, assisted, participated, and cooperated in the investigation and litigation of Gulino case, TRS violated the September 9, 2021 the Settlement and Release Agreement entered by parties.

**96.** Similarly, on December 17, 2021, TRS sent to Plaintiff an Invoice for Pension Contribution with Charging Party's original TRS Contribution and Membership Account Number 00T814057.

**97.** Plaintiff paid for the Invoice; a copy of check number 334, dated 12/23/2021 for $2,575.65.

**98.** Thereafter, on or about Monday January 3, 2022, at 55 Water Street, City of New York, County of New York, City and State of New York, TRS Teachers Retirement System of the City of New York and Board of Education of the City School District of New York, conspired to siphon Charging Party's TRS Contribution and under false pretense, created another TRS Membership Account Number 00T142296.

**99.** On June 18, 2024, plaintiff tried logging in to: trsnyc.org/ASPENMemberPro/account/OnlineAccountAccess/5106 to no avail.

**100.** On July 12, 2024, plaintiff tried logging again, but he was instructed to call TRS Member Service at 1-888-869-2877. Plaintiff called and spoke to Ms. K. Simmons who told me that my TRS Membership has been cancelled; hence, Plaintiff cannot login.

## STATEMENT OF FACTS

**101.** Plaintiff Maurice Oparaji, Sr. ("Plaintiff") worked as a teacher from 1996 through 2001 and now plaintiff is not receiving the appropriate pension payments in retaliation for filing a discrimination complaint in violation of Title VII of the Civil Rights Act of 1964, as amended. On December 17, 2018, there was a judgement in favor of the Gulino class members who filed a national origin discrimination complaint (1996) and its corresponding lawsuit in Civil action at the United States District Court for the Southern District of New York (SDNY) 96-CV-8414 (KMW), the Gulino v. The Board of

Education of the City of New York is a class action lawsuit filed on behalf of public school teachers of color (African-American and Latino teachers) challenging the use of discriminatory tests and licensing rules to deprive them of equal salaries, pensions, benefits, and seniority.

**102.** The United States District Court for the Southern District of New York found that the test had a disparate impact on these teachers and was not properly validated, violating Title VII of the Civil Rights Act of 1964.

**103.** With respect to Plaintiff, the Gulino parties determined that absent the discrimination, plaintiff would have been employed as a regularly appointed teacher for two years and nine months, from April 1998 to February 16, 2021, in addition to two years and four months, from January 1996 to April 1998, totaling five years and three months.[21]

**104.** Because plaintiff made a charge, testified, assisted, participated in an investigation, proceeding, hearing in a class discrimination action against the Bd. of Educ. of the City Sch. Dist. of N. Y, 96-CV-8414 (KMW), Teachers' Retirement System of the City of New York ("TRS"), and Board of Education of the City School District of New York ("BOE"), retaliated against plaintiff.

---

[21] To qualify as a vested member in the TRS System, the Board of Education of the City of New York teachers have to be appointed for five years. In the case of Plaintiff Maurice Oparaji, Sr., but if not for discrimination based on race plaintiff would have been appointed five years, as to plaintiff's five years and three months. **Attachment 13 to the Second Amended Verified Complaint.**

**105.** Plaintiff complied with the terms of the December 17, 2018 Pension Stipulation & Order in connection with his status as a Gulino class member, including paying for the cost of BMC owed.

**106.** Teachers' Retirement System of the City of New York failed to maintain proper service record of plaintiff Maurice Oparaji, Sr.

**107.** First, Teachers' Retirement System of the City of New York and Board of Education of the City School District of New York ("BOE"), failed or refused to comply to comply with the Stipulation and Order So Ordered by the United States District Judge, Kimba M. Wood.

**108.** Second, Teachers' Retirement System of the City of New York ("TRS"), and Board of Education of the City School District of New York ("BOE"), refused to comply with the Stipulation between parties.

**109.** Third, the Board of Education of the City School District of New York, through its passive acquiescence, Teachers' Retirement System of the City of New York wiped out plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

**110.** Fourth, Teachers' Retirement System of the City of New York and Board of Education of the City School District of New York issued another TRS Membership Account **Number 00T142296**, without plaintiff's consent and knowledge.

**111.** Fifth, Teachers' Retirement System of the City of New York attempted to cover up the nature of the wiping out plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account by removing and hiding the original TRS Membership

Account Number 00T814057 and dissuading Sanford R. Rich; Patricia Reilly; and Melanie Whinnery, from further action.

**112.** Sixth, the Board of Education of the City School District of New York, through its passive acquiescence, Teachers' Retirement System of the City of New York; indeed, cover up the nature of the wiping out plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

**113.** Seventh, on May 18, 2018, TRS sent a letter (Important Information) with plaintiff's TRS Membership Account Number while employed as a regular teacher TRS Membership Account Number 00T814057.

**114.** Eighth, on December 17, 2018, TRS sent to plaintiff an Invoice[22] for Pension Contribution with plaintiff's TRS Membership Account Number while employed as a regular teacher TRS Membership Account Number 00T814057.

**115.** Ninth, plaintiff paid for the Invoice check number 334, dated 12/23/2021 for $2,575.65, on plaintiff's TRS Membership Account Number while employed as a regular teacher TRS Membership Account Number 00T814057. **Attachments 3 and 4 to the Second Amended Verified Complaint.**

**116.** Tenth, the Board of Education of the City School District of New York failed to comply with the provision of the pension stipulation, the signatories, plaintiff's counsel Joshua S.

[22] The invoice for Pension Contribution stated that a "failure to pay . . . by the above deadline will result in an opt-out of Gulino pension relief and a forfeiture of your right to receive pension credit attributable to Gulino."

Sohn, Watson Farley & Williams LLP, attorneys for plaintiffs, including plaintiff Maurice Oparaji, Sr. and the Board of Education of the City School District of New York attorneys and officers; they agreed upon in the Pension Stipulation[23] . **Attachment 5 to the Second Amended Verified Complaint.**

**117.** Eleventh, Defendants dishonored its December 17, 2018 Pension agreement, which stipulated and agreed by the Board of Education of the City School District of New York officers for Defendant Patricia Reilly Executive Director Teachers' Retirement System of the City of New York 55 Water Street New York, NY 10041 Sanford R. Rich Executive Director Board of Education Retirement System of the City of New York 65 Court Street, 16th Floor Brooklyn, NY 11201, Melanie Whinnery Executive Director New York City Employees' Retirement System 335 Adams Street, Suite 2300 Brooklyn, NY II201 and Counsel for Plaintiffs William S. Fraenkel Assistant Corporation Counsel The City of New York Law, on one side; and plaintiffs' counsels Joshua S. Sohn, Watson Farley & Williams LLP 250 West 55th Street New York, NY 10019, on the other side. **Attachment 5 to the Second Amended Verified Complaint.**

**118.** Twelfth, by virtue of being represented by his counsel, Joshua S. Sohn, Watson Farley & Williams LLP 250 West 55th Street New York, NY 10019, December 17, 2018 pension

---

[23] How to Instruct the Jury on Stipulations of Fact in Federal
A stipulation agreement is indeed a contract between two parties that ensures one or both parties will fulfill certain obligations. This could involve paying a specific amount of money or providing a particular service[1]. Such agreements are legally binding and can be enforced in court if one party fails to meet their obligations.

stipulation signatory, plaintiff Maurice Oparaji, Sr. was, and still is, a party to December 17, 2018 Stipulation & Order. **Attachment 8 to the Second Amended Verified Complaint.**

**119.** Thirteenth, plaintiff Maurice Oparaji, Sr. was unable to enjoy all benefits, privileges, terms and conditions of the December 17, 2018 Stipulation & Order because defendants failed to honor their obligations as contained in the December 17, 2018 Stipulation & Order. **Attachment 8 to the Second Amended Verified Complaint.**

**120.** Fourteenth, the Board of Education of the City School District of New York

**121.** Fifteenth, Teachers' Retirement System of the City of New York acquiesced in this discrimination by failing to maintain service record of plaintiff.

**122.** Sixteenth, Defendant, Teachers' Retirement System of the City of New York wiped out plaintiff's years of contribution wiped out plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

**123.** Seventeenth, Plaintiff Maurice Oparaji, Sr. contributed 3% of his reportable salary to the pension System of the City of New York.

**124.** Eighteenth, the Board of Education of the City School District of New York acquiesced in the wiping out of plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

**125.** Nineteenth, Teachers' Retirement System of the City of New York intentionally concealed plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account

**126.** Twenty, plaintiff was unaware of the Teachers' Retirement System of the City of New York concealment of plaintiff's years of TRS contribution, the concealment was without plaintiff's consent and knowledge.

**127.** Twenty-one, Teachers' Retirement System of the City of New York's intention is to defraud plaintiff Maurice Oparaji, Sr.; that is, Teachers' Retirement System of the City of New York concealed plaintiff's years of TRS contribution for the purpose of denying plaintiff the enjoyment of all benefits, privileges, terms and conditions of the December 17, 2018 Stipulation & Order.

**128.** Twenty-two, as a result of the concealment, plaintiff Maurice Oparaji, Sr. sustained damages, including the denial of the enjoyment of all benefits, privileges, terms and conditions of the December 17, 2018 Stipulation & Order.

**129.** Twenty-three, without plaintiff Maurice Oparaji's consent and knowledge, the Board of Education of the City School District of New York acquiesced in the changing of plaintiff Maurice Oparaji's Membership Account Number from **00T814057** to **00T142296**, without plaintiff Maurice Oparaji's consent and knowledge.

**130.** Twenty-four, Teachers' Retirement System of the City of New York is TRS employee benefit plan administrator.

**131.** Twenty-five, Teachers' Retirement System of the City of New York wiped out plaintiff's contributions.

**132.** Twenty-six, the Teachers' Retirement System of the City of New York is the contribution Plan and Claims Administrator.

**133.** Twenty-seven, the Teachers' Retirement System of the City of New York made affirmative misrepresentations, failed to adequately inform plaintiff while acting in a fiduciary capacity.

**134.** Twenty-eight, plaintiff Maurice Oparaji detrimentally relied on the misrepresentation of the Teachers' Retirement System of the City of New York

**135.** 42 U.S.C. § 1981 provides that "all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.

**136.** The Board of Education of the City School District of New York officers and counsel for Defendant Board of Education of the City School District of New York would have adhered to the December 17, 2018 Stipulation, if not for the plaintiff's race.

**137.** The 42 U.S. Code § 2000d, prohibits against exclusion from participation on the basis discrimination under federally assisted programs on ground of race, color, or national origin, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance".

**138.** Defendants discriminated against plaintiff in violation of 42 U.S.C. §§ 2000e et seq

**139.** Plaintiff was discriminated against on the basis of his race, the Board of Education of the City School District of New York acquiesced in this discrimination by failing properly to keep plaintiff's record of service.

**140.** Teachers' Retirement System of the City of New York engaged in a discriminatory practices with malice or with reckless indifference to the federally protected rights of plaintiff Maurice Oparaji.

**141.** In the case of Plaintiff Maurice Oparaji, Sr., but if not for discrimination based on race, defendants would have implemented December 17, 2018 stipulation agreement, [24]which is indeed a contract between plaintiff and defendants that ensures defendants will fulfill certain obligations, which involve paying pension benefits to plaintiff; here, defendants fails to meet their obligations .

**142.** Plaintiff made contributions that was invested by Teachers' Retirement System of the City of New York; yet, Teachers' Retirement System of the City of New York failed to meet its obligations as contained in the December 17, 2018 stipulation agreement.

---

[24] A stipulation agreement is a contract between two parties that guarantees that one or all parties to the contract will do something. For example, a stipulation and agreement might mandate that a certain amount of money will be paid, or that a specific service be provided.

Once the stipulation agreement has been finalized, both parties are legally obligated to uphold their end of the agreement. If one party fails to do so, they may be held liable in court. For this reason, this type of contract is often a vital part of major business agreement **Attachment 8 to the Second Amended Verified Complaint.**

**143.** With respect to Plaintiff, the Gulino parties determined that absent the discrimination, plaintiff would have been employed as a regularly appointed teacher for two years and nine months, from April 1998 to February 16, 2021, in addition to two years and four months, from January 1996 to April 1998, totaling five years and three months.

**144.** On or about September 7, 2018, Parties Agreement:

> "The Pension Stipulation & Order was drafted by the parties in consultation with me[25]. It is the culmination of many months of effort to deal with complex and arcane factual and legal issues. In particular, the efforts of Bryan Berge, Senior Counsel at the New York City Law Department, should be credited with engaging the three New York City retirement systems to achieve a fair solution to what initially appeared to be an intractable problem. Plaintiffs' counsel, especially Robert A. Mantel, also deserve special mention for completing the Pension Stipulation & Order.
>
> The New York City Teachers' Retirement System ("TRS"), the Board of Education Retirement System ("BERS"), and the New York City Employee Retirement System ("NYCERS")—public pension systems in which a portion of the plaintiff class are current or retired members—consent to those protocols and procedures detailed in the Pension Stipulation & Order[26].
>
> TRS, BERS, and NYCERS are non-parties that have consented to the terms that pertain to them and for which consent has not been expressly withheld. TRS, BERS, and NYCERS have consented to these terms solely for the purpose of effectively administering the pension relief due to class members. TRS, BERS, and NYCERS were not parties to

---

25

26 TRS, BERS, and NYCERS are non-parties that have consented to the terms that pertain to them and for which consent has not been expressly withheld. TRS, BERS, and NYCERS have consented to these terms solely for the purpose of effectively administering the pension relief due to class members. TRS, BERS, and NYCERS were not parties to the discrimination for which the BOE has been found liable and take no position on the litigation.

the discrimination for which the BOE has been found liable and take no position on the litigation.

The parties agree to waive the timeframe and procedure in the Second Amended Order of Appointment [ECF No. 524] for submission of their objections, as they agree the objections they previously set forth should be deemed submitted to the Court".

**145.** Plaintiff complied with all the terms of the September 7, 2018 Report and Recommendation, but if not for plaintiff's race African-American, the Defendants, Teachers' Retirement System of the City of New York ("TRS"), the Board of Education of the City School District of New York ("BOE"), Patricia Reilly, Sanford R. Rich, and Melanie Whinnery, would not have failed or refused to comply with all the terms of the September 7, 2018 Report and Recommendation.

**146.** The December 17, 2018 Stipulation & Order states:

"The Court also retains jurisdiction over any disputes regarding the operation of this Stipulation & Order, and the special Master's Order of Appointment extends to resolve these disputes" December 17, 2018 Stipulation and Order ¶67.

The Stipulation & Order may be executed in counterparts, each of them will be deemed an original, and all of them together will constitute one and the same instrument. This Stipulation & Order may be executed by facsimile or PDF signatures. **Attachment 8 to the Second Amended Verified Complaint.**

**147.** Plaintiff complied with the terms of the December 17, 2018 Pension Stipulation & Order Teachers' Retirement System of the City of New York and Board of Education of the City School District of New York ("BOE"), failed or refused to comply with the Stipulation and Order So Ordered by the United States District Judge, Kimba M. Wood.

**148.** On or about December 17, 2021, Plaintiff received an invoice for payment for the cost of BMC owed. **Attachments 3 & 4 to the Second Amended Verified Complaint.**

**149.** On January 3, 2022, plaintiff received a "Welcome to TRS" letter and TRS News Publication. **Attachment 5 to the Second Amended Verified Complaint.**

**150.** On Jun 22, 2022 at 4:28 PM, plaintiff received an email that states "Once a review of your case is completed, you will be notified in writing".

**151.** Plaintiff made at least 50 calls, and sent several emails, yet received no response from Teachers' Retirement System of the City of New York.

**152.** Plaintiff Maurice filed and received a Notice of Claim from the City of New York Office of the Comptroller on September 30, 2022, Claim Number: 2022LW027731.

**153.** On June 18, 2024, plaintiff tried logging in to trsnyc.org/ASPENMemberPro/account/OnlineAccountAccess/5106 to no avail.

**154.** On July 12, 2024, plaintiff tried logging in again, but plaintiff was instructed to call TRS Member Service at 1-888-869-2877.

**155.** Plaintiff called TRS Member Service at 1-888-869-2877 and spoke to Ms. K. Simmons who told plaintiff that his TRS Membership has been cancelled.

156. On July 22, 2024, Plaintiff Maurice Oparaji, Sr., filed a charge of discrimination and retaliation[27] with the United States Equal Employment Opportunity Commission Number: 520-2024-06548

157. Defendant, Teachers' Retirement System of the City of New York wiped out plaintiff's years of contribution and issued another Member Contribution account number which has no contribution because of plaintiff's race, African America and because he opposed unlawful discrimination, made a charge, testified, assisted, and participated in a Title VII proceeding and investigation.

158. But if not for plaintiff's race, African America or/and because plaintiff opposed unlawful discrimination, made a charge, testified, assisted, and participated in a Title VII proceeding and investigation, Teachers' Retirement System of the City of New York Development would not have wiped out plaintiff's contribution and issued another Member Contribution account number.

159. JUDGMENT FOR MAURICE OPARAJI SR. states as follows:

"IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the annexed Findings of Fact and Conclusions of Law for Maurice Oparaji;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Mr. Oparaji will have judgment against BOE as follows:

---

[27] The Supreme Court and Second Circuit have defined "adverse action" for purposes of a retaliation claim broadly. A plaintiff need only "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Kessler v. Westchester Cty. Dept., Soc. Serv 461 F.3d 199 (2d Cir. 2006 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

1. Backpay in the amount of $21,986;

2. Tax-component award in the amount of $2,583;

3. LAST Fees in the amount of $420;

4. ASAF account award in the amount of $430;

5. Pre-judgment interest calculated to be $11,701; and

6. Pension-related relief pursuant to the terms of the Court's Order. **Attachment 6 to the Second Amended Verified Complaint.**

**160.** Plaintiff is entitled to "Pension-related relief pursuant to the terms of the Court's Order dated December 17, 2018. **Attachment 8 to the Second Amended Verified Complaint.**

**161.** Defendants are in breach of the December 17, 2018 Pension & Stipulation Order Plaintiff is entitled to pension related relief based on his contractual service and salary histories, as determined pursuant to December 17, 2018 Pension & Stipulation Order.

**162.** But if not for plaintiff's race African-American But-for plaintiff's race, African America 42 U.S.C. § 1981's contract clause uniquely focuses on guaranteeing a person's equal right to make and enforce contracts without regard to race. More specifically, § 1981's contract clause provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."" reason why the defendant refused to contract with the plaintiff on behalf of Teachers' Retirement System of the City of New York ("TRS"),

and the Board of Education of the City School District of New York ("BOE"). Stipulation and Order So Ordered by the United States District Judge, on December 17, 2018.[28].

**163.**On February 19, 2021, the United States District Judge (the Honorable Kimba M. Wood) signed a Judgment for the plaintiff, Maurice Oparaji Snr. **Attachment 6 to the Second Amended Verified Complaint.**

**164.** The Board of Education of the City School District of the City of New York and Plaintiff entered into, and the Court so ordered, a Stipulation of Classwide Facts & Procedures. **Attachment 8 to the Second Amended Verified Complaint.**

**165.** Sanford R. Rich; Patricia Reilly; and Melanie Whinnery, signed the Pension Stipulation & Order on behalf of Teachers' Retirement System of the City of New York ("TRS"), and the Board of Education of the City School District of New York ("BOE"). Stipulation and Order So Ordered by the United States District Judge, on December 17, 2018.. **Attachment 8 to the Second Amended Verified Complaint.**

**166.** The December 17, 2018, Stipulation and Order So Ordered by the United States District Judge, Kimba M. Wood, was signed by Sanford R. Rich; Patricia Reilly; and Melanie Whinnery, on behalf of Teachers' Retirement System of the City of New York

[28] See Classwide Conclusions of Law, [ECF No. 1008]; see also Pension Stipulation & Order, [ECF No. 1014]; Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y., Opinion and Order, 1:96-cv-08414, [ECF No. 800] ("[T]he parties agree that class members are entitled to the lost pensions they would have received absent the discriminatory LAST").

("TRS"), and the Board of Education of the City School District of New York ("BOE")..

**Attachment 8 to the Second Amended Verified Complaint.**

**167.** Pursuant to the of the December 17, 2018, Stipulation and Order So Ordered by the United States District Judge, Kimba M. Wood; Teachers' Retirement System of the City of New York ("TRS"), and the Board of Education of the City School District of New York ("BOE") are required to "effectuate the non-monetary relief to which plaintiff Maurice Oparaji Sr. is entitle pursuant to the terms of the Judgment and any other applicable orders of the Court, including the terms of the Court's Order dated December 17, 2018. **Attachment 8 to the Second Amended Verified Complaint.**

**168.** The BOE and Plaintiff Maurice Oparaji entered into, and the Court so ordered, a Fifth Supplemental Stipulation Concerning Admissibility of Exhibits.

**169.** On December 17, 2018, the Court entered Pension-related relief pursuant to the terms of the Court's Order (Pension Stipulation & Order, [ECF No. 1014]), which states that Mr. Oparaji will be entitled to the following non-monetary relief and ordered the BOE to amend its internal service, salary, payroll, and human resources systems as follows: Court found that the New York City Department of Education ("DOE") failed or refused to comply the Court's Order:

> a. Incorporate the findings of fact contained in the "Pension Damages" section, Section II (E);
>
> b. Incorporate Mr. Oparaji's counterfactual monthly service history, as listed on Exhibit B to the Findings of Fact and Conclusions of Law for Maurice Oparaji; and

c. Incorporate the findings of fact contained in the "Retroactive Seniority Adjustment" section, Section II.

**170.** If not for plaintiff's race, the Board of Education of the City School District of the City of New York would not have failed to amend its internal service, and human resources systems as ordered by the Court.

**171.** The Board of Education of the City School District of the City of New York failed or refused to incorporate the findings of fact contained in the "Pension Damages" section, Section II (E).

**172.** If not for plaintiff's race, the Board of Education of the City School District of the City of New York would not have refused to incorporate Mr. Oparaji's counterfactual monthly service history.

**173.** The Board of Education of the City School District of the City of New York failed or refused to incorporate the findings of fact contained in the "Retroactive Seniority Adjustment" section.

**174.** On or about December, 2021, plaintiff Maurice Oparaji received Gulino Invoice Pension Contributions from Teachers' Retirement System of the City of New York.

**175.** On or about December 23, 2021, by check number 334, Plaintiff paid $2575.65 for Basic Member Contribution (BMC) to Teachers' Retirement System of the City of New York. **Attachments 3 and 4 to the Second Amended Verified Complaint.**

**176.** On January 3, 2022, plaintiff received a "Welcome to TRS" letter and TRS News Publication. **Attachment 5 to the Second Amended Verified Complaint.**

**177.** On Jun 22, 2022 at 4:28 PM, plaintiff received an email that states "Once a review of your case is completed, you will be notified in writing".

**178.** Since then, plaintiff has made at least 50 calls, and sent several emails, yet received no response from Teachers' Retirement System of the City of New York.

**179.** Plaintiff Maurice Oparaji filed and received a Notice of Claim from the City of New York Office of the Comptroller on September 30, 2022, Claim No: 2022LW027731.

**180.** Despite the discrimination layoff, plaintiff would have remained employed at the Board of Education of the City School District of the City of New York until he was sixty-five years old.

**181.** Defendants, without good cause, failed to comply with the terms of the Court's Order (Stipulation & Order); whereas, the Parties had agreed:

> The Pension Stipulation & Order was drafted by the parties in consultation with me. It is the culmination of many months of effort to deal with complex and arcane factual and legal issues. In particular, the efforts of Bryan Berge, Senior Counsel at the New York City Law Department, should be credited with engaging the three New York City retirement systems to achieve a fair solution to what initially appeared to be an intractable problem. Plaintiffs' counsel, especially Robert A. Mantel, also deserve special mention for completing the Pension Stipulation & Order.
>
> The New York City Teachers' Retirement System ("TRS"), the Board of Education Retirement System ("BERS"), and the New York City Employee Retirement System ("NYCERS")—public pension systems in which a portion of the plaintiff class are current or retired members—consent to those protocols and procedures detailed in the Pension Stipulation & Order.

> TRS, BERS, and NYCERS are non-parties that have consented to the terms that pertain to them and for which consent has not been expressly withheld. TRS, BERS, and NYCERS have consented to these terms solely for the purpose of effectively administering the pension relief due to class members. TRS, BERS, and NYCERS were not parties to the discrimination for which the BOE has been found liable and take no position on the litigation.
>
> The parties agree to waive the timeframe and procedure in the Second Amended Order of Appointment [ECF No. 524] for submission of their objections, as they agree the objections they previously set forth should be deemed submitted to the Court. **Attachment 8 to the Second Amended Verified Complaint.**

**182.** Whereas, "TRS, BERS, and NYCERS are non-parties that have consented to the terms that pertain to them and for which consent has not been expressly withheld. TRS, BERS, and NYCERS have consented to these terms solely for the purpose of effectively administering the pension relief due to class members. TRS, BERS, and NYCERS were not parties to the discrimination for which the BOE has been found liable and take no position on the litigation".

**183.** TRS, BERS, and NYCERS consented to the terms that pertain to them and for which consent has not been expressly withheld.

**184.** TRS, BERS, and NYCERS consented to these terms solely for the purpose of effectively administering the pension relief due to class members.

**185.** TRS, BERS, and NYCERS were not parties to the discrimination for which the BOE has been found liable and take no position on the litigation".

**186.** A copy of the Court's Order (Stipulation & Order), filed December 17, 2018 as attachment 8 to the Second Amended Verified Complaint.

**187.** To the extent Maurice Oparaji Sr. has any questions or concerns related to the administration of his Monetary and/or Non-Monetary Relief, without limitation, any non-contractual claim, dispute or matter shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts to be performed wholly within State of New York".

**188.** The Parties also "agree that this agreement may be executed in counterparts which when taken together shall constitute a single document".

**189.** For the non-monetary relief (pension relief), the Board of Education of the City School District of the City of New York agree to amend its internal service, salary, payroll, and human resources systems. **Attachment 8 to the Second Amended Verified Complaint.**

**190.** The Board of Education of the City School District of the City of New York agree to incorporate the "Pension Inputs" detailed in Paragraph 3(d); but it failed or refused to incorporate the Pension Inputs because of plaintiff's race. **Attachment 8 to the Second Amended Verified Complaint.**

**191.** Furthermore, the Board of Education of the City School District of the City of New York and TRS agree to Incorporate Mr. Oparaji's counterfactual monthly service history, as listed on Exhibit B to the Findings and Fact and Conclusions of Law for Mr. Oparaji; and grant Mr. Oparaji retroactive seniority based on his counterfactual monthly service history, as described in Paragraph 3 of Exhibit 1, but the Board of Education of the City

School District of the City of New York and TRS failed to comply; whereas, plaintiff Maurice Oparaji gave "up his right to payment of post-judgment interest.

**192.** Whereas, plaintiff Maurice Oparaji agree to pay $2575.65 for Basic Member Contribution to Teachers' Retirement System of the City of New York.

**193.** Plaintiff Maurice Oparaji also agree and paid the Basic Member Contribution to Teachers' Retirement System of the City of New York.

**194.** Plaintiff Maurice Oparaji is entitled to non-monetary relief pursuant to the terms of the Judgment and any other applicable Orders the Court, including the Pension-related relief pursuant to the terms of the Court's Order (Pension Stipulation & Order.

**195.** The Board of Education of the City School District of the City of New York and TRS failed or refused to comply with the non-monetary relief pursuant to the terms of the Judgment and the Pension-related relief pursuant to the terms of the Court's Order (Pension Stipulation & Order. **Attachment 8 to the Second Amended Verified Complaint.**

**196.** As a result of their noncompliance to the Court's Order (Pension Stipulation & Order, [ECF No. 1014]), Plaintiff Maurice Oparaji was denied the Pension-related relief pursuant to the terms of the Court's Order, which he is entitled.

**197.** Plaintiff Maurice Oparaji was subjected to retaliation in violation of Title VII.

**198.** Defendants failed or refused to comply to take reasonable action to prevent the discriminatory treatment of plaintiff.

**199.** When plaintiff called Member Services Center at 1 (888) 869-2877, Teachers' Retirement System of the City of New York's Andre Murray made inappropriate comments that was directed at Plaintiff Maurice Oparaji because of his class action participation against the Board of Education of the City School District of New York (96-CV-8414 (KMW); "You are not entitled to be reinstated as a member of TRS, your judgment is a nullity because New York City Pension Funds have a statutory obligation to follow NYC Administrative Code §13-184, and that for you to join TRS, the Court must modify Admin. Code § 13-184".

**200.** On numerous occasions, Andre Murray told plaintiff, "Because you separated from service prior to becoming vested, you are required to withdraw your Qualified Pension Plan (QPP) funds by submitting an Application for Withdrawal of QPP Accumulations".

**201.** In June 19, 2022, Plaintiff Maurice Oparaji complained to the Board of Education of the City School District of the City of New York about Teachers' Retirement System of the City of New York's Andre Murray conduct and comments toward him.

**202.** The Board of Education of the City School District of the City of New York took no action in response to Plaintiff Maurice Oparaji's complaints.

**203.** The Settlement and Release Agreement signed by plaintiff Maurice Oparaji and the Board of Education of the City School District of the City of New York "is binding upon and inures to the benefit of Maurice Oparaji Sr. and BOE, and each of their respective

agents, officers, directors, partners, employees, representatives, attorneys, successors, predecessors, parents, subsidiaries, affiliates, and assigns".

**204.** Defendants' conduct here is Intentional because the Order of the Court is clear and unambiguous "amend its internal service, salary, payroll, and human resources systems to Incorporate the findings of fact contained in the "Pension Damages" section, Section II(E) of Exhibit 1; b. Incorporate Mr. Oparaji's counterfactual monthly service history, as listed on Exhibit B to the Findings of Fact and Conclusions of Law for Maurice Oparaji; and c. Incorporate the findings of fact contained in the Retroactive Seniority Adjustment section, Section II(F) of Exhibit 1; and "expressly determines that there is no just reason for delay for the reasons stated in the Special Master's Report and Recommendation. This Judgment Entry is certified and entered by the Court pursuant to Rule 54(b) of the Federal Rules of Civil Procedure".

**205.** Defendants Teachers Retirement System of the City of New York ("TRS"), the Board of Education of the City School District of New York ("BOE"), Patricia Reilly, Sanford R. Rich, and Melanie Whinnery, intentionally refused to comply with the Court Orders.

**Attachment 8 to the Second Amended Verified Complaint.**

**206.** Under false pretense[29], these defendants claim plaintiff is challenging the Judgment "Because you separated from service prior to becoming vested, you are required to

---

[29] If any person shall knowingly and designedly by means of any kind of false pretense whatsoever, whether the false pretense is of a past or subsisting fact or of a future fulfillment or event, obtain or attempt to obtain from any person within this State any money, goods, property, services, chose in

withdraw your Qualified Pension Plan (QPP) funds by submitting an Application for Withdrawal of QPP Accumulations".

**207.** Here, there is a contract between Plaintiff Maurice Oparaji and Defendants; the Settlement and Release Agreement signed by plaintiff Maurice Oparaji and the Board of Education of the City School District of the City of New York "is binding upon and inures to the benefit of Maurice Oparaji Sr. and BOE, and each of their respective agents, officers, directors, partners, employees, representatives, attorneys, successors, predecessors, parents, subsidiaries, affiliates, and assigns".

**208.** Maurice Oparaji Sr. signed a contract/agreement with BOE which is binding upon and inures to the benefit of Maurice Oparaji Sr. and BOE, and each of their respective agents, officers, directors, partners, employees, representatives, attorneys, successors, predecessors, parents, subsidiaries, affiliates, and assigns".

---

action, or other thing of value with intent to cheat or defraud any person of such money, goods, property, services, chose in action or other thing of value, such person shall be guilty of a felony: Provided, that if, on the trial of anyone indicted for such crime, it shall be proved that he obtained the property in such manner as to amount to larceny or embezzlement, the jury shall have submitted to them such other felony proved; and no person tried for such felony shall be liable to be afterwards prosecuted for larceny or embezzlement upon the same facts: Provided, further, that it shall be sufficient in any indictment for obtaining or attempting to obtain any such money, goods, property, services, chose in action, or other thing of value by false pretenses to allege that the party accused did the act with intent to defraud, without alleging an intent to defraud any particular person, and without alleging any ownership of the money, goods, property, services, chose in action or other thing of value; and upon the trial of any such indictment, it shall not be necessary to prove either an intent to defraud any particular person or that the person to whom the false pretense was made was the person defrauded, but it shall be sufficient to allege and prove that the party accused made the false pretense charged with an intent to defraud.

**209.** The signed settlement and release contract/agreement is complete, clear and unambiguous; the language used is definite and precise, and So Ordered by the United States District Judge, Kimba M. Wood on September 9, 2021, in paragraph 6, the parties agree that "this agreement is binding upon and inures to the benefit of Maurice Oparaji Sr. and BOE, and each of their respective agents, officers, directors, partners, employees, representatives, attorneys, successors, predecessors, parents, subsidiaries, affiliates, and assigns".

**210.** These defendants refused to comply with the signed settlement and release contract/agreement because they claim, under false pretense, that it is not binding.

**211.** It is unreasonable to assume that an agreement signed by both parties, Joshua S. Sohn, William S. Fraenkel, Patricia Reilly, Sanford R. Rich, and Melanie Whinnery, signed on behalf of the Board of Education of the City School District of New York, **Attachment 8 to the Second Amended Verified Complaint.**

**212.** These defendants are still discriminating; and still retaliating, till date.

**213.** Plaintiff Maurice Oparaji gave "up his right to payment of post-judgment interest.

**214.** Plaintiff Maurice Oparaji agreed and paid $2575.65 for Basic Member Contribution to Teachers' Retirement System of the City of New York.

**215.** Defendants did nothing other than coerced plaintiff to withdraw his Qualified Pension Plan (QPP) funds by submitting an Application for Withdrawal of QPP Accumulations"; simply put, defendants breached the agreement.

**216.** Defendants the Board of Education of the City School District of New York, Teachers' Retirement System of the City of New York, Patricia Reilly, Sanford R. Rich, and Melanie Whinnery have failed or refused to effectuate the non-monetary relief to which Maurice Oparaji Sr. is entitle pursuant to the terms of the Judgment applicable orders of the Court, including the terms of the Court's Order dated December 17, 2018 (Pension Stipulation & Order. **Attachment 8 to the Second Amended Verified Complaint.**

**217.** The Settlement and Release Agreement entered into between Maurice Oparaji Sr. and the Board of Education of the City School District of New York, Notarized and So Ordered by the United States District Judge, The parties stipulate and agree as follows:

> "1 (e). Maurice Oparaji Sr. giving up his right to payment of post-judgment interest".
>
> "2. The non-monetary relief to which plaintiff Maurice Oparaji Sr. is entitled pursuant to the terms of the Judgment remains unaffected by the terms of this agreement, and BOE will effectuate the non-monetary relief to which Maurice Oparaji Sr. is entitled pursuant to the terms of the Judgment and any other applicable orders of the Court, including the terms of the Court's Order dated December 17, 2018 (Pension Stipulation & Order, [ECF No. 1014])".
>
> "6. This agreement is binding upon and inures to the benefit of Maurice Oparaji Sr. and BOE, and each of their respective agents, officers, directors, partners, employees, representatives, attorneys, successors, predecessors, parents, subsidiaries, affiliates, and assigns".
>
> "7. This agreement represents the entire agreement between BOE and Maurice Oparaji Sr. with respect to the subject matter hereof. This agreement may not be modified, changed, amended,

supplemented or rescinded except pursuant to a written instrument duly executed by BOE and Maurice Oparaji Sr..."

**218.** There is no record of a written instrument duly executed by BOE and Maurice Oparaji Sr, or/and plaintiff Maurice Oparaji's counsel Joshua S. Sohn, Watson Farley & Williams LLP. **Attachment 8 to the Second Amended Verified Complaint.**

**219.** Plaintiff Maurice Oparaji Sr. executed no written instrument modifying, changing, amending, supplementing or rescinding the agreement

**220.** Defendants and each of their respective agents, officers, directors, partners, employees, representatives, attorneys, successors, predecessors, parents, subsidiaries, affiliates, and assigns have refused to comply with the Court's Order Pension-related relief pursuant to the terms of the Court's Order dated December 17, 2018 (Pension Stipulation & Order.

**221.** Till date, plaintiff has not received the correct information regarding his pension disbursements and contributions.

**222.** Plaintiff is entitled to Compensatory and Punitive Damages available under § 102 of the Civil Rights Act of 1991.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Race Discrimination Claims Under 42 U.S.C. § 1981)

**223.** Plaintiff repeats and re-alleges the paragraphs above as if fully stated herein.

**224.** Plaintiff is an African-American male who is at least 70-years old, a resident of Queens, a citizen of the State of New York and the United State.

225. Plaintiff is vested active member Employee Retirement Pension Plan member in the TRS System, having been appointed more than five years and three months the Defendant Board of Education of the City School District of the City of New York.

226. New York City Admin. Code Section 13-173 (a) (3), provides, that the Board of Education of the City of New York teachers have to be appointed for five years.

227. Plaintiff made contributions that was invested by Teachers' Retirement System of the City of New York.

228. While Plaintiff was employed as a regular teacher, plaintiff contributed 3% of his reportable salary to the pension System of the City of New York.

229. The Board of Education of the City School District of New York, through its passive acquiescence, the Teachers' Retirement System of the City of New York, Patricia Reilly, Sanford R. Rich, and Melanie Whinnery, on or about December 17, 2018, stipulate and state that: "The class action has ordered that class members are entitled to pension damages to compensate them for pension benefits that they would have received absent the discrimination for which the Defendant Board of Education of the City School District of the City of New York ("BOE") has been found liable and "To facilitate the provision of these damages and benefits, the signatories agree to the following protocols and procedures. By agreeing to this Stipulation & Order, however, the BOE and Plaintiffs do not waive any other objections they have made to date in this action, or any rights related to those objections. December 17, 2018 Stipulation & Order.

[illegible] Member Employee Retirement Pension Plan member in [illegible] more than five years [illegible] by [illegible] the City School District of the City of New York [illegible] New York City Administrative Code [illegible] (a)(3) provides [illegible] [illegible] ed by Teachers' Retirement System [illegible] City of New York.

[illegible] regular teacher, plaintiff [illegible] [illegible] the City of New York.

[illegible] Board of Education of the City School District of New York [illegible] is passive [illegible] of the City of New York [illegible] [illegible] [illegible] [illegible] entitled to [illegible] [illegible] that they would [illegible] [illegible] the Board of Education [illegible] [illegible] of New York [illegible] [illegible] [illegible] eedings [illegible] [illegible] [illegible] Schedule A [illegible]

**230.** The New York City Teachers' Retirement System ("TRS"), the Board of Education Retirement System ("BERS"), and the New York City Employee Retirement System. ("NYCERS")-public pension systems in which a portion of the plaintiff class are current or retired members-consent to those protocols and procedures detailed below that pertain to them. December 17, 2018 Stipulation & Order.

**231.** The pension relief a class member is entitled to receive as a result of this case derives from the service history he or she would have accrued and the salary he or she would have earned absent BOE discrimination (the "counterfactual" service and salary history), as determined by the parties' damages experts and found by the Court, as detailed in the class member's individual judgment award.

December 17, 2018 Stipulation & Order,

**232.** The New York City Teachers' Retirement System ("TRS"), the Board of Education Retirement System ("BERS"), and the New York City Employee Retirement System, further stipulate, "The Court also retains jurisdiction over any disputes regarding the operation of this Stipulation & Order, and the special Master's Order of Appointment extends to resolve these disputes" December 17, 2018 Stipulation and Order." ¶67. The Stipulation & Order may be executed in counterparts, each of them will be deemed an original, and all of them together will constitute one and the same instrument. This Stipulation & Order may be executed by facsimile or PDF signatures." December 17, 2018 Stipulation & Order.

**233.** The December 17, 2018 Stipulation & Order, pertinently states, "The Court in this Title VII class action has ordered that class members are entitled to pension damages to compensate them for pension benefits that they would have received absent the discrimination for which the Defendant Board of Education of the City School District of the City of New York ("BOE") has been found liable. December 17, 2018 Stipulation & Order, page 1.

**234.** Defendants agree and stipulate, December 17, 2018 Stipulation & Order, and failed to adhere to the provision of the Stipulation & Order.

**235.** If not Plaintiff Maurice Oparai's race, African-American, the Board of Education of the City School District of New York would have comply with the provision of the pension benefits, which its officers and counsels append their signatories.

**236.** If not for plaintiff's race African-American, defendants, would not have dishonored their December 17, 2018 Pension agreement, which stipulated and agreed by them, their officers Patricia Reilly Executive Director Teachers' Retirement System of the City of New York 55 Water Street New York, NY 10041 Sanford R. Rich Executive Director Board of Education Retirement System of the City of New York 65 Court Street, 16th Floor Brooklyn, NY 11201, Melanie Whinnery Executive Director New York City Employees' Retirement System 335 Adams Street, Suite 2300 Brooklyn, NY II201 and_Counsel for Plaintiffs William S. Fraenkel Assistant Corporation Counsel The City of New

York Law, on one side; and plaintiffs' counsels Joshua S. Sohn, Watson Farley & Williams LLP 250 West 55th Street New York, NY 10019, on the other side.

**237.** If not for plaintiff's race African-American, defendant the Board of Education of the City School District of New York, would not have dishonored its December 17, 2018 Pension agreement, that its officers and counsel stipulated and agreed.

**238.** The plaintiff was a party to December 17, 2018 Stipulation & Order having been represented by Counsels Joshua S. Sohn, Watson Farley & Williams LLP 250 West 55th Street New York, NY 10019 and William S. Fraenkel Assistant Corporation Counsel, the City of New York Law Department 100 Church Street New York, NY 10007.

**239.** Because of defendant Board of Education of the City School District of New York's purposeful discrimination against the plaintiff on the basis of plaintiff's race, plaintiff was unable to enjoy all benefits, privileges, terms and conditions of the December 17, 2018 Stipulation & Order.

**240.** Plaintiff was unable to enjoy all benefits, privileges, terms and conditions of the December 17, 2018 Stipulation & Order because defendant Board of Education of the City School District of New York's discriminated against him on the basis of his race.

**241.** If not for discrimination based on race plaintiff would have enjoy all benefits, privileges, terms and conditions of the December 17, 2018 Stipulation & Order

**242.** Teachers' Retirement System of the City of New York acquiesced in this discrimination by failing properly to maintain service record of plaintiff.

243. 42 U.S.C. § 1981 provides that "all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.

244. The 42 U.S. Code § 2000d, prohibits against exclusion from participation on the basis discrimination under federally assisted programs on ground of race, color, or national origin, “No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance”.

245. Defendants discriminated against plaintiff in violation of 42 U.S.C. §§ 2000e et seq

246. Plaintiff was discriminated against on the basis of his race, the Board of Education of the City School District of New York acquiesced in this discrimination by failing properly to keep plaintiff's record of service.

247. Teachers' Retirement System of the City of New York engaged in a discriminatory practices with malice or with reckless indifference to the federally protected rights of plaintiff Maurice Oparaji.

248. In the case of Plaintiff Maurice Oparaji, Sr., but if not for discrimination based on race, defendants would have implemented December 17, 2018 stipulation agreement, which is indeed a contract between plaintiff and defendants that ensures defendants will fulfill certain obligations, which involve paying pension benefits to plaintiff; here, defendants fails to meet their obligations .

**249.** Plaintiff made contributions that was invested by Teachers' Retirement System of the City of New York; yet, Teachers' Retirement System of the City of New York failed to meet its obligations as contained in the December 17, 2018 stipulation agreement.

**250.** With respect to Plaintiff, the Gulino parties determined that absent the discrimination, plaintiff would have been employed as a regularly appointed teacher for two years and nine months, from April 1998 to February 16, 2021, in addition to two years and four months, from January 1996 to April 1998, totaling five years and three months.

**251.** To qualify as a vested member in the TRS System, the Board of Education of the City of New York teachers have to be appointed for five years. In the case of Plaintiff Maurice Oparaji, Sr., five years and three months, but if not for discrimination based on race, plaintiff would have been enjoying his pension benefits, which 42 U.S.C. § 1981's contract clause uniquely guaranteed.

**252.** 42 U.S.C. § 1981's contract clause provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."

**253.** The conduct and actions of Defendants complained of were discriminatory in violation of 42 U.S.C. § 1981, which provides that "all persons shall have the same right to make and enforce contracts as is enjoyed by white citizens.

**254.** Defendants' conduct and actions were intentional discrimination in violation of 42 U.S.C. § 1981

**SECOND CAUSE OF ACTION**
**(Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a))**

**255.** Plaintiff repeats and re-alleges the paragraphs above as if fully stated herein

**256.** Teachers' Retirement System of the City of New York and Board of Education of the City School District of New York ("BOE"), failed or refused to comply to comply with the Stipulation and Order So Ordered by the United States District Judge, Kimba M. Wood.

**257.** Teachers' Retirement System of the City of New York ("TRS"), and Board of Education of the City School District of New York ("BOE"), refused to comply with the Stipulation between parties.

**258.** The Board of Education of the City School District of New York, through its passive acquiescence, Teachers' Retirement System of the City of New York wiped out plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

**259.** Teachers' Retirement System of the City of New York and Board of Education of the City School District of New York issued another TRS Membership Account **Number 00T142296**, without plaintiff's consent and knowledge.

**260.** Teachers' Retirement System of the City of New York attempted to cover up the nature of the wiping out plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account by removing and hiding the original TRS

Membership Account Number 00T814057 and dissuading Sanford R. Rich; Patricia Reilly; and Melanie Whinnery, from further action.

**261.** The Board of Education of the City School District of New York, through its passive acquiescence, Teachers' Retirement System of the City of New York; indeed, cover up the nature of the wiping out plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

**262.** Plaintiff Maurice Oparaji, while he was employed as a regular teacher, contributed 3% of his reportable salary to the pension fund

**263.** On May 18, 2018, TRS sent a letter (Important Information) with plaintiff's TRS Membership Account Number while employed as a regular teacher TRS Membership Account Number 00T814057.

**264.** On December 17, 2018, TRS sent to plaintiff an Invoice for Pension Contribution with plaintiff's TRS Membership Account Number while employed as a regular teacher TRS Membership Account Number 00T814057.

**265.** Plaintiff Maurice Oparaji paid for the Invoice check number 334, dated 12/23/2021 for $2,575.65, on plaintiff's TRS Membership Account Number while employed as a regular teacher TRS Membership Account Number 00T814057.

**266.** The Board of Education of the City School District of New York failed to comply with the provision of the pension stipulation, the signatories, plaintiff's counsel Joshua S. Sohn, Watson Farley & Williams LLP, attorneys for plaintiffs, including

plaintiff Maurice Oparaji, Sr. and the Board of Education of the City School District of New York attorneys and officers; they agreed upon in the Pension Stipulation.

**267.** Defendants dishonored its December 17, 2018 Pension agreement, which stipulated and agreed by the Board of Education of the City School District of New York officers for Defendant Patricia Reilly Executive Director Teachers' Retirement System of the City of New York 55 Water Street New York, NY 10041 Sanford R. Rich Executive Director Board of Education Retirement System of the City of New York 65 Court Street, 16th Floor Brooklyn, NY 11201, Melanie Whinnery Executive Director New York City Employees' Retirement System 335 Adams Street, Suite 2300 Brooklyn, NY II201 and Counsel for Plaintiffs William S. Fraenkel Assistant Corporation Counsel The City of New York Law, on one side; and plaintiffs' counsels Joshua S. Sohn, Watson Farley & Williams LLP 250 West 55th Street New York, NY 10019, on the other side.

**268.** By virtue of being represented by his counsel, Joshua S. Sohn, Watson Farley & Williams LLP 250 West 55th Street New York, NY 10019, December 17, 2018 pension stipulation signatory, plaintiff Maurice Oparaji, Sr. was, and still is, a party to December 17, 2018 Stipulation & Order.

**269.** Plaintiff Maurice Oparaji, Sr. was unable to enjoy all benefits, privileges, terms and conditions of the December 17, 2018 Stipulation & Order because defendants failed to honor their obligations as contained in the December 17, 2018 Stipulation & Order.

270. Teachers' Retirement System of the City of New York acquiesced in this discrimination by failing to maintain service record of plaintiff.

271. Teachers' Retirement System of the City of New York acquiesced in this discrimination by failing to maintain service record of plaintiff.

272. Defendant, Teachers' Retirement System of the City of New York wiped out plaintiff's years of contribution wiped out plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

273. Plaintiff Maurice Oparaji, Sr. contributed 3% of his reportable salary to the pension System of the City of New York.

274. The Board of Education of the City School District of New York acquiesced in the wiping out of plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

275. Teachers' Retirement System of the City of New York intentionally concealed plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account

276. Plaintiff was unaware of the Teachers' Retirement System of the City of New York concealment of plaintiff's years of TRS contribution, the concealment was without plaintiff's consent and knowledge.

277. Teachers' Retirement System of the City of New York's intention is to defraud plaintiff Maurice Oparaji, Sr.; that is, Teachers' Retirement System of the City of New York concealed plaintiff's years of TRS contribution for the purpose of denying

plaintiff the enjoyment of all benefits, privileges, terms and conditions of the December 17, 2018 Stipulation & Order.

**278.** As a result of the concealment, plaintiff Maurice Oparaji, Sr. sustained damages, including the denial of the enjoyment of all benefits, privileges, terms and conditions of the December 17, 2018 Stipulation & Order.

**279.** Without plaintiff Maurice Oparaji's consent and knowledge, the Board of Education of the City School District of New York acquiesced in the changing of plaintiff Maurice Oparaji's Membership Account Number from **00T814057** to **00T142296**, without plaintiff Maurice Oparaji's consent and knowledge.

**280.** Plaintiff Maurice Oparaji was denied benefits claims through an administrative process.

**281.** Plaintiff Maurice Oparaji asserts a claim for breach of fiduciary duty under the Teachers' Retirement System of the City of New Pension Plan.

**282.** Teachers' Retirement System of the City of New York contribution Plan is a contribution pension plan.

**283.** Teachers' Retirement System of the City of New York is the contribution Plan Administrator and Claims Administrator.

**284.** The Teachers' Retirement System of the City of New York made affirmative misrepresentations.

**285.** The Teachers' Retirement System of the City of New York failed to adequately inform plaintiff while acting in a fiduciary capacity.

286. Plaintiff Maurice Oparaji detrimentally relied on the misrepresentation of the Teachers' Retirement System of the City of New York.

287. The Defendants' conduct as alleged above constitutes racial discrimination against plaintiff, African-American.

288. Defendants discriminated against plaintiff Maurice Oparaji because he opposed unlawful employment practice.

289. Plaintiff Maurice Oparaji has suffered injuries as a result of the defendants' discriminatory treatment.

290. Defendants failed to take reasonable action to prevent or promptly correct the discriminatory treatment of plaintiff Maurice Oparaji Sr.

## THIRD CAUSE OF ACTION
## (Reprisal for Engaging in Protected Activity)

291. Plaintiff repeats and re-alleges the paragraphs above as if fully stated herein.

292. Teachers' Retirement System of the City of New York and Board of Education of the City School District of New York ("BOE"), failed or refused to comply to comply with the Stipulation and Order.

293. Teachers' Retirement System of the City of New York ("TRS"), and Board of Education of the City School District of New York ("BOE"), refused to comply with the Stipulation between parties.

294. The Board of Education of the City School District of New York, through its passive acquiescence, Teachers' Retirement System of the City of New York wiped

out plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

**295.** Teachers' Retirement System of the City of New York and Board of Education of the City School District of New York issued another TRS Membership Account Number 00T142296, without plaintiff's consent and knowledge.

**296.** Teachers' Retirement System of the City of New York attempted to cover up the nature of the wiping out plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account by removing and hiding the original TRS Membership Account Number 00T814057 and dissuading Sanford R. Rich; Patricia Reilly; and Melanie Whinnery, from further action.

**297.** The Board of Education of the City School District of New York, through its passive acquiescence, Teachers' Retirement System of the City of New York; indeed, cover up the nature of the wiping out plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

**298.** Plaintiff Maurice Oparaji, while he was employed as a regular teacher, contributed 3% of his reportable salary to the pension fund.

**299.** On May 18, 2018, TRS sent a letter (Important Information) with plaintiff's TRS Membership Account Number while employed as a regular teacher TRS Membership Account Number 00T814057.

**300.** On December 17, 2018, TRS sent to plaintiff an Invoice for Pension Contribution with plaintiff's TRS Membership Account Number while employed as a regular teacher TRS Membership Account Number 00T814057.

**301.** Plaintiff Maurice Oparaji paid for the Invoice check number 334, dated 12/23/2021 for $2,575.65, on plaintiff's TRS Membership Account Number while employed as a regular teacher TRS Membership Account Number 00T814057.

**302.** The Board of Education of the City School District of New York failed to comply with the provision of the pension stipulation, the signatories, plaintiff's counsel Joshua S. Sohn, Watson Farley & Williams LLP, attorneys for plaintiffs, including plaintiff Maurice Oparaji, Sr. and the Board of Education of the City School District of New York attorneys and officers; they agreed upon in the Pension Stipulation.

**303.** Defendants dishonored its December 17, 2018 Pension agreement, which stipulated and agreed by the Board of Education of the City School District of New York officers for Defendant Patricia Reilly Executive Director Teachers' Retirement System of the City of New York 55 Water Street New York, NY 10041 Sanford R. Rich Executive Director Board of Education Retirement System of the City of New York 65 Court Street, 16th Floor Brooklyn, NY 11201, Melanie Whinnery Executive Director New York City Employees' Retirement System 335 Adams Street, Suite 2300 Brooklyn, NY II201 and Counsel for Plaintiffs William S. Fraenkel Assistant Corporation Counsel The City of New

York Law, on one side; and plaintiffs' counsels Joshua S. Sohn, Watson Farley & Williams LLP 250 West 55th Street New York, NY 10019, on the other side.

**304.** By virtue of being represented by his counsel, Joshua S. Sohn, Watson Farley & Williams LLP 250 West 55th Street New York, NY 10019, December 17, 2018 pension stipulation signatory, plaintiff Maurice Oparaji, Sr. was, and still is, a party to December 17, 2018 Stipulation & Order.

**305.** Plaintiff Maurice Oparaji, Sr. was unable to enjoy all benefits, privileges, terms and conditions of the December 17, 2018 Stipulation & Order because defendants failed to honor their obligations as contained in the December 17, 2018 Stipulation & Order.

**306.** Teachers' Retirement System of the City of New York acquiesced in this discrimination by failing to maintain service record of plaintiff.

**307.** Teachers' Retirement System of the City of New York acquiesced in this discrimination by failing to maintain service record of plaintiff.

**308.** Defendant, Teachers' Retirement System of the City of New York wiped out plaintiff's years of contribution wiped out plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

**309.** Plaintiff Maurice Oparaji, Sr. contributed 3% of his reportable salary to the pension System of the City of New York.

**310.** The Board of Education of the City School District of New York acquiesced in the wiping out of plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

**311.** Teachers' Retirement System of the City of New York intentionally concealed plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

**312.** Plaintiff was unaware of the Teachers' Retirement System of the City of New York concealment of plaintiff's years of TRS contribution, the concealment was without plaintiff's consent and knowledge.

**313.** Teachers' Retirement System of the City of New York's intention is to defraud plaintiff Maurice Oparaji, Sr.; that is, Teachers' Retirement System of the City of New York concealed plaintiff's years of TRS contribution for the purpose of denying plaintiff the enjoyment of all benefits, privileges, terms and conditions of the December 17, 2018 Stipulation & Order.

**314.** As a result of the concealment, plaintiff Maurice Oparaji, Sr. sustained damages, including the denial of the enjoyment of all benefits, privileges, terms and conditions of the December 17, 2018 Stipulation & Order.

**315.** Without plaintiff Maurice Oparaji's consent and knowledge, the Board of Education of the City School District of New York acquiesced in the changing of plaintiff Maurice Oparaji's Membership Account Number from 00T814057 to 00T142296, without plaintiff Maurice Oparaji's consent and knowledge.

316. Plaintiff Maurice Oparaji was denied benefits claims through an administrative process; plaintiff Maurice Oparaji asserts a claim for breach of fiduciary duty under the Employee Retirement Plan pursuant to December 17, 2018 Pension Stipulation and Order.

317. Plaintiff Maurice Oparaji detrimentally relied on the misrepresentation of the Teachers' Retirement System of the City of New York.

318. The Defendants' conduct as alleged above constitutes retaliation against the Plaintiff because he engaged in activities protected by Title VII. The stated reasons for the Defendants' conduct were not the true reasons, but instead were pretext to hide the Defendants' retaliatory animus.

319. Defendants retaliation against plaintiff Maurice Oparaji because he opposed unlawful employment practice.

**FOURTH CAUSE OF ACTION**
**(Breach of Contract/Stipulation)**

320. Plaintiff repeats and re-alleges the paragraphs above as if fully stated herein.

321. The Defendant's conduct as alleged herein constitutes Breach of Contract/Stipulation.

322. The parties, for valuable consideration, entered into a valid and enforceable Pension Stipulation & Order on December 17, 2018 so ordered by the United States District Judge (the Honorable Kimba M. Wood).

323. A stipulation agreement is indeed a contract between two parties that ensures one or both parties will fulfill certain obligations. This could involve paying a specific

amount of money or providing a particular service. Such agreements are legally binding and can be enforced in court if one party fails to meet their obligations.

**324.** Defendants have willfully and without lawful justification refused to comply with the December 17, 2018 Pension Stipulation & Order.

**325.** Defendants' unlawful conduct has damaged plaintiff in an approximate amount not less than ten million Dollars.

**326.** Plaintiff is a member of Teachers' Retirement System of the City of New York.

**327.** Plaintiff made contributions that was invested by Teachers' Retirement System of the City of New York.

**328.** Teachers' Retirement System of the City of New York is an employee benefit plan administrator.

**329.** Teachers' Retirement System of the City of New York is an employee benefit plan administrator.

**330.** Teachers' Retirement System of the City of New York provides New York City educators with retirement, disability, and death benefits.

**331.** Teachers' Retirement System of the City of New York collects contributions, and make investment of retirement funds.

**332.** Teachers' Retirement System of the City of New York is responsible for disbursement of member benefits, and the delivery of member services.

**333.** Teachers' Retirement System of the City of New York (TRS) manages the retirement benefits for educators in New York City, including, disbursement of Member Benefits, ensuring that retirees receive their pensions and other benefits in a timely manner, and providing support and information to active and retired members.

**334.** The Board of Education of the City School District of New York is responsible for operating the public school program in New York City.

**335.** While Plaintiff was employed as a regular teacher, Plaintiff contributed 3% of his reportable salary to the pension fund, Teachers' Retirement System of the City of New York ("TRS"), and Board of Education of the City School District of New York ("BOE") wiped all Plaintiff contributions, and created another TRS Membership Account Number 00T142296.

**336.** Plaintiff's Membership Account Number while employed as a regular teacher was TRS Membership Account Number 00T814057.

**337.** As a result of Teachers' Retirement System of the City of New York, and the Board of Education of the City School District of New York's acts and conducts, Plaintiff Maurice Oparaji Sr. benefits lost that he is entitled to receive through the December 17, 2018 Pension Stipulation Order.

**338.** As a TRS beneficiary, plaintiff shall recover under TRS Pension Plan which permits an action for appropriate equitable relief for violation and breach of fiduciary duty.

## FIFTH CAUSE OF ACTION
## (Common Law Fraud)

**339.** Plaintiff repeats and re-alleges the paragraphs above as if fully stated herein.

**340.** Plaintiff is a member of Teachers' Retirement System of the City of New York.

**341.** Plaintiff made contributions that was invested by Teachers' Retirement System of the City of New York.

**342.** Teachers' Retirement System of the City of New York is an employee benefit plan administrator.

**343.** Teachers' Retirement System of the City of New York provides New York City educators with retirement, disability, and death benefits.

**344.** Teachers' Retirement System of the City of New York collects contributions, and make investment of retirement funds.

**345.** Teachers' Retirement System of the City of New York is responsible for disbursement of member benefits, and the delivery of member services.

**346.** Teachers' Retirement System of the City of New York (TRS) manages the retirement benefits for educators in New York City, including, disbursement of Member Benefits, ensuring that retirees receive their pensions and other benefits in a timely manner, and providing support and information to active and retired members.

**347.** The Board of Education of the City School District of New York is responsible for operating the public school program in New York City.

**348.** While Plaintiff was employed as a regular teacher, Plaintiff contributed 3% of his reportable salary to the pension fund, Teachers' Retirement System of the City of New York ("TRS"), and Board of Education of the City School District of New York ("BOE") wiped all Plaintiff contributions, and created another TRS Membership Account Number 00T142296.

**349.** Plaintiff's Membership Account Number while employed as a regular teacher was TRS Membership Account Number 00T814057.

**350.** As a result of Teachers' Retirement System of the City of New York, and the Board of Education of the City School District of New York's acts and conducts, Plaintiff Maurice Oparaji Sr. benefits lost that he is entitled to receive through the December 17, 2018 Pension Stipulation Order.

## SIXTH CAUSE OF ACTION
## (Common Law Negligence)

**351.** Plaintiff repeats and re-alleges the paragraphs above as if fully stated herein.

**352.** Plaintiff is a member of Teachers' Retirement System of the City of New York.

**353.** Plaintiff made contributions that was invested by Teachers' Retirement System of the City of New York.

**354.** Teachers' Retirement System of the City of New York is an employee benefit plan administrator.

**355.** Teachers' Retirement System of the City of New York provides New York City educators with retirement, disability, and death benefits.

**356.** Teachers' Retirement System of the City of New York collects contributions, and make investment of retirement funds.

**357.** Teachers' Retirement System of the City of New York is responsible for disbursement of member benefits, and the delivery of member services.

**358.** Teachers' Retirement System of the City of New York (TRS) manages the retirement benefits for educators in New York City, including, disbursement of Member Benefits, ensuring that retirees receive their pensions and other benefits in a timely manner, and providing support and information to active and retired members.

**359.** The Board of Education of the City School District of New York is responsible for operating the public school program in New York City.

**360.** While Plaintiff was employed as a regular teacher, Plaintiff contributed 3% of his reportable salary to the pension fund, Teachers' Retirement System of the City of New York ("TRS"), and Board of Education of the City School District of New York ("BOE") wiped all Plaintiff contributions, and created another TRS Membership Account Number 00T142296.

**361.** Plaintiff's Membership Account Number while employed as a regular teacher was TRS Membership Account Number 00T814057.

**362.** As a result of Teachers' Retirement System of the City of New York, and the Board of Education of the City School District of New York's acts and conducts, Plaintiff Maurice Oparaji Sr. benefits lost that he is entitled to receive through the December 17, 2018 Pension Stipulation Order.

**SEVENTH CAUSE OF ACTION**
**(Fraudulent Concealment)**

**363.** Plaintiff repeats and re-alleges the paragraphs above as if fully stated herein.

**364.** Plaintiff Maurice Oparaji, Sr. was unable to enjoy all benefits, privileges, terms and conditions of the December 17, 2018 Stipulation & Order because defendants failed to honor their obligations as contained in the December 17, 2018 Stipulation & Order.

**365.** The Board of Education of the City School District of New York

**366.** Teachers' Retirement System of the City of New York acquiesced in this discrimination by failing to maintain service record of plaintiff.

**367.** Teachers' Retirement System of the City of New York acquiesced in this discrimination by failing to maintain service record of plaintiff.

**368.** Defendant, Teachers' Retirement System of the City of New York wiped out plaintiff's years of contribution wiped out plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

**369.** Plaintiff Maurice Oparaji, Sr. contributed 3% of his reportable salary to the pension System of the City of New York.

**370.** The Board of Education of the City School District of New York acquiesced in the wiping out of plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

**371.** Teachers' Retirement System of the City of New York intentionally concealed plaintiff's years of TRS contribution, as if plaintiff never contributed to his Pension account.

**372.** Plaintiff was unaware of the Teachers' Retirement System of the City of New York concealment of plaintiff's years of TRS contribution, the concealment was without plaintiff's consent and knowledge.

**373.** Teachers' Retirement System of the City of New York's intention is to defraud plaintiff Maurice Oparaji, Sr.; that is, Teachers' Retirement System of the City of New York concealed plaintiff's years of TRS contribution for the purpose of denying plaintiff the enjoyment of all benefits, privileges, terms and conditions of the December 17, 2018 Stipulation & Order.

**374.** As a result of the concealment, plaintiff Maurice Oparaji, Sr. sustained damages, including the denial of the enjoyment of all benefits, privileges, terms and conditions of the December 17, 2018 Stipulation & Order.

**375.** Without plaintiff Maurice Oparaji's consent and knowledge, the Board of Education of the City School District of New York acquiesced in the changing

of plaintiff Maurice Oparaji's Membership Account Number from **00T814057** to **00T142296**, without plaintiff Maurice Oparaji's consent and knowledge.

## EIGHTH CAUSE OF ACTION
### (New York Common Law – Breach of Fiduciary Duties)

**376.** Plaintiff repeats and re-alleges the paragraphs above as if fully stated herein.

**377.** New York common law imposes on Defendants strict fiduciary duties of loyalty and care. An investment action taken by a fiduciary is inconsistent with these duties if it is based on any consideration other than "the interests of the participants and beneficiaries." Donovan, 680 F.2d at 271; see also City Bank Farmers Tr. Co. v. Cannon, 291 N.Y. 125, 131, 51 N.E.2d 674, 675 (N.Y. 1943) ("The standard of loyalty in trust relations does not permit a trustee to create or to occupy a position in which he has interests to serve other than the interest of the trust estate.").

**378.** Defendants' duty of undivided loyalty thus bars them from "exercising or failing to exercise a power . . . to further some interest of [their] own or a person other than" plan participants and beneficiaries. Mercury Bay Boating Club, 76 N.Y.2d at 283–84 (emphasis omitted) (quoting Restatement (Second) of Trusts § 187); see also Birnbaum, 73 N.Y.2d at 466 ("[The duty of loyalty] is a sensitive and inflexible rule of fidelity, barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary

duty." (quotation marks omitted)). Defendants' duty of care also requires them to make investment decisions consistent with "such diligence and such prudence . . . as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs." In re Bank of N.Y., 35 N.Y.2d at 518–19. The test for whether a trustee has discharged his duty of care is "one of conduct 21 rather than performance" of the fund. In re Bankers Tr. Co., 219 A.D.2d 266, 273, 636 N.Y.S.2d 741, 745 (N.Y. App. Div. 1995).

**379.** Defendants' divestment from fossil fuel-related securities violated their fiduciary duties of loyalty and care to Plaintiffs. The nature of the divestment, as well as the statements made and the course of action taken by Defendants' Trustees in executing their climate change- focused divestment initiatives, demonstrate that Defendants are not "single-mindedly" and "'solely'" acting in the retirement interests of their participants and beneficiaries. Birnbaum, 73 N.Y.2d at 466; In re Heller, 6 N.Y.3d 649, 655, 849 N.E.2d 262, 266 (N.Y. 2006) (quoting Restatement (Second) of Trusts § 170(1)). Instead, Defendants are subordinating those interests to the unrelated policy goals of addressing climate change—in the words of the firefighter fund trustee, the NYCERS, TRS, and BERS funds were "used to make political statements," in actions the police fund trustee recognized were not "for the exclusive purpose of providing benefits," nor "in the best interest of fund beneficiaries."

380. As a result of Defendants' breach of their fiduciary duties, Plaintiff has suffered harm and are suffering ongoing harm, necessitating relief, including monetary damages in an amount to be determined at trial.

381. Plaintiff is informed and believe, and thereon allege, that unless restrained and prohibited by an order of the Court, Defendants will continue to breach fiduciary duties owed to Plaintiff through their ongoing fraudulent acts and conducts. Plaintiff also have no just and adequate remedy at law, and will suffer grave and irreparable harm as a result of Defendants' breaches of fiduciary duties through their ongoing fraudulent actions unless Defendants are enjoined and restrained from this unlawful conduct. Plaintiff is therefore entitled to injunctive relief as set forth herein.

**NINTH CAUSE OF ACTION**
**(New York Retirement Systems Regulations-Breaches of Fiduciary Duties)**

382. Plaintiff repeats and re-alleges the paragraphs above as if fully stated herein.

383. Like New York common law, section 136-1.6 of New York's regulatory standards for actuarially funded public retirement systems imposes on Defendants stringent duties of loyalty and care. See N.Y. Comp. Codes R. & Regs, § 136-1.6.

384. Defendants breached those duties by cleaning/wiping out plaintiff's five years and three months contribution from record and issuing a new contribution number.

385. Plaintiff Maurice Oparaji has suffered injuries as a result of the defendants' discriminatory treatment.

**386.** Defendants failed to take reasonable action to prevent or promptly correct the discriminatory treatment of plaintiff Maurice Oparaji Sr.

**387.** The Board of Education of the City School District of New York facilitated fraudulent wipe out of plaintiff's TRS contribution.

**388.** The Board of Education of the City School District of New York and Teachers' Retirement System of the City of New York deceitfully wiped out plaintiff's five years and three months contribution

**389.** The Board of Education of the City School District of New York and Teachers' Retirement System of the City of New York fraudulently changed plaintiff's TRS contribution number.

**390.** Defendants' scheme was simply catastrophic to the Plans and the participants' retirement plans.

**391.** Teachers' Retirement System of the City of New York, as a fiduciary to the Plans, had a duty to act only solely in the interest of the Plans' participants, perform its duties prudently, and to not engage in dealings of cleaning and wiping out funds prohibited by law.

**392.** Defendants' fraudulent scheme, and Teachers' Retirement System of the City of New York's failure to take any action to protect plaintiff's contributions, is a breach of Teachers' Retirement System of the City of New York's fiduciary duties to plaintiff and other participants in the Plans.

**393.** Teachers' Retirement System of the City of New York is equally responsible and liable for the damages suffered by plaintiff.

**394.** Teachers' Retirement System of the City of New York emptied plaintiff's account and issued another account number, even though Teachers' Retirement System of the City of New York had no authorization or directions from Plaintiff Maurice Oparaji, Sr.

**395.** As a result of Defendants' breach of their fiduciary duties, Plaintiff has suffered harm, and is suffering ongoing injuries, necessitating relief, including monetary damages in an amount to be determined at trial.

**396.** Plaintiff is informed and believe, and thereon allege, that unless restrained and prohibited by an order of the Court, Defendants will continue to breach their fiduciary duties owed to Plaintiff through their ongoing divestment actions. Plaintiff also has no just and adequate remedy at law, and will suffer grave and irreparable harm as a result of Defendants' breaches of fiduciary duties through their ongoing actions unless Defendants are enjoined and restrained from this unlawful conduct. Plaintiff is therefore entitled to injunctive relief as set forth herein

**TENTH CAUSE OF ACTION**
**(N.Y. C.P.L.R. § 3001 – Declaratory Relief)**

**397.** Plaintiff repeats and re-alleges the paragraphs above as if fully stated herein.

**398.** An actual and justiciable controversy has arisen, and now exists, between Plaintiff and Defendants with regard to whether Defendants' cleaning/wiping

out plaintiff's five years and three months contribution from record and issuing another contribution number breaches the fiduciary duties they owe to Plaintiff under New York common law and New York's regulatory standards for actuarially funded public retirement systems.

**399.** Declaratory relief is necessary and appropriate at this time so that the parties can ascertain their respective rights and duties

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

1. Money damages in an amount to be determined at trial;

2. An order requiring Defendants to redress and make Plaintiff whole

3. A declaration that Defendants' cleaning/wiping out plaintiff's five years and three months contribution from record and issuing another contribution number.as described herein violate the fiduciary duties of loyalty and care imposed on Defendants by New York common law and New York's regulatory standards for actuarially funded public retirement systems;

4. Awarding compensatory damages to the complainant to fully compensate him for injuries caused by defendants' discriminatory conduct;

5. Enjoining defendants, their agents, employees, successors, and all persons in active concert or participation with defendants, from engaging in discriminatory and retaliation;

6. Directing defendants to take such affirmative steps as may be necessary to prevent and to remedy discriminatory and retaliation Program;

7. Injunctive or other equitable relief compelling Defendants to desist from their breaches of their fiduciary duties;

8. Granting back and front Pension pay; and

9. Granting such further relief as the Court may deem just, together with costs and disbursements in this action.

DATED: Queens, New York
August 15, 2024

Respectfully Submitted,

MAURICE OPARAJI
245-11 133 Road
Rosedale, NY 11422
(347) 283-6009
mroparaji@yahoo.com

**CERTIFICATION**

I, Maurice Oparaji, certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

DATED: Queens, New York
August 15, 2024

Respectfully Submitted,

Maurice Oparaji

To: H. Keith Belfield
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007
T: (212) 356-8767
E: hbelfiel@law.nyc.gov

**Attachment to the Second Amended Verified Complaint**

1. 520-2024-06548 Charge of Discrimination

2. July 12, 2024 Message Instructing Complainant to Call 888-869-2877. Complainant spoke to K. Simmons

3. Letter Dated December 17, 2021 Instructing Charging Party to pay BMC 2,575.65 in TRS Account 00T814057

4. Cancelled Check Number 334 Paid by Charging Party

5. Letter Dated January 03, 2022 Welcome to TRS and Changing TRS ACCT Number to New No. 00T142296

6. Judgment for Maurice Oparaji, Sr., Dated February 19, 2021

7. Sept. 9, 2021 Settlement and Release Agreement Between Maurice Oparaji, Sr. and BOE

8. December 17, 2018 Stipulation and Order, 52 pages; August 3, 2016 Opinion and Order, 10 pages; and other attachments

9. October 27, 2020 Proposed Findings of Fact and Conclusion of Law for Maurice Oparaji

10. Service Retirement Plans and Benefits for Tiers III and IV Inquiry

11. FEBRUARY 2022 REPORT AND RECOMMENDATION

12. July 22, 2024, Charging Party, Maurice Oparaji, Sr.s Statement of Facts

13. New York City Admin. Code Section 13-173 (a) (3)

Maurice Oparaji
245-11 133 Road
Rosedale, NY 11422
(347) 283-6009
mroparaji@yahoo.com
July 22, 2024

US EEOC
RE: Charge 520-2024-06548

## STATEMENT OF FACTS

1. My name is Maurice Oparaji, Sr. I was a class member in a Title VII class-action filed against BOE in the United States District Court for the Southern District of New York titled Gulino et al v. Board of Education of the City Schools District of City of New York, No. 96 CV 8414 (KMW).
2. I am filing a charge against Teachers' Retirement System of the City of New York ("TRS"), and the Board of Education of the City School District of New York ("BOE") for retaliation under Title VII of Civil Rights Act of 1964.
3. Because I made a charge, testified, assisted, participated in an investigation, proceeding, hearing in a class discrimination action against the Bd. of Educ. of the City Sch. Dist. of N. Y, 96-CV-8414 (KMW), Teachers' Retirement System of the City of New York Teachers' Retirement System of the City of

New York ("TRS"), and Board of Education of the City School District of New York ("BOE"), retaliated against me.

4. First, Retirement System of the City of New York Teachers' Retirement System of the City of New York ("TRS"), and Board of Education of the City School District of New York ("BOE"), failed to comply with the Stipulation and Order So Ordered by the United States District Judge, Kimba M. Wood.
5. Second, Teachers' Retirement System of the City of New York ("TRS"), and Board of Education of the City School District of New York ("BOE"), refused to comply with the Stipulation between parties.
6. Under false pretense, Retirement System of the City of New York Teachers' Retirement System of the City of New York ("TRS"), and Board of Education of the City School District of New York ("BOE") created another TRS Membership Account Number, as if Charging Party never contributed to his Qualified Pension Plan (QPP) account.
7. While Charging Party was employed as a regular teacher, Charging Party contributed 3% of his reportable salary to the pension fund, Teachers' Retirement System of the City of New York ("TRS"), and Board of Education of the City School District of New York ("BOE") wiped all

Charging Party contributions, and created another TRS Membership Account Number 00T142296.

8. Charging Party TRS Membership Account Number while employed as a regular teacher was TRS Membership Account Number 00T814057.
9. Because Charging Party made a charge, testified, assisted, participated in an investigation, proceeding, against the Bd. of Educ. of the City Sch. Dist. of N. Y, 96-CV-8414 (KMW), the TRS retaliated against him by wiping out his contributions and changing Charging Party's Membership Account Number from 00T814057 to 00T142296, without Charging Party's consent and knowledge.
10. Charging Party testified, assisted, participated, and cooperated in the investigation and litigation of Gulino case.
11. Because Charging Party testified, assisted, participated, and cooperated in the investigation and litigation of Gulino case, TRS willfully and blatantly flouted the December 14, 2018 Order of the Court.
12. Similarly, TRS violated December 17, 2018 Stipulation and Order of the Court.
13. Also see the findings and conclusion of Law for Maurice Oparaji.
14. In addition, because Charging Party testified, assisted, participated, and cooperated in the investigation and litigation of Gulino case, TRS violated

the September 9, 2021 the Settlement and Release Agreement entered by parties.

15. Similarly, on December 17, 2021, TRS sent to Charging Party an Invoice for Pension Contribution with Charging Party's original TRS Contribution and Membership Account Number 00T814057. Exhibit G. I paid for the Invoice; a copy of check number 334, dated 12/23/2021 for $2,575.65.

16. Thereafter, on or about Monday January 3, 2022, at 55 Water Street, City of New York, County of New York, City and State of New York, TRS Teachers Retirement System of the City of New York and Board of Education of the City School District of New York, conspired to siphon Charging Party's TRS Contribution and under false pretense, created another TRS Membership Account Number 00T142296.

17. On June 18, 2024, I tried logging in to: trsnyc.org/ASPENMemberPro/account/OnlineAccountAccess/5106 to no avail.

18. On July 12, 2024, I tried logging again, but I was instructed to call TRS Member Service at 1-888-869-2877. I called and spoke to Ms. K. Simmons who told me that my TRS Membership has been cancelled; hence, Charging Party cannot login.

Sincerely,

Maurice Oparaji

Charging Party, Maurice Oparaji, Sr.

# Exhibit B

---

ELSA GULINO, MAYLING RALPH, PETER WILDS, and NIA GREENE, on behalf of themselves and all others similarly situated,

*Plaintiffs*,

v.

THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,

*Defendant*.

---

96 CIV. 8414

**REPORT AND RECOMMENDATION**

TO THE HONORABLE KIMBA M. WOOD, United States District Court Judge.

John S. Siffert, SPECIAL MASTER

For the reasons stated below, I recommend that the Court so order the attached proposed Pension Stipulation & Order.

## I. Background

The facts of this case are set forth fully in previous opinions by the District Court over the course of this litigation. *See, e.g.*, *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.* (*Gulino I*), 201 F.R.D. 326 (S.D.N.Y. 2001) (Motley, J.); *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.* (*Gulino V*), 907 F. Supp. 2d 492 (S.D.N.Y. 2012) (Wood, J.). I recite only those facts relevant to this Report and Recommendation.

From 1994 to 2014, the Board of Education of the City School District of New York ("Defendant" or "BOE") required permanent teachers to pass various iterations of the Liberal

Arts and Sciences Test ("LAST") as a condition of employment, even though the tests were not properly validated and had a disparate impact on African-American and Latino teachers. Plaintiffs represent a class of approximately 4,500 African-American and Latino teachers who lost or were denied permanent teacher positions as a result of this discriminatory policy. In 2012, the District Court found that Defendant's use of the LAST violated Title VII, and in 2013, it certified a remedy-phase class. Since then, the Court enjoined Defendant from using the test to make hiring decisions and has ordered that certain class members be deemed certified for the purposes of BOE hiring decisions.

The Court has ordered that class members are entitled to pension damages to compensate them for pension benefits that they would have received absent the discrimination for which Defendant has been found liable. *See Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, No. 96-cv-8414 (KMW), 2016 WL 4129111, at *3 (S.D.N.Y. Aug. 3, 2016) ("[T]he parties agree that class members are entitled to the lost pensions they would have received absent the discriminatory LAST.").

The Court appointed me Special Master to oversee the two-stage remedial phase that it outlined in its Certification Order. That Order directed that the first stage address "classwide issues, including calculation of backpay, pension benefits, and seniority" and that the second stage address "individual issues, including mitigation and the amount of backpay to which each claimant is entitled." *See Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.* (*Gulino VI*), No. 96-cv-8414, 2013 WL 4647190, at *6 (S.D.N.Y. Aug. 29, 2013) (Wood, J.). In accordance with my Order of Appointment (*see* May 20, 2014 Order of Appointment, [ECF No. 435]; November 12, 2014 Second Amended Order of Appointment, [ECF No. 524]), I submitted Interim Reports and Recommendations which the Court has adopted. (*See* IRR dated

October 24, 2014, [ECF No. 516], Order, [ECF No. 536]; IRR dated July 17, 2015, [ECF No. 678], Opinion & Order, [ECF No. 674]; IRR dated June 13, 2016, [ECF No. 777], Order, [ECF No. 800]).

## II. Agreement by the Parties

The Pension Stipulation & Order was drafted by the parties in consultation with me. It is the culmination of many months of effort to deal with complex and arcane factual and legal issues. In particular, the efforts of Bryan Berge, Senior Counsel at the New York City Law Department, should be credited with engaging the three New York City retirement systems to achieve a fair solution to what initially appeared to be an intractable problem. Plaintiffs' counsel, especially Robert A. Mantel, also deserve special mention for completing the Pension Stipulation & Order.

The New York City Teachers' Retirement System ("TRS"), the Board of Education Retirement System ("BERS"), and the New York City Employee Retirement System ("NYCERS")—public pension systems in which a portion of the plaintiff class are current or retired members—consent to those protocols and procedures detailed in the Pension Stipulation & Order.[1]

The parties agree to waive the timeframe and procedure in the Second Amended Order of Appointment [ECF No. 524] for submission of their objections, as they agree the objections they previously set forth should be deemed submitted to the Court.

---

[1] TRS, BERS, and NYCERS are non-parties that have consented to the terms that pertain to them and for which consent has not been expressly withheld. TRS, BERS, and NYCERS have consented to these terms solely for the purpose of effectively administering the pension relief due to class members. TRS, BERS, and NYCERS were not parties to the discrimination for which the BOE has been found liable and take no position on the litigation.

## III. Conclusion

For the foregoing reasons and for the reasons contained in the record, I recommend that the Court adopt the Pension Stipulation & Order.

Special Master

Dated: New York, New York
September 7, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELSA GULINO, MAYLING RALPH, PETER WILDS, and NIA GREENE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,<br><br>Defendant. | 96 Civ. 8414 (KMW)<br><br>**[PROPOSED] STIPULATION AND ORDER** |

**WHEREAS:**

1. The Court in this Title VII class action has ordered that class members are entitled to pension damages to compensate them for pension benefits that they would have received absent the discrimination for which the Defendant Board of Education of the City School District of the City of New York ("BOE") has been found liable.[1] To facilitate the provision of these damages and benefits, the signatories agree to the following protocols and procedures. By agreeing to this Stipulation & Order, however, the BOE and Plaintiffs do not waive any other objections they have made to date in this action, or any rights related to those objections.

2. The New York City Teachers' Retirement System ("TRS"), the Board of Education Retirement System ("BERS"), and the New York City Employee Retirement System

[1] *See Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, No. 96-CV-8414 (KMW), 2016 WL 4129111, at *3 (S.D.N.Y. Aug. 3, 2016) ("[T]he parties agree that class members are entitled to the lost pensions they would have received absent the discriminatory LAST.").

("NYCERS")—public pension systems in which a portion of the plaintiff class are current or retired members—consent to those protocols and procedures detailed below that pertain to them.[2]

3. The pension relief a class member is entitled to receive as a result of this case derives from the service history he or she would have accrued and the salary he or she would have earned absent BOE discrimination (the "counterfactual" service and salary history), as determined by the parties' damages experts and found by the Court, as detailed in the class member's individual judgment award.

4. As described below, regularly appointed BOE Teachers who are members of TRS pursuant to Article 15 of the Retirement and Social Security Law ("RSSL"): (1) make contributions to, and accrue benefits from, the TRS Qualified Pension Plan ("QPP"); (2) select, or are mandated to join, supplementary early-retirement plans, depending on membership date; (3) select beneficiaries for certain benefits; and (4) upon retirement, select a retirement-payment option. Due to the BOE's discrimination, certain class members were denied the opportunity to accrue these benefits or make these selections, including class members who have passed away without having made selections.

Employee and Employer Contributions to TRS

5. BOE employees who join TRS are required to make certain employee contributions to TRS QPP accounts.

---

[2] TRS, BERS, and NYCERS are non-parties that have consented to the terms of this Stipulation & Order that pertain to them and for which consent has not been expressly withheld. TRS, BERS, and NYCERS have consented to these terms solely for the purpose of effectively administering the pension relief due to class members. TRS, BERS, and NYCERS were not parties to the discrimination for which the BOE has been found liable and take no position on the litigation.

a. BOE employees who joined TRS after August 31, 1983, but prior to April 1, 2012, are Tier IV members and contribute, generally on a pre-tax basis,[3] 3% of their BOE annual wages to TRS for the first ten (10) years of their credited service. Eligible Tier IV TRS members who opted into, or were mandated to enter, supplementary early-retirement plans make additional member contributions ("AMC"s) above this 3% contribution amount.

b. BOE employees who became TRS members on or after April 1, 2012, without prior public service entitling them to Tier IV membership, are Tier VI members and contribute between 3% and 6% of annual wages to their QPP accounts, depending on the amount of their wages, for the entirety of their credited service with TRS. Tier VI TRS members are not eligible for any supplementary early-retirement plans.[4]

6. In addition, the BOE makes actuarially determined contributions to TRS to fund the pension benefits that TRS members employed by the BOE accrue pursuant to the RSSL and other applicable law.

7. Class members who were unable to join TRS due to the BOE's discrimination will not have made any employee contributions to TRS.

8. Class members who were able to join TRS, and made employee contributions to their QPP accounts during their counterfactual service period, may have made contributions for fewer years and based on lower BOE salaries than would have been the case absent BOE discrimination. Consequently, when a class member's TRS QPP account is adjusted to reflect

[3] These contributions are pre-tax with respect to federal income taxes, but post-tax with respect to New York state and local income taxes. Wherever the phrases "pre-tax" or "post-tax" appear in this Stipulation & Order, they refer solely to the tax treatment of contributions under federal tax law.

[4] TRS members who do not participate in a supplementary early-retirement plan are referred to herein as "basic" members of Tier IV or Tier VI, and the contributions made and benefits received by these members are likewise referred to as "basic."

counterfactual-service-and-salary history, pursuant to the procedures set forth herein, there may be a deficit in historical employee contributions.

9. Class members who were able to join TRS during their counterfactual service period and made contributions to their QPP account during that period may have joined TRS as Tier VI members when they would have been Tier IV members absent BOE discrimination. As Tier VI members, these class members may have made contributions to TRS at rates that exceed Tier IV rates, and if these class members are reclassified as Tier IV members, there may be a surplus in employee contributions in their accounts.

Employee and Employer Contributions to Other Affected Retirement Systems

10. A number of class members, after suffering from BOE discrimination, obtained or maintained employment in positions that permitted or required participation in NYCERS or BERS. The protocol and procedures laid out in this Stipulation & Order afford these class members relief for the pension benefits they were denied, if any, due to BOE discrimination while allowing these class members to remain NYCERS or BERS members.

11. Members of NYCERS or BERS are required, upon joining, to make employee contributions to their pension accounts.[5] Specifically, all NYCERS or BERS members who joined the system on or after August 31, 1983, but prior to April 1, 2012, and are subject to Article 15 of the RSSL are Tier IV members and contribute, generally on a pre-tax basis, 3% of their annual wages to their retirement system for the first ten (10) years of their credited service. Under the RSSL, and to the extent these Tier IV NYCERS and BERS members do not participate in any

[5] New York City Police officers and firefighters are required to join, respectively, the New York City Police Pension Fund and the New York City Fire Department Pension Fund. To the extent class members participate in these funds and are eligible to receive a pension remedy pursuant to this Stipulation & Order, these pensions shall constitute "Outside Pensions," as that term is defined in Paragraph 43 of this Stipulation & Order, and the remedy available to these class members is set forth in Paragraph 61 of this Stipulation & Order.

supplementary early-retirement plan, as described below, the service-retirement benefits these members receive are identical to those of basic TRS Tier IV members.

12. All NYCERS or BERS members who joined the system on or after April 1, 2012, without prior public service entitling them to Tier IV membership, and who are subject to Article 15 of the RSSL, are Tier VI members and contribute between 3% and 6% of annual wages to their member accounts, depending on the amount of their wages, for the entirety of their credited service with the system. Under the RSSL, and to the extent these Tier VI NYCERS and BERS members do not participate in any supplementary early-retirement plan, as described below, the pension benefits these members receive are identical to those of basic TRS Tier VI members.[6]

13. As described below, eligible Tier IV and Tier VI members of NYCERS or BERS who opted into, or were mandated to enter, supplementary early-retirement plans make AMCs in addition to their basic employee contributions. The structure of some of these supplementary early-retirement plans, as set forth in the RSSL and described in Paragraph 27 of this Stipulation & Order, closely resembles that of the supplementary early-retirement plans available in TRS.[7]

14. Class members who were unable to join TRS due to BOE discrimination, but were able to secure positions resulting in membership in NYCERS or BERS may have made contributions, including AMCs, to NYCERS or BERS for fewer years and based on lower salaries than would have been the case absent BOE discrimination. Consequently, when these class members' accounts at their retirement system are adjusted to reflect counterfactual-service-and-salary history, pursuant to the procedures set forth herein, there may be a deficit in historical

---

[6] BERS and NYCERS members who do not participate in a supplementary early-retirement plan are referred to herein as "basic" members of BERS and NYCERS Tier IV or Tier VI plans, and the contributions made and benefits received by these members are likewise referred to as "basic."

[7] Certain other supplementary early-retirement plans administered by NYCERS and BERS do not closely resemble those available in TRS. These plans are described in Footnote 9 *infra*.

employee contributions. The deficit in historical AMCs may include amounts that these class members would not have paid as TRS members during the counterfactual service history, but that would have been required under the relevant NYCERS or BERS plans during that period of time if class members' counterfactual service is deemed to have been rendered in the positions that are the basis for their membership in NYCERS or BERS.

15. Class members who were able to join BERS or NYCERS during their counterfactual service period and made contributions to their member accounts during that period may have joined NYCERS or BERS as Tier VI members when they would have been Tier IV members absent BOE discrimination. As Tier VI members, they may have made contributions to NYCERS or BERS at rates that exceed Tier IV rates, and if these class members are reclassified as Tier IV members there may be a surplus in employee contributions in their accounts.

Interest Accrued on Employee Contributions

16. Ordinarily, when an account of a member of TRS, BERS, or NYCERS (collectively, the "Affected Systems") is adjusted to reflect additional past credited service, the member must pay employee contributions, including AMCs, attributable to that service, as well as interest on these delayed contributions. By law, interest on delayed employee contributions accrues at five percent (5%) per annum, compounded annually.

17. Because class members were either unable to participate in TRS or accrued reduced pension benefits due to BOE discrimination, when their Affected System accounts are created or adjusted to reflect counterfactual service and salary history, there will be statutory interest charges on the class members' delayed contributions that would not exist had the class members secured TRS-mandated positions with the BOE on their counterfactual appointment dates absent discrimination.

Tax Adjustment for Employee Contributions

18. As noted above, employee contributions to the Affected Systems that are attributable to ongoing employment are generally made pre-tax out of employees' paychecks in the normal course. Under the pension-relief structure described herein, however, class members will receive backpay awards from Defendant without historical-employee-pension contributions having been withheld and paid to TRS on a pre-tax basis. Class members who receive a pension remedy through one of the Affected Systems will then be required to pay employee contributions to the Affected System attributable to counterfactual service and salary out of their backpay awards. The employee contributions, having been paid to class members in backpay awards, will be taxed as ordinary income. Consequently, as a result of BOE discrimination, these class members will make contributions to the Affected Systems on a post-tax, rather than pre-tax, basis.

Supplementary Early-Retirement Plans in the Affected Systems

19. On February 27, 2008, Chapter 19 of the Laws of 2008 ("Chapter 19") amended the RSSL and the New York City Administrative Code to establish supplementary early-retirement programs to permit regularly appointed BOE teachers to retire prior to age 62.

20. Regularly appointed BOE teachers who were either: (a) in active service as of February 27, 2008; or (b) not in active service on February 27, 2008, but were entitled to a deferred vested benefit[8] based upon service rendered prior to that date and who returned to active service, were entitled to opt in to the "55/25 Plan." Under the 55/25 Plan, eligible TRS members who opted in to the program and paid AMCs, as set forth in the RSSL, could retire at age 55 if they have 25 or

[8] "Deferred vested" members of an Affected System are members not in active service, who have vested benefits, based upon credited service, and who will be eligible to receive a pension at normal retirement age. *See* RSSL § 612.

more years of credited service and would receive the same benefit as a basic Tier IV member retiring with the same amount of credited service at age 62.

21. Under Chapter 19, TRS members eligible to opt in to the 55/25 Plan had 180 days from the date of enactment to opt in to the 55/25 Plan (the "Enrollment Period"). Eligible members who did not elect to join the 55/25 Plan remained in the basic Tier IV plan, under which individuals could retire at age 62 provided that they had rendered at least 5 years of credited service, or at age 55 provided they had 30 or more years of credited service, without any reduction in benefits.

22. Regularly appointed BOE teachers who became members of TRS after February 27, 2008 and who had previously been members of a public retirement system of the State of New York prior to the enactment of Chapter 19, but were not eligible to receive a deferred vested benefit as a result of their service, were eligible to opt in to the "55/27 Plan." Under the 55/27 Plan, eligible TRS members who opted in to the program, and paid AMCs as provided in the RSSL, could retire at age 55 if they have 27 or more years of credited service and would receive the same benefit as a basic Tier IV member retiring with the same amount of credited service at age 62.

23. Under Chapter 19, regularly appointed BOE teachers eligible to opt in to the 55/27 Plan had 180 days from the date of returning to active service to opt in to the 55/27 Plan. Eligible members who did not elect to join the 55/27 Plan remained in the basic Tier IV plan.

24. Regularly appointed BOE teachers who joined TRS after February 27, 2008, but prior to April 1, 2012, and who had not previously been members of a public retirement system of the State of New York prior to the enactment of Chapter 19 were automatically enrolled into the 55/27 plan and were required to contribute AMCs as provided in the RSSL.

25. Many class members who would have been regularly appointed BOE teachers during the Enrollment Period absent the BOE's discrimination were either denied the opportunity

to enroll in the 55/25 or 55/27 Plans or made an election under circumstances that would not have existed absent the discrimination.

26. BERS administers 55/25 and 55/27 plans for certain BERS-eligible positions. Under the RSSL, these BERS 55/25 and 55/27 plans are substantially identical to the TRS 55/25 and 55/27 Plans.

27. NYCERS and BERS also administer similar supplementary early-retirement plans pursuant to Chapter 96 of the Laws of 1995 and other laws. In general, the statutory structure of these plans closely resembles that of the 55/25 and 55/27 Plans, insofar as members in an affected position upon the enactment of these plans were permitted to join these plans or remain basic Tier IV members if they declined to join these plans; members in affected positions who joined after the enactment date of the supplementary early-retirement plans were mandated to participate in these plans; and the plans provide that members must pay AMCs in exchange for the ability to retire prior to the standard Tier IV retirement age of 62 without any reduction in benefits, provided that specified age and service-credit requirements are met.[9] Hereinafter, these similar NYCERS and

[9] NYCERS and BERS also administer certain special plans—for sanitation workers, special officers, emergency medical technicians, and employees in certain designated "physically taxing" titles, for example—that require as a condition of the retirement benefit that the member render a specified period of service *in that specific title* and/or provide benefits that do not derive from the generally applicable Tier IV/VI benefit formula, and are therefore not comparable to the 55/27 and 55/25 Plans. To the extent class members participate in these special plans and are eligible to receive a pension remedy pursuant to this Stipulation & Order, such pensions shall constitute "Outside Pensions," as that term is defined in Paragraph 43 of this Stipulation & Order, and the remedy available to these class members is set forth in Paragraph 61 of this Stipulation & Order. NYCERS and BERS also administer similar special plans with respect to Tier VI members in particular titles and these plans likewise constitute "Outside Pensions" for purposes of this Stipulation & Order. In addition, certain claimants who are members of NYCERS or BERS may, by virtue of credited service in multiple positions and multiple retirement plans administered by their retirement system, be eligible for pensions consisting of a combination of benefits calculated under two or more such retirement plans. These multiple-benefit pensions also constitute "Outside Pensions" for purposes of this Stipulation & Order.

BERS supplementary early-retirement plans, along with the basic Tier IV and Tier VI NYCERS and BERS plans and the BERS 55/25 and 55/27 plans, are referred to as "Comparable Plans."[10]

Back-Pension Damages

28. Certain class members who were either never able to participate in TRS due to BOE discrimination, or whose credited service and final average salary, for purposes of the pensions they receive from an Affected System, are lower than they would have been absent BOE discrimination, have retired prior to entry of their individual judgments at or after reaching the normal retirement age required for retirement from an Affected System, or have reached such age since retiring.[11] Since retiring, these class members have either received no pension benefits or received lower monthly pension payments from an Affected System than they would have received based on their counterfactual-service-and-salary histories (the "Back-Pension Damages").

Death Benefits in the Affected Systems

29. When a member of an Affected System dies, either in active service; after separation from service, but before retirement; or following retirement, that member's estate, or beneficiaries

---

[10] As noted above, certain of the supplementary early-retirement plans available to Tier IV NYCERS and BERS members that constitute Comparable Plans are available to Tier VI members occupying the titles encompassed by the plan. *See*, e.g., RSSL § 604-g (concerning automotive workers). These Tier VI members pay the same AMCs as Tier IV participants in the supplementary early-retirement plan, but are otherwise subject to benefits alterations applicable to Tier VI members, such as changes in vesting periods, final average salary, and basic member contribution rates. These Tier VI supplementary early-retirement plans also constitute "Comparable Plans."

[11] The phrase "normal retirement age" refers to the age at which a member of TRS or an Affected System becomes eligible to retire and receive benefits on the basis of the age and service requirements of the retirement plan in which the member participates. For example, class members who are entitled to basic Tier IV benefits, the phrase "normal retirement age" refers to age 62, with at least five years of credited service. For class members who are entitled to basic Tier VI benefits, "normal retirement age" refers to age 63, with at least ten years of credited service. For class members who are entitled to benefits under the 55/25 Plan, "normal retirement age" refers to age 55, with at least 25 years of credited service. For class members who are entitled to benefits under the 55/27 Plan, "normal retirement age" refers to age 55, with at least 27 years of credited service. For members who have not satisfied these service requirements upon attaining the corresponding age requirements, "normal retirement age" refers to the age when the member will meet the applicable service requirement. With respect to disability retirees, as addressed in Paragraphs 39 and 60 below, "normal retirement age" refers to the date the member was retired for disability.

previously designated by the member, may be eligible to receive a lump-sum death benefit, as determined by law. For retired members, the death benefit also includes any portion of pension payments that may be payable for the month in which the member died (the "Fractional" benefit).

30. Members of an Affected System may designate one or more beneficiaries for the death benefit at any time.[12] If a member fails to designate a beneficiary for the death benefit or if all designated beneficiaries predecease the member, the benefit will be paid to the member's estate upon the member's death.

31. As noted above, certain class members who were denied the opportunity to participate in TRS have passed away. These class members' estates, or other potential beneficiaries, did not, therefore, receive the death benefit to which they would have been entitled absent BOE discrimination.

32. Certain other class members were able to become TRS members, or were able to attain positions that allowed them to become members of NYCERS or BERS, and then passed away either while in active service; after separation from service, but before retirement; or after retirement. These class members' designated beneficiaries, or the class members' estates if no beneficiaries had been designated, may have received lower death-benefit payments than they would have received absent the BOE's discrimination.

<u>Election of a Retirement Payment Option at Retirement</u>

33. Members of an Affected System generally file a retirement-application form to notify their system of their intent to retire and receive benefits. On this form, a member selects how the member's monthly pension payments will be distributed (the "Retirement Payment Option").

[12] NYCERS does not permit a member to designate a beneficiary for the portion of pension payments payable for the month in which a member dies. Such payments pass to the member's estate.

34. Members have a number of choices regarding the Retirement Payment Option. A member could elect one of the following:

a. The maximum monthly pension payments for the rest of his or her life, with no survivor benefits (the "Maximum Option");

b. Reduced monthly payments for the rest of his or her life, followed by ongoing payments for the life of a designated beneficiary after the member's death, provided the beneficiary is living at the time of the member's death (a "Joint and Survivor Option"). Members are permitted to designate a single beneficiary for a Joint and Survivor Option. If that beneficiary predeceases the member, there is no continuing payment after the member's death.[13]

c. Reduced monthly payments for the rest of his or her life, followed by a set number of monthly payments to one or more beneficiaries—in an amount necessary to guarantee either 60 or 120 total monthly payments to the member and all beneficiaries—in the event the member dies before 60 or 120 monthly payments are made (a "5/10 Year Certain Option"). Members who select a 5/10 Year Certain Option may name one or more primary beneficiaries and one or more contingent beneficiaries.[14] If the member dies before receiving the guaranteed number of monthly payments, the primary beneficiaries receive the remaining monthly payments in the proportion dictated by the member. If both the member and all primary beneficiaries die before receiving the specified number of monthly

[13] For this reason, there also exists a "pop-up" Joint and Survivor Option, whereby the member can revert to the maximum retirement allowance in the event the designated beneficiary predeceases the member.

[14] BERS does not permit a member who selects a 5/10 Year Certain Option to name multiple primary beneficiaries; BERS does permit these members to name multiple contingent beneficiaries.

payments, the contingent beneficiaries receive the remaining payments as a lump sum in the proportion dictated by the member.

35. Members may change their Retirement Payment Option within thirty (30) days after the date of payability of their retirement allowances (*i.e.*, the date members begin receiving monthly pension benefit payments). After those thirty days have passed, retired members of an Affected System may not alter their Retirement Payment Option.

36. Members of TRS, prior to selecting their Retirement Payment Option, are generally able to access a "calculator" through TRS's website that estimates the monthly payments a member, and/or that member's designated beneficiary, would receive under the different Retirement Payment Options described above in Paragraph 34 (the "Retirement Allowance Calculator"). This Retirement Allowance Calculator is not publicly available; only TRS members can access it by logging into their online accounts.[15]

37. A number of class members who were denied the opportunity to participate in an Affected System have already retired after reaching the normal retirement age required for retirement from that Affected System, or have reached normal retirement age since retiring. Other class members who were denied the opportunity to participate in an Affected System will retire at the normal retirement age prior to receiving a final judgment in this case. Some class members who were denied the opportunity to participate in an Affected System have retired after reaching the normal retirement age, and have since passed away. The class members described in this paragraph were denied the opportunity to elect a Retirement Payment Option for the pension benefits they would have received absent BOE discrimination.

---

[15] This estimate is not binding or determinative of the final calculation of the cost of any such option. That calculation is performed by the New York City Office of the Actuary.

38. Other class members may have participated in an Affected System and already retired, and elected a Retirement Payment Option upon their retirement. These class members' pension benefits, however, may not reflect the service-and-salary history they would have achieved absent the BOE's discrimination. Had their pension benefits been greater, these class members may have made different decisions regarding their election of a Retirement Payment Option.

Disability Pensions

39. Members of an Affected System who have at least 10 years of credited service and incur an alleged disability[16] are eligible to apply for ordinary disability-retirement benefits, as set forth in RSSL § 605(b)(1). In addition, a member of an Affected System, regardless of length of service, who alleges that his or her alleged disability was the result of an "accident"—as that term appears in the RSSL and is interpreted in case law—that occurred in the course of his or her employment with the City of New York or the BOE, is eligible to apply for accident-disability-retirement benefits provided by RSSL § 605. Class members who, due to BOE discrimination, were unable to obtain TRS-eligible positions or were delayed in participating in an Affected System, and who left the workforce by reason of a disability, may not have been eligible to apply for these disability-retirement benefits.

Pension Mitigation

40. Certain class members who were either denied the opportunity to participate in TRS, or whose TRS membership was delayed by the BOE's discrimination, were able to participate in other defined-benefit pension systems during some or all of their counterfactual service history.

[16] As used herein, the phrase "disability" refers to a condition or impairment of sufficient severity to entitle a member of an Affected System to disability retirement under the RSSL or New York City Administrative Code.

41. As a matter of equity, any defined-benefit pension a class member accrued during his or her counterfactual service history, whether with TRS or any other pension system, serves to mitigate the counterfactual pension the class member would have accrued in TRS absent BOE discrimination.

42. With respect to a pension accrued in TRS or in a Comparable Plan during a class member's counterfactual service history, mitigation is most equitably achieved by incorporating the class member's counterfactual service-and-salary history into the class member's existing pension account at the Affected System, and combining the counterfactual service-and-salary history with the existing service, salary, and contribution history of the class member to yield a single, unified pension account. For periods in which there are both counterfactual and actual service histories, the higher of the counterfactual or actual salary histories would remain.

43. With respect to any other defined-benefit pension accrued during a class member's counterfactual service history (collectively, "Outside Pensions"), including any hybrid pension plan that includes a defined-benefit component, the parties agree that these pensions can be appropriately valued on an actuarial basis for purposes of this Stipulation & Order.

44. The parties agree that employer-sponsored defined-contribution plans that provide for pre-tax employer contributions not includable in the class member's taxable income, such as employer-matching 401(k) plans, do not qualify as "Outside Pensions" for the purposes of this Stipulation & Order.

**IT IS HEREBY ORDERED THAT**: Based on the Special Master's recommendation,

45. The BOE will provide, for each class member who is contemplated to receive a benefit pursuant to this Stipulation & Order, counterfactual service-and-salary information in accordance with the class member's individual judgment award such as is necessary for the

Affected System to determine the pension benefits the class member would have received absent BOE discrimination. The BOE will provide this counterfactual service and salary information to each Affected System or, with respect to class members receiving relief pursuant to Paragraphs 59 and 61 of this Stipulation & Order, to the New York City Office of the Actuary ("NYCOA"). This information will be transmitted by the BOE for each class member as soon as practical following the Court's entry of each class member's individual judgment, in a manner and scope agreed upon by the BOE and the Affected System or NYCOA. For class members receiving relief pursuant to Paragraph 61 of this Stipulation & Order, TRS, NYCERS, and BERS will also provide the NYCOA with any existing pension-account data concerning the class members' non-counterfactual service. When the information described in this paragraph is transmitted to the Affected System or NYCOA, the BOE will also produce this information to Plaintiffs' counsel.

46. For each class member who participates in an Outside Pension that is not administered by a New York City retirement system, Plaintiffs' counsel will provide all necessary documents related to the class member's Outside Pension account to Risk & Regulatory Consulting ("RRC"), the Court-appointed retirement-pension valuation expert.

47. **Pension Relief Optional**. Class members may opt out of the pension relief described in this Stipulation & Order. If a class member fails to make timely payments and elections contemplated by the remaining paragraphs of this Stipulation & Order, or show good cause—as determined by the Special Master on the basis of evidence presented in an individual hearing[17]—

---

[17] "Good cause," as used in, or required by, this Stipulation & Order, is automatically established without the necessity of a hearing before the Special Master if a class member has not yet received his or her backpay award from the BOE before the date an Affected System mails the class member notice of his or her deficit in required employee contributions pursuant to Paragraph 49 of this Stipulation & Order below. In these cases, Plaintiffs shall notify the Affected System that the 90-day deadline set forth in Paragraph 49 shall be tolled until the date upon which the class member receives his or her backpay award. When the class member receives that award, Plaintiffs will notify the Affected System accordingly.

for having failed to do so, the class member will be deemed to have opted out of the pension relief described herein. Alternatively, at any time prior to the deadline by which a class member must pay employee contributions pursuant to this Stipulation & Order, class members, through Plaintiffs' counsel, may affirmatively notify BOE counsel, in a method agreed upon by the parties, of their intent to opt out of the pension relief described herein.

48. **Tier Reinstatement.**

a. To the extent class members currently participate in TRS as Tier VI members, but would have been Tier IV members on the basis of an earlier membership date established by their counterfactual-service history, TRS will automatically reclassify these members as Tier IV members as soon as practicable after entry of each class member's individual judgment, and will adjust the class members' contribution rates accordingly.

b. To the extent class members currently participate as Tier VI members in a Comparable Plan with NYCERS or BERS, but would have been Tier IV members on the basis of an earlier membership date established by their counterfactual service history, and want to be reclassified as Tier IV members, they must submit a tier-reinstatement form following the entry of their individual judgments, and NYCERS or BERS will adjust the class members' contribution rates following receipt and approval of that form.

49. **Employee Contributions**. Subject to Paragraphs 50 and 57 of this Stipulation & Order, each class member who elects to receive pension relief pursuant to this Stipulation & Order will be required to make all employee contributions, including AMCs, he or she would have made to the Affected System during his or her counterfactual service history, and will receive the pension relief described herein only if all required contributions are made, or if the amounts of those contributions are otherwise credited to the class member's account through the operation of this

Stipulation & Order.[18] Class members will only be eligible to receive credited service for, and will only pay employee contributions on, counterfactual-service-and-salary that is creditable by law.[19] Each class member who receives pension relief pursuant to this Stipulation & Order will receive a membership date in his or her Affected System that corresponds to the earliest date of such creditable counterfactual service, provided this date precedes any existing membership date with respect to the class member.

a. With respect to class members who did not obtain mitigating pensions, TRS will compute the employee contributions attributable to the counterfactual service period that each class member owes as soon as practical following receipt of the necessary information for those calculations from the BOE pursuant to this Stipulation & Order. Once the amount is computed, TRS will send notice to the class members of the amount due and instructions for payment of the amount.[20] Class members will then pay the employee contributions directly to TRS within ninety (90) days of TRS mailing the notice.

b. With respect to class members who are current members of TRS or a Comparable Plan and will remain in the positions that rendered them eligible for

[18] Contributions can be "otherwise credited" to a class members account only as follows: To the extent any class member has a surplus in any member account at an Affected System as a result of this Stipulation & Order or otherwise, that surplus, whether deriving from an account for basic member contributions or AMCs, will be deemed available to satisfy any deficit in any other account resulting from this Stipulation & Order, if the Affected System, in its sole discretion, determines that it is administratively feasible to do so. Any class member that withdrew funds from an Affected System prior to the counterfactual service period must return all withdrawn funds to the Affected System to receive service credit for that time.

[19] For example, if a class member's counterfactual-service-and-salary history reflects a period of unpaid leave, that period of unpaid leave will not be creditable in an Affected System, just as periods of unpaid leave are not creditable in those systems in the normal course.

[20] Prior to the date the BOE transmits counterfactual-service-and-salary information to the Affected Systems pursuant to this Stipulation & Order, Plaintiffs' counsel must provide the Affected Systems with current address information for any class member that will receive correspondence from an Affected System, as well as the class member's date of judgment. Plaintiffs' counsel will promptly inform the Affected Systems of any changes to an address previously provided.

participation; class members who are deferred vested or retired members of TRS or a Comparable Plan; and deceased class members who were members of TRS or a Comparable Plan, the Affected System will compute the employee contributions attributable to the counterfactual-service period that each class member owes in excess of those already paid, if any, as soon as practical following receipt of the necessary information for those calculations from the BOE pursuant to this Stipulation & Order. Pursuant to the Special Master's ruling, class members who participate in comparable plans with NYCERS or BERS, and who wish to receive credit for their counterfactual service in these systems, will be responsible for additional AMCs they would not have paid as TRS members during their counterfactual service history, but that were required by the relevant NYCERS or BERS plans during that period of time. Once the deficit in employee contributions is computed, the Affected System will provide written notice to these class members of the amount due and instructions for payment of the amount. These class members will then pay the amount to the Affected System within ninety (90) days of the Affected System mailing the notice. For purposes of these computations, the counterfactual service rendered by the class member will be deemed to be service in the position that rendered the class member eligible to participate in the Affected System.

c. To the extent any surplus in employee contributions exists in a class member's member account in an Affected System as a result of this Stipulation & Order, and that surplus is not otherwise credited to satisfy a deficit in the class member's member account, the Affected System will refund that surplus to the class member as soon as

practical after the surplus has been calculated, provided that the rules of the Affected System permit refunds of surplus contributions prior to retirement.[21]

50. **Employee Contributions Tax Adjustment.** Class members who, by operation of this Stipulation & Order, incur a deficit in employee contributions attributable to their counterfactual service periods, will be responsible for only 84% of any unpaid employee contributions, including AMCs, attributable to their counterfactual service history. The notice an Affected System sends to class members regarding unpaid employee contributions, as per the process described above in Paragraph 49 of this Stipulation & Order, will notify class members of this reduced unpaid contribution amount. The BOE will be responsible for paying the remaining 16% of unpaid employee contributions into a class member's account with the Affected System—as identified and invoiced by the Affected System—to compensate class members for their contributions being made on a post-tax basis, when absent the BOE's discrimination these contributions would have been made on a pre-tax basis.

51. **Employer Contributions**. The BOE will be required to make all actuarially determined employer contributions attributable to class members' counterfactual service, as determined by the NYCOA.

52. **Statutory Interest Accrued on Delayed Contributions**. Class members will not be responsible for any statutory interest on employee contributions that accrued following the beginning of the class members' counterfactual service periods, which would not have accrued absent BOE discrimination. Specifically, a class member will not be responsible for statutory interest on unpaid contributions, including AMCs, attributable to the class member's counterfactual

[21] The Affected Systems that do not permit refunds of a member's surplus contributions prior to retirement refund any surplus contributions subsequent to retirement.

service and salary history. The BOE will instead be responsible for this interest as may be identified by the Affected Systems and invoiced to the BOE. Pursuant to the Special Master's ruling, the statutory interest for which the BOE is responsible includes interest attributable to employee contributions that class members, as a result of their employment in positions that permitted BERS, NYCERS, or TRS membership during the counterfactual service period, would have made had they joined the pension system for which they were eligible.

53. **Supplementary Early Retirement Plans.**

a. For each class member eligible to opt in to the TRS 55/25 or 55/27 plans pursuant to this Stipulation & Order, Plaintiffs' counsel will provide class members with information explaining the costs and benefits of the 55/25 and 55/27 plans and an election form to opt in to the TRS 55/25 or 55/27 plans (the "Early Retirement Plan Election Form"), both of which will be in a format agreed upon by the parties. Class members who would have been eligible to opt in to the TRS 55/25 or 55/27 plans absent BOE discrimination will have ninety (90) days from the date the Court enters their individual judgments to submit the Early Retirement Plan Election Form to TRS. Any class members who elect to opt in to the 55/25 or 55/27 plans will be responsible for any AMCs due as a result of their choice, as determined by TRS. Class members who would have been mandated to join the TRS 55/27 plan absent BOE discrimination will be required to participate in the 55/27 Plan and will be responsible for any AMCs due as a result of that participation, as determined by TRS.

b. Class members who already participate in a Comparable Plan with NYCERS and BERS and will remain in the positions that rendered them eligible for participation, or who are deferred-vested members of, or retirees from, a Comparable Plan, will remain

members of their Comparable Plan, and the counterfactual service rendered by these members will be deemed to have been rendered in the position that rendered them eligible for the Comparable Plan. These class members will be responsible for any AMCs due, in excess of AMCs already paid, as a result of the inclusion of counterfactual service, as determined by the Affected System. The BOE will be responsible for paying statutory interest, as computed by the Affected System, on any unpaid AMCs attributable to the counterfactual service and salary history.[22]

c. Class members who currently participate in TRS and were mandated to join 55/27 or to enroll as basic Tier VI TRS Members based on their membership date, but who would have been basic Tier IV TRS Members eligible to opt in to the TRS 55/25 or 55/27 plans absent BOE discrimination, will have ninety (90) days from the date the Court enters their individual judgments to submit Early Retirement Plan Election Forms to TRS. Plaintiffs' counsel will likewise provide these members with information explaining the costs and benefits of the 55/25 and 55/27 plans, as well as the Early Retirement Plan Election Form. Any class members who elect to opt in to the 55/25 or the 55/27 Plans will be responsible for any AMCs due, in excess of AMCs already paid, as a result of the inclusion of this counterfactual service, as determined by TRS.

54. **Deferred Vested Members**. Certain class members may have participated in TRS or a Comparable Plan during their counterfactual service period and left the positions that rendered them eligible for participation in circumstances that entitle the class member to a deferred-vested

[22] Class members who are currently Tier VI members of NYCERS or BERS, who do not participate in a supplementary early-retirement plan, and who would have participated in a supplementary early-retirement plan constituting a Comparable Plan had they joined NYCERS or BERS in their current title on the date their counterfactual service began, will, as set forth in Paragraph 48 of this Stipulation & Order, be reclassified as Tier IV members and will be deemed to have participated in a Comparable Plan as of the date their counterfactual service began. The payment of AMCs and interest resulting from the reclassification and inclusion of counterfactual service will be governed by this paragraph.

benefit from the Affected System or will entitle the class member to a deferred-vested benefit when an existing membership is combined with counterfactual service. Any deferred-vested benefit for these class members will be adjusted by the Affected System in the manner set forth in Paragraphs 45 through 53 of this Stipulation & Order.

55. **Prior Withdrawals from Affected System Accounts.** Pursuant to the Special Master's ruling, class members who withdrew their employee contributions from an Affected System after leaving BOE service subsequent to failing the LAST exam, and who apply to buy back service credits from their pre-counterfactual service period following the Court's entry of their individual judgments in this case, will be responsible for paying any statutory interest that has accrued on unpaid employee contributions from their pre-counterfactual service period.

56. **Back Pension**. Retired class members are entitled to receive, as Back-Pension Damages, the pension payments they did not receive prior to entry of their individual judgments as a result of BOE discrimination, provided the class members pay all employee contributions owed to the Affected System. The payment of Back-Pension Damages will be made as follows:

a. For class members who retired from TRS or a Comparable Plan, the Affected System will compute the Back-Pension Damages, if any, over and above pension payments already made by the Affected System. The Affected System will then pay the Back-Pension Damages to the class member—along with pre-judgment interest from the dates the class member would have received those prior pension payments to the date of judgment and post-judgment interest that will accrue from the date of judgment to the date of the payment[23]—in a lump sum.

---

[23] Notwithstanding any other rates of interest applied by the Affected Systems for benefit recalculations or payment delays, the rate of interest to be applied for any calculation of pre-judgment and post-judgment interest pursuant to this

b. For retired class members who did not obtain mitigating pensions, except for class members who died prior to their dates of judgment,[24] TRS will compute Back-Pension Damages, if any, attributable to any period of retirement subsequent to the class member reaching TRS's normal retirement age during which the class member would have been eligible to receive a pension payment from TRS by virtue of his or her counterfactual service. TRS will pay the Back-Pension Damages to the class member, along with pre- and post-judgment interest as described above in Subparagraph 56(a), in a lump sum.

c. For deceased class members who retired from TRS or a Comparable Plan before their deaths, the Affected System will pay any Back-Pension Damages, along with pre- and post-judgment interest, in a lump sum to class members' previously designated beneficiaries or estates as follows, except insofar as Back-Pension Damages attributable to the portion of the pension payable in the month the class member died constitute a component of the death benefits governed by Paragraph 57 of this Stipulation & Order:[25]

i. If a deceased retired class member took the Maximum Option, the Back-Pension Damages shall be paid to the class member's estate.

ii. If a deceased retired class member took a Joint and Survivor Option, any Back-Pension Damages that would have been payable to the class member shall

Stipulation & Order will be that set forth in 28 U.S.C. § 1961. The Affected Systems may invoice the BOE for any post-judgment or pre-judgment interest they must pay to class members pursuant to this Stipulation & Order.

[24] These class members' beneficiaries or estates will receive either the lump-sum pension award pursuant to Paragraph 59 of this Stipulation & Order or death benefits pursuant to Paragraph 57, depending on whether they attained TRS's normal retirement age.

[25] To the extent the Affected Systems do not already have the information they require regarding a class member's designated beneficiary or estate, any person or entity seeking a payment from an Affected System pursuant to this Stipulation & Order must satisfy the administrative procedures established by the Affected System for any payment to an estate or beneficiary of a member in the normal course. This generally requires the completion of claim forms, submission of a tax identification number and original letters of administration or letters testamentary with respect to an estate, submission of the name and contact information for executors, and submission of photo identification and social security card with respect to a named beneficiary.

be paid to the class member's estate. Any Back-Pension Damages that would have been paid to the Joint and Survivor beneficiary named by the class member shall be paid to that Joint and Survivor beneficiary. If that beneficiary is deceased, the Back-Pension Damages owed to that beneficiary shall be paid to that beneficiary's estate.

iii. If a deceased retired class member took a 5/10 Year Certain Option, any Back-Pension Damages attributable to the period before the class member died shall be paid to the class member's estate. Any Back-Pension Damages attributable to the period after the class member died shall be paid to the beneficiary named by the class member. If that beneficiary died subsequent to the class member's death, but prior to the end of the guaranteed monthly retirement payments period, the remaining Back-Pension Damages shall be paid to the contingent beneficiary. If the contingent beneficiary also died prior to the end of the guaranteed monthly retirement payments period, or if no contingent beneficiary was named, any remaining Back-Pension Damages shall be paid to the class member's estate.

d. The Affected Systems will pay any Back-Pension Damages governed by this Stipulation & Order as soon as practical after the class member has paid any employee contributions owed for his or her counterfactual service pursuant to Paragraph 49 of this Stipulation & Order.

57. **Death Benefit**. Deceased class members' beneficiaries or estates are entitled to receive the death benefit to which they would have been entitled absent the BOE's discrimination.[26] To the extent a portion of any death benefit for a deceased class member would consist of employee contributions that would otherwise be payable to the Affected System pursuant to Paragraph 49 of

this Stipulation & Order, the estate of the class member will not be required to pay those contributions, and the Affected System will calculate the death benefit without reference to a refund of those contributions.[27] The payment of the death benefit for these deceased class members will be made as follows:

a. For deceased class members who did not obtain mitigating pensions, TRS will pay the death benefit, along with pre- and post-judgment interest, to the class members' estates.

b. For deceased class members who participated in TRS or a Comparable Plan and died before retirement, the Affected System will pay the death benefit, in excess of that already paid, along with pre- and post-judgment interest to the date of the payment, to the previously designated beneficiaries. With respect to members who failed to designate a beneficiary before death, the Affected System will pay the death benefit, along with pre- and post-judgment interest, to the class member's estate.

c. For deceased class members who participated in TRS or a Comparable Plan and died after retirement, the Affected System will pay the post-retirement death benefit in excess of any post-retirement death benefit already paid, along with pre- and post-judgment interest to the date of the payment, to the previously designated beneficiaries. With respect to members who failed to designate a beneficiary before death, the Affected System will pay the death benefit, along with pre- and post-judgment interest, to the class member's estate.

---

[27] Contributions by class members can be "otherwise credited" pursuant to this Stipulation & Order only by the process set forth in Footnote 18 of this Stipulation & Order.

d. The Affected Systems will pay any death benefit governed by this Stipulation & Order as soon as practical following entry of an individual class member's judgment.

58. **Retirement Payment Option**. The election of a Retirement Payment Option for class members who retired prior to entry of their individual judgments will be made as follows:

a. For each retired class member eligible to make a Retirement Payment Option election pursuant to Subparagraph 58(c) below, Plaintiffs' counsel will provide the class member a form detailing the Retirement Payment Options available under the class member's pension plan (the "Retirement Payment Option Election Form").

b. As soon as practical after the entry of this Stipulation & Order, TRS will provide Plaintiffs' counsel with a document or application, in a form agreed upon by the parties, which substantially replicates the functionality of the Retirement Allowance Calculator, so that Plaintiffs' counsel may assist retired class members in estimating the costs and benefits of available options. The Affected System will update the document or application as it would update the Retirement Allowance Calculator for ordinary system members.

c. Retired class members who have reached TRS's normal retirement age, and who did not obtain mitigating pensions, will have ninety (90) days following the entry of their individual final judgments to complete and return the Retirement Payment Option Election Form to TRS.[28] The subsequent calculation of option costs will be undertaken by the NYCOA as provided by applicable law.

[28] Retired class members who are vested but have not yet reached TRS's normal retirement age will be treated as deferred vested members for purposes of this Stipulation & Order.

d. Retired class members, whether living or deceased, who were able to participate in TRS or a Comparable Plan, and selected a Retirement Payment Option upon their actual retirement, will, as a default rule, maintain the same Retirement Payment Option once their accounts have been adjusted to account for their counterfactual service. However, these class members have the opportunity to prove at an individual hearing before the Special Master that they would have selected an alternative Retirement Payment Option absent the BOE's discrimination. The class member bears the burden of proof, and the burden of proof may be met only if the class member demonstrates with objective, documentary evidence, dated prior to or contemporaneous with the date the class member initially selected a Retirement Payment Option, that he or she would have selected a different Retirement Payment Option had he or she been entitled to a larger pension. If a class member satisfies this burden, and, as a result of this alternative election, the Affected System determines that the class member received higher historical pension payments under the prior Retirement Payment Option than he or she would have received under the new Retirement Payment Option, the amount of those excess historical pension payments, as computed by the Affected System, must be repaid to the Affected System by the class member prior to any option change and within ninety (90) days from the date he or she receives notice from the Affected System of the cost of effecting this option change, absent good cause for a delay in payment, as determined by the Special Master on the basis of evidence presented in an individual hearing. If the class member has died since the initial selection of a Retirement Payment Option, the estate of the class member will have the right to a hearing with respect to the Retirement Payment Option and will bear the burden and,

where applicable, repayment obligation for excess historical pension payments described in this paragraph.

59. **Certain Deceased Retirees**. Class members who did not obtain mitigating pensions, and who: (1) retired at, or after, TRS's normal retirement age, or reached that age after their retirement but before entry of their individual judgments; and (2) died after reaching that age, but before entry of their individual judgments,[29] will receive a lump-sum payment equal to the actuarial value of the TRS pension attributable to their counterfactual service as of the later of the date they retired or the date they reached normal retirement age, without regard to the selection of a Retirement Payment Option, less employee contributions that would have been payable to TRS, as determined by the NYCOA. The BOE will make this payment, along with post-judgment interest, to the estate of these class members as soon as practical following the entry of an individual class member's judgment.

60. **Disability Retirement Determinations**. Any class member who permanently left the workforce as a result of an alleged disability during the time period he or she is deemed to have engaged in counterfactual service; who, at the time the class member left the workforce, either was not a member of a pension system that would have permitted him or her to apply for disability retirement benefits on the basis of that disability or was a member of such a pension system and applied for and received disability benefits;[30] and who satisfies the length-of-service requirements

---

[29] Class members who did not obtain mitigating pensions, who retired, and who died before TRS's normal retirement age will, pursuant to Paragraph 57 of this Stipulation & Order, be eligible to receive the death benefits available to deferred vested members that they would have received absent BOE discrimination.

[30] Any such disability benefits will be taken into account for purposes of pension mitigation. If a class member receives disability benefits from NYCERS or BERS under a Comparable Plan, any additional disability benefits received pursuant to this paragraph—*i.e.*, a higher disability benefit due to the inclusion of counterfactual service and salary—will be administered by NYCERS or BERS.

for ordinary disability retirement set forth in RSSL § 605(b)(1) by virtue of his or her counterfactual service will be eligible to seek ordinary disability retirement benefits provided by that Section.[31] Pursuant to the Special Master's ruling, any class member, regardless of length of service, who alleges that his or her disability was the result of an "accident"—as that term appears in the RSSL and is interpreted in case law—that occurred in the course of the class member's employment with the City of New York or the BOE during his or her counterfactual service period, will be permitted to apply for the accidental disability retirement benefits provided by RSSL § 605. Notwithstanding any contrary procedure set forth in law or board resolution, the following procedures govern applications for disability retirement as part of the relief in this case:[32]

a. Any claim for disability-retirement benefits must be submitted to the BOE counsel prior to the Court's entry of a class member's individual judgment. Claims for disability retirement benefits will be resolved prior to entry of a class member's individual judgment.

b. Any class member who submits a claim for disability retirement benefits pursuant to this paragraph must identify the nature of the disability and the date he or she would have ceased employment with the City of New York or the BOE as a result of the disability. The class member must furnish BOE counsel with all medical records germane to the disability contemporaneously with his or her claim.

---

[31] Class members who were members of an Affected System when they permanently left the workforce as a result of a disability, but did not apply for ordinary disability retirement benefits because they had less than ten years of credited service at that time, may apply for ordinary disability benefits hereunder if they would have had ten or more years of credited service at that time had their counterfactual service been included in their computation of credited service.

[32] NYCERS does not consent to this paragraph but will abide by it once the Court orders this Stipulation & Order.

c. Ordinary Disability Retirement

i. On the basis of the evidence provided by the class member, in addition to the considered medical opinion of medical experts retained by BOE counsel, BOE counsel will determine whether the injury alleged constitutes a disability under the standard of RSSL § 605 and, if so, the date on which the disability would have prevented the member from remaining an employee of the City of New York or the BOE. BOE counsel and the medical experts may ask the class member to furnish additional medical records, as needed.

ii. Should BOE counsel find that a class member who seeks ordinary disability retirement benefits would have ceased his or her counterfactual service as a result of a disability, the class member will be entitled to an ordinary disability pension retroactive to the last day he or she would have been eligible to apply for that pension on the basis of the date the class member is deemed to have terminated employment with the City of New York or BOE as a result of the disability. BOE counsel will notify Plaintiffs' counsel as soon as practical of its determination. The Board of Trustees of the Affected System will adopt a resolution ratifying such ordinary disability pension as soon as practical after the class member has paid any employee contributions owed for his or her counterfactual service pursuant to Paragraph 49 of this Stipulation & Order.

d. Accident Disability Retirement

i. Any class member who submits a claim for accidental disability retirement benefits pursuant to this paragraph must further identify and describe the circumstances of the "accident" that the class member claims caused his or her

disability. The class member must furnish BOE counsel with all existing documentary evidence substantiating the alleged accident.

ii. On the basis of the evidence provided by the class member, in addition to the considered medical opinion of medical experts retained by BOE counsel, BOE counsel will determine whether the injury alleged constitutes a disability under the standard of RSSL § 605 and, if so, the date on which the disability would have prevented the member from remaining an employee of the City of New York or the BOE. BOE counsel and the medical experts may ask the class member to furnish additional medical records, as needed.

iii. BOE counsel will also determine, on the basis of the documentary evidence provided by the class member, whether the "accident" alleged by the class member: occurred; constituted an "accident" as that term appears in the RSSL and is interpreted in case law; and caused the class member's alleged disability. BOE counsel may ask the class member to furnish additional records, as needed.

iv. Should BOE counsel find that a class member who seeks accidental disability retirement benefits would have ceased his or her counterfactual service as a result of a disability that was caused by an "accident"—as that term appears in the RSSL and is interpreted in case law—that occurred in the course of the class member's employment with the City of New York or the BOE during the time period he or she will be deemed to have engaged in counterfactual service, the class member will be entitled to an accidental disability pension retroactive to the last day he or she would have been eligible to apply for that pension on the basis of the date the class member is deemed to have terminated employment with the City of New York

or the BOE as a result of that disability. BOE counsel will notify Plaintiffs' counsel as soon as practical of its determination. The Board of Trustees of the Affected System will adopt a resolution ratifying such accidental disability pension as soon as practical after the class member has paid any employee contributions owed for his or her counterfactual service pursuant to Paragraph 49 of this Stipulation & Order.

e. A class member will have the right to contest any adverse determination should BOE counsel determine: that a class member is not disabled; that the disability would have prevented the class member from remaining an employee of the City of New York or the BOE on a date different than that alleged by the class member; or that a class member seeking accidental disability retirement benefits did not become disabled as the result of an "accident"—as that term appears in the RSSL and is interpreted in case law—that occurred in the course of the class member's employment with the City of New York or the BOE during the time period he or she will be deemed to have engaged in counterfactual service.

f. The exclusive means to contest an adverse determination, as set forth above in subparagraph 60(e), is an individual hearing before the Special Master pursuant to the Special Master's Order of Appointment.[33] The class member bears the burden of proof, and the issue will be decided on the basis of the evidence previously submitted in connection with the class member's claim for disability retirement benefits.[34] Should the Special Master determine that the class member is entitled to the disability retirement benefits sought, the

[33] *See Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, No. 96-CV-8414 (KMW), Order of Appointment, ECF No. 435; *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, No. 96-CV-8414 (KMW), Second Amended Order of Appointment, ECF No. 524.

[34] The Special Master may, at his discretion, request additional evidence from the parties regarding a class member's disability claim; however, the parties retain the right to object to any such evidence.

Board of Trustees of the Affected System will adopt a resolution ratifying such disability pension as soon as practical after the class member has paid any employee contributions owed for his or her counterfactual service pursuant to Paragraph 49 of this Stipulation & Order.

g. Eligibility for disability retirement benefits will be specified in a class member's individual judgment. Upon entry of an eligible class member's individual judgment, BOE counsel will communicate the individual's eligibility to the Affected System—or the NYCOA if the class member will receive pension relief pursuant to Paragraph 61 of this Stipulation & Order—as soon as practical.

h. No class member will receive his or her disability retirement benefits until he or she has paid all employee contributions required by this Stipulation & Order, as described in Paragraph 49.

i. Any retroactive component of a disability pension will be treated as Back-Pension Damages, and paid in accordance with the process described in Paragraph 56 of this Stipulation & Order. Pre- and post-judgment interest will accrue on this retroactive component.

j. The Medical Board and Board of Trustees of each Affected System will retain their authority under existing law to order the reexamination of any member who receives disability retirement benefits pursuant to this Stipulation & Order and, if warranted, the Board of Trustees will have the sole discretion to recall a member to active service if, after reexamination, the Medical Board finds the class member is no longer disabled. Alternatively, with respect to a class member found no longer disabled, the Affected System has the authority to convert the class member's disability pension into a service-retirement

pension as of the date he or she is found no longer disabled, subject to payability at normal retirement age.

61. **Pension Mitigation for Class Members with Outside Pensions**. Pension mitigation with respect to an existing membership in TRS or in a Comparable Plan during the counterfactual service period is addressed by the preceding paragraphs of this Stipulation & Order. Class members who participated in an Outside Pension during their counterfactual service history, and who wish to receive pension relief pursuant to this Stipulation & Order, will receive pension relief pursuant to the procedures set forth in this paragraph.

a. As described below, where a class member with an Outside Pension is eligible to receive pension relief and did not die before attaining TRS's normal retirement age, the class member will participate in TRS pursuant to the preceding paragraphs of this Stipulation & Order; however, NYCOA and RRC will calculate an amount by which the Outside Pension will mitigate each pension payment a class member receives from TRS by operation of this Stipulation & Order (the "Monthly Outside Pension Offset").

b. Where the class member is entitled to elect a supplementary early-retirement plan in TRS on the basis of his or her counterfactual service, the class member will submit the Retirement Election Form to the NYCOA before the valuations contemplated in this paragraph are undertaken.

c. Class Members who retired from a New York City retirement system that qualifies as an Outside Pension pursuant to this Stipulation & Order will, as a default rule, maintain in TRS the same Retirement Payment Option and beneficiary or beneficiaries they selected in that New York City retirement system, subject to the procedures set forth above in Paragraph 58(d) of this Stipulation & Order. Class Members who retired from any other

Outside Pension will likewise maintain in TRS the same Retirement Payment Option and beneficiary or beneficiaries they selected in that Outside Pension system, subject to the procedures set forth in Paragraph 58(d) of this Stipulation & Order, insofar as they have selected a Retirement Payment Option that corresponds to a Retirement Payment Option available in TRS.[35] Class members who selected a Retirement Payment Option in the Outside Pension from which they retired that does not correspond to a Retirement Payment Option available in TRS will be permitted to select a Retirement Payment Option in TRS.

d. The value of all pensions from a New York City retirement system, whether counterfactual TRS pensions or Outside Pensions, will be determined by the NYCOA. The value of all other Outside Pensions will be determined by RRC.

e. RRC and the NYCOA will perform the calculations described in this paragraph on a rolling basis, and will submit their determinations to BOE counsel and Plaintiffs' counsel for each class member as soon as practical after the entry of each class member's individual judgment.

---

[35] For the purposes of this paragraph, a Retirement Payment Option will be deemed to correspond to the Maximum Option if the pension payment to the member is not reduced to provide for benefits to a beneficiary or beneficiaries after the member's death. A Retirement Payment Option will be deemed to correspond to a Joint and Survivor Option if: (1) the pension payment to the member is reduced to provide for ongoing payments, expressed as a percentage of the benefit payable to the member, for the life of a designated beneficiary after the member's death, provided that the beneficiary is living at the time of the member's death; and (2) the percentage chosen by the class member in the Outside Pension is identical to, or within, 10% of a percentage available in TRS for the purposes of a Joint and Survivor Option. A Retirement Payment Option will be deemed to correspond to the "pop-up" variant of a Joint and Survivor Option if it corresponds to a Joint and Survivor Option and possesses the additional feature that the pension payment to the member will revert to a higher amount if the designated beneficiary predeceases the member. A Retirement Payment Option will be deemed to correspond to a 5/10 Year Certain Option if: (1) the pension payment to the member is reduced to provide for monthly payments for the member's life, followed by a specified number of monthly payments to one or more beneficiaries in an amount necessary to guarantee a specified number of total monthly payments to the member and all beneficiaries; and (2) the number of guaranteed monthly payments chosen by the class member in the Outside Pension is identical to, or within, two years of an option for a number of guaranteed monthly payments available in TRS.

f. The below methods constitute the exclusive form of pension relief for any class member with an Outside Pension.

g. <u>Outside Pensions from a New York State Public Retirement System</u>[36]

i. **Class members who are members of a New York State public retirement system and have not yet retired:**

1. RRC or the NYCOA (if the Outside Pension is from a New York City retirement system) will calculate the monetary value of the Outside Pension attributable to the counterfactual service period as an annuity net of employee contributions by subtracting the annual benefit of the Outside Pension that accrued prior to the counterfactual service period from the annual benefit of the entire accrued Outside Pension as of the date the Court enters the class member's individual judgment. The NYCOA will then actuarially adjust the Outside Pension attributable to the counterfactual service period into its equivalent under the plan provisions of the TRS plan the member will enter (the "Outside Pension Annual Benefit").

2. The NYCOA will calculate the monetary value of the TRS pension attributable to the counterfactual service period as an annuity net of employee contributions by subtracting the annual benefit of a TRS pension incorporating all creditable New York State public service rendered by the class member prior to the counterfactual service period from the annual

[36] For the purposes of this Stipulation & Order, Outside Pensions from a New York State public retirement system include pensions from New York City retirement systems that qualify as Outside Pensions under this Stipulation & Order.

benefit of a TRS pension incorporating both prior creditable service and the class member's counterfactual service (the "TRS Pension Annual Benefit").

3. The NYCOA will then subtract the Outside Pension Annual Benefit from the TRS Pension Annual Benefit. If the difference is zero or less, the class member will not receive pension relief. If the difference is greater than zero, the class member's counterfactual-service-and-salary history will be transmitted to TRS, and the preceding paragraphs of this Stipulation & Order will govern the class member's participation in TRS, including the calculation and payment of employee contributions attributable to the class member's counterfactual service, except to the extent inconsistent with this subparagraph.

4. With respect to class members who enter TRS, the Outside Pension Annual Benefit will be divided by twelve to determine the Monthly Outside Pension Offset. Upon the class member's retirement from TRS, the Monthly Outside Pension Offset will be subtracted from the class member's TRS pension payments on an ongoing basis.

5. The class member's TRS account will not be credited with service rendered prior to the counterfactual service period unless that service is already credited in the class member's account at TRS when the account is adjusted pursuant to this subparagraph, and the class member will not be permitted to buy back creditable service with TRS.

ii. **Class Members who died prior to retirement and whose beneficiaries or estates received, or became entitled to receive, death benefits from a New York State public retirement system:**

1. The estate of the class member will receive from the BOE a lump sum that is equal to the difference between the TRS death benefit the class member would have received absent BOE discrimination and the death benefit the estate or any beneficiary has received or will receive from the New York State public retirement system, less the difference between the total employee contributions, including AMCs, that would have been payable to TRS had the class member participated in TRS during his or her counterfactual service period, and the total employee contributions, including AMCs, actually paid to the New York State public retirement system, as determined by RRC or the NYCOA (if the Outside Pension is from a New York City retirement system). If this calculation yields a difference of zero or less, the estate of the class member will receive no pension relief.

2. The BOE will make this lump-sum payment, along with post-judgment interest, as soon as practical following entry of an individual class member's judgment.

iii. **Class members who have retired from a New York State public retirement system**: Pension mitigation for these class members will be calculated pursuant to the procedures set forth above in Subparagraph 61(g)(i), and the Back-Pension Damages, if any, payable to these class members will be paid pursuant to

the procedures set forth in Paragraph 56 of this Stipulation & Order,[37] except insofar as each pension payment included in any calculation of Back-Pension Damages will be reduced by the applicable Monthly Outside Pension Offset, and pre- and post-judgment interest on Back-Pension Damages will be calculated on that reduced amount.

iv. **Class members who retired from a New York State public retirement system and died after attaining TRS's normal retirement age:** Pension mitigation for these class members will be calculated pursuant to the procedures set forth in Subparagraph 61(g)(i), and the Back-Pension Damages, if any, payable to the estates or beneficiaries of these class members will be paid pursuant to the procedures set forth in Paragraph 56 of this Stipulation & Order, except insofar as each pension payment included in the calculation of Back-Pension Damages will be reduced by the applicable Monthly Outside Pension Offset, and pre- and post-judgment interest on Back-pension Damages will be calculated on that reduced amount.

v. **Class members who retired from a New York State public retirement system and died before attaining TRS's normal retirement age:**

1. The estate of the class member will receive a lump-sum payment from the BOE that is equal to the difference between the TRS death benefit the class member would have received absent BOE discrimination and the actuarial value of the class member's Outside Pension from a New

[37] For purposes of this paragraph, the NYCOA and RRC will calculate the value of a class member's Back-Pension Damages pursuant to the actuarial-adjustment process set forth in Subparagraph 61(g)(i). Paragraph 56 of the Stipulation & Order will govern the manner in which Back-Pension Damages will be paid.

York State public retirement system as of the date of the class member's retirement, as determined by RRC or the NYCOA (if the Outside Pension is from a New York City retirement system), less the difference between the total employee contributions, including AMCs, that would have been payable to TRS had such member participated in TRS during his or her counterfactual service period and the total employee contributions actually paid to the Outside Pension. If this calculation yields a difference of zero or less, the class member will receive no pension relief.

2. The BOE will make the lump-sum payment, along with post-judgment interest, as soon as practical following entry of an individual class member's judgment.

h. <u>All Other Outside Pensions</u>

i. **Class members who are members of any other Outside Pension and have not yet retired**:

1. RRC will calculate the monetary value of the Outside Pension attributable to the counterfactual service period as an annuity net of employee contributions by subtracting the annual benefit of the Outside Pension that accrued prior to the counterfactual service period from the annual benefit of the entire accrued Outside Pension as of the date the Court enters the class member's individual judgment. The NYCOA will then determine the Outside Pension Annual Benefit by actuarially adjusting the Outside Pension attributable to the counterfactual service period into its equivalent under the plan provisions of the TRS plan the member will enter.

2. The NYCOA will calculate the monetary value of the TRS Pension Annual Benefit by subtracting the annual benefit of a TRS pension, incorporating all creditable New York State public service rendered by the class member prior to the counterfactual service period, from the annual benefit of a TRS pension, incorporating both prior creditable service and the class member's counterfactual service. The NYCOA will then subtract the Outside Pension Annual Benefit from the TRS Pension Annual Benefit. If the difference is zero or less, the class member will not receive pension relief. If the difference is greater than zero, the class member's counterfactual-service-and-salary history will be transmitted to TRS, and the preceding paragraphs of this Stipulation & Order will govern the class member's participation in TRS, including the calculation and payment of employee contributions attributable to the class member's counterfactual service, except to the extent inconsistent with this subparagraph.

3. With respect to class members who enter TRS, the Outside Pension Annual Benefit will be divided by twelve to determine the Monthly Outside Pension Offset. Upon the class member's retirement from TRS, the Monthly Outside Pension Offset will be subtracted from the class member's TRS pension payments on an ongoing basis.

4. The class member will be permitted to buy back with TRS any creditable service rendered prior to the counterfactual service period on the same terms as other TRS members who buy back prior creditable service.

ii. **Class Members who died prior to retirement and whose beneficiaries or estates received, or became entitled to receive, death benefits from an Outside Pension:**

1. The estate of the class member will receive from the BOE a lump sum that is equal to the difference between the TRS death benefit the class member would have received absent BOE discrimination and the death benefit the estate or any beneficiary has received or will receive from the Outside Pension, less the difference between the total employee contributions, including AMCs, that would have been payable to TRS had the class member participated in TRS during his or her counterfactual service period, and the total employee contributions actually paid to the Outside Pension, as determined by RRC. If this calculation yields a difference of zero or less, the estate of the class member will receive no pension relief.

2. The BOE will make the lump-sum payment, along with post-judgment interest, as soon as practical following entry of an individual class member's judgment.

iii. **Class members who have retired from any other Outside Pension**: Pension mitigation for these class members will be calculated pursuant to the procedures set forth above in Subparagraph 61(h)(i), and the Back-Pension Damages, if any, payable to these class members will be paid pursuant to the procedures set forth in Paragraph 56 of this Stipulation & Order, except insofar as each pension payment included in any calculation of Back-Pension Damages will be

reduced by the applicable Monthly Outside Pension Offset, and interest on Back-Pension Damages will be calculated on that reduced amount.

iv. **Class members who retired from any other Outside Pension and died after attaining TRS's normal retirement age:** Pension mitigation for these class members will be calculated pursuant to the procedures set forth in Subparagraph 61(h)(i), and the Back-Pension Damages, if any, payable to estates or beneficiaries of these members will be paid pursuant to the procedures set forth in Paragraph 56 of this Stipulation & Order, except insofar as each pension payment included in the calculation of Back-Pension Damages will be reduced by the applicable Monthly Outside Pension Offset, and interest on Back-Pension Damages will be calculated on that reduced amount.

v. **Class members who retired from any other Outside Pension and died before attaining TRS's normal retirement age:**

1. The estate of the class member will receive a lump-sum payment from the BOE that is equal to the difference between the TRS death benefit the class member would have received absent BOE discrimination and the actuarial value of the class member's Outside Pension as of the date of the class member's retirement, as determined by RRC, less the difference between the total employee contributions, including AMCs, that would have been payable to TRS had the class member participated in TRS during his or her counterfactual service period and the total employee contributions actually paid to the Outside Pension. If this calculation yields a difference of zero or less, the class member will receive no pension relief.

2. The BOE will make the lump-sum payment, along with post-judgment interest, as soon as practical following entry of an individual class member's judgment.

i. If Plaintiffs or Defendant wish to contest any pension-valuation determination made by RRC or the NYCOA pursuant to Paragraph 61 of this Stipulation & Order, either party may seek a hearing before the Special Master, who will resolve all pension-valuation disputes pursuant to his Order of Appointment.[38]

62. **Employer-Sponsored Defined-Contribution Plans.** To the extent a class member received employer contributions in a defined-contribution plan during the class member's counterfactual service period, the portion of the class member's account balance in the plan as of the entry of his or her individual judgment that constitutes employer contributions will mitigate the class member's backpay damages, not the class member's pension relief. Pursuant to a ruling by the Special Master, any investment returns on the portion of the class member's account balance that constitutes employer contributions will also mitigate the class member's backpay damages.

63. Except to the extent necessary to effectuate the relief contemplated by this Stipulation & Order and any future order issued by the Court, the Affected Systems are not obligated to implement policies and procedures not detailed in this Stipulation & Order or any future order of the Court.

64. Except as detailed herein or in any future order issued by this Court, the calculation and administration of benefits for individual class members will be undertaken in accordance with the RSSL and other applicable law. The parties acknowledge that any payment to a class member

[38] The Special Master will only review the valuations performed by the NYCOA and RRC as necessary to effectuate the relief set forth in this Stipulation & Order.

contemplated by this Stipulation & Order may be offset to satisfy any deficit—to the extent such a deficit is unrelated to BOE discrimination—that a class member may have relating to his or her participation in an Affected System or other New York City or State public pension system.

65. All functions directed to be performed by an Affected System may be performed by other parties, provided the assignment of the function to another party does not affect the purpose or intent of this Stipulation & Order.

66. To the extent individual class members present unique factual scenarios that are not covered by the terms of this Stipulation & Order; otherwise applicable law; or a rule, policy, or practice of an Affected System, the signatories agree to work together in good faith to determine the appropriate pension relief for those class members. The Court retains jurisdiction over any disputes between the parties related to these class members, and the Special Master's Order of Appointment extends to resolve these disputes.

67. The Court also retains jurisdiction over any disputes regarding the operation of this Stipulation & Order, and the Special Master's Order of Appointment extends to resolve these disputes.

68. This Stipulation & Order may be executed in counterparts, each of them will be deemed an original, and all of them together will constitute one and the same instrument. This Stipulation & Order may be executed by facsimile or PDF signatures.

STIPULATED AND AGREED UPON BY:

______________________
Joshua S. Sohn
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
*Counsel for Plaintiffs*

______________________
William S. Fraenkel
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, NY 10007
*Counsel for Defendant*

______________________
Patricia Reilly
Executive Director
Teachers' Retirement System of the City of New York
55 Water Street
New York, NY 10041

______________________
Sanford R. Rich
Executive Director
Board of Education Retirement System of the City of New York
65 Court Street, 16th Floor
Brooklyn, NY 11201

______________________
Melanie Whinnery
Executive Director
New York City Employees' Retirement System
335 Adams Street, Suite 2300
Brooklyn, NY 11201

STIPULATED AND AGREED UPON BY:

______________________
Joshua S. Sohn
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
*Counsel for Plaintiffs*

______________________
William S. Fraenkel
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, NY 10007
*Counsel for Defendant*

______________________
Patricia Reilly
Executive Director
Teachers' Retirement System of the City of New York
55 Water Street
New York, NY 10041

______________________
Sanford R. Rich
Executive Director
Board of Education Retirement System of the City of New York
65 Court Street, 16th Floor
Brooklyn, NY 11201

______________________
Melanie Whinnery
Executive Director
New York City Employees' Retirement System
335 Adams Street, Suite 2300
Brooklyn, NY 11201

STIPULATED AND AGREED UPON BY:

________________________

Joshua S. Sohn
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
*Counsel for Plaintiffs*

________________________

William S. Fraenkel
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, NY 10007
*Counsel for Defendant*

________________________

Patricia Reilly
Executive Director
Teachers' Retirement System of the City of New York
55 Water Street
New York, NY 10041

________________________

Sanford R. Rich
Executive Director
Board of Education Retirement System of the City of New York
65 Court Street, 16th Floor
Brooklyn, NY 11201

________________________

Melanie Whinnery
Executive Director
New York City Employees' Retirement System
335 Adams Street, Suite 2300
Brooklyn, NY 11201

STIPULATED AND AGREED UPON BY:

________________________

Joshua S. Sohn
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
*Counsel for Plaintiffs*

________________________

William S. Fraenkel
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, NY 10007
*Counsel for Defendant*

________________________

Patricia Reilly
Executive Director
Teachers' Retirement System of the City of New York
55 Water Street
New York, NY 10041

________________________

Sanford R. Rich
Executive Director
Board of Education Retirement System of the City of New York
65 Court Street, 16th Floor
Brooklyn, NY 11201

________________________

Melanie Whinnery
Executive Director
New York City Employees' Retirement System
335 Adams Street, Suite 2300
Brooklyn, NY 11201

STIPULATED AND AGREED UPON BY:

______________________

Joshua S. Sohn
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
*Counsel for Plaintiffs*

______________________

William S. Fraenkel
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, NY 10007
*Counsel for Defendant*

______________________

Patricia Reilly
Executive Director
Teachers' Retirement System of the City of New York
55 Water Street
New York, NY 10041

______________________

Sanford R. Rich
Executive Director
Board of Education Retirement System of the City of New York
65 Court Street, 16th Floor
Brooklyn, NY 11201

Melanie Whinnery
Executive Director
New York City Employees' Retirement System
335 Adams Street, Suite 2300
Brooklyn, NY 11201

ON RECOMMENDATION OF THE SPECIAL MASTER

SO ORDERED.

Dated: _____________, 2018

_____________________________
KIMBA M. WOOD
United States District Judge

# Exhibit I

# Service Retirement Plans and Benefits for Tiers III/IV

**As a member of TRS, you will receive a guaranteed retirement allowance under the Qualified Pension Plan (QPP) after meeting certain age and service requirements. This brochure describes the available retirement plans, benefit calculations, and other important information.**

## RETIREMENT PLANS

Tier III and IV members participate in either the "basic" retirement plan or the Age 55 Retirement Program, as described below.

### Basic Retirement Plan

In general, you are eligible to receive *unreduced* retirement allowance payments under this plan if:

- You are at least age 62 and you are vested;* or
- You are at least age 55 and have at least 30 years of Total Service Credit.

In general, you are eligible to receive *reduced* retirement allowance payments under this plan if:

- You are between the ages of 55 and 61, you are vested,* and you have less than 30 years of Total Service Credit.

**Tier III and IV members become vested upon attaining five years of Total Service Credit.*

### Age 55 Retirement Program

In general, if you participate in the Age 55 Retirement Program, you are eligible to receive unreduced retirement allowance payments if:

- You are at least age 55 as of your retirement date, and you have attained the required amount of Total Service Credit. For members covered by the "55/25" provisions of the Age 55 Retirement Program, at least 25 years of Total Service Credit are required; for members covered by the "55/27" provisions, at least 27 years of Total Service Credit are required.

In general, you are eligible to receive reduced retirement allowance payments if:

- You are between the ages of 55 and 61, you are vested, and you have less than the required amount (25 or 27 years) of Total Service Credit.

The Age 55 Retirement Program was established as of February 27, 2008 for employees of the Department of Education and participating Charter Schools, to provide qualifying members with the option to retire with unreduced benefits as early as age 55 after making Additional Member Contributions toward their pensions.

The Program includes "55/25" provisions and "55/27" provisions:

- The "55/25" provisions generally apply to most eligible members whose TRS membership date was on or before February 27, 2008 and who opted into the program.
- The "55/27" provisions generally apply to eligible members whose membership date was after February 27, 2008 or whose membership status as of February 27, 2008 qualified them for these provisions.
- The "55/27" provisions also apply to members covered under Chapter 504 of the Laws of 2009 (*i.e.*, eligible Tier IV members who joined TRS after December 10, 2009).

## BENEFITS

Your retirement allowance may be made up of two components.

- **Regular Pension**: This portion of your retirement allowance is based on factors such as your service credit and Final Average Salary (FAS), and it is partially funded by your Member Contributions Accumulation Fund (MCAF) balance at retirement. Your MCAF account contains your base pension contributions with interest, including any payments made to purchase service credit.
- **Annuity Reserve**: This second portion is based on your Annuity Savings Accumulation Fund (ASAF) balance, if applicable. An ASAF account contains monthly supplemental contributions provided to certain eligible employees who reach the maximum of their salary schedule. At retirement, any ASAF funds you have are transferred into an Annuity Reserve Accumulation Fund (ARAF), which is paid as part of your retirement allowance.

The pension portion of your retirement allowance benefits is calculated in the following manner:

- 1⅔% of your FAS multiplied by your years of service credit if you have less than 20 years of Total Service Credit.
- 2% of your FAS multiplied by your years of service credit if you have between 20–29 years of service.
- 60% of your FAS for the first 30 years of Total Service Credit under Tier IV retirement, plus 1½% of your FAS for each additional year over 30 years of service. (For a Tier III retirement, the maximum calculation is 60% of your FAS.)

Your FAS will generally be the average of your highest three consecutive annual salaries during your periods of credited service. However, if the salary earned during any year included in the three-year period exceeds the average of the previous two years by more than 10%, the amount in excess of 10% will be excluded from the calculation. If the period used to determine your FAS is the three-year period immediately preceding your effective retirement date, and if you were on an authorized leave of absence at partial pay or no pay during that period, the leave will be excluded from the calculation. In such a case, an equal amount of time immediately preceding that three-year period (up to one year) will instead be used in the calculation.

## AGE REDUCTIONS

If you retire under the basic retirement plan before your 62nd birthday and you have less than 30 years of credited service, your retirement allowance will be reduced. The following table shows the effect of the reduction.

| AGE AT PAYABILITY DATE | % OF BENEFIT AFTER REDUCTION | |
|---|---|---|
| | TIER III | TIER IV |
| 61 | 93.3% | 94.0% |
| 60 | 86.7% | 88.0% |
| 59 | 83.3% | 85.0% |
| 58 | 80.0% | 82.0% |
| 57 | 76.7% | 79.0% |
| 56 | 73.3% | 76.0% |
| 55 | 70.0% | 73.0% |

*Note:* Age reductions will not apply to members who retire with at least 30 years of Total Service Credit or to participants in the Age 55 Retirement Program who have the required amount of service credit at retirement (*i.e.*, 25 or 27 years of Total Service Credit). However, participants in the Age 55 Retirement Program who retire without meeting these service requirements will be subject to the above age reductions.

## FILING FOR RETIREMENT

TRS must generally receive your retirement application at least one business day, but no more than 90 days, before your effective retirement date. In general, you may not file for retirement more than 90 days before your 55th birthday. Please see the "Tier IV Service Retirement Application" (code RE19) for more information about filing guidelines; the application is available on our website. (Go to Forms ▸ **In Service Members** ▸ **Retirement**.)

The easiest way to file for retirement is to use the "e-form" version of the retirement application. Log in to the secure section of our website at **www.trsnyc.org** and go to **Forms** ▸ **Electronic Forms**. There, you'll find the Tier IV retirement application e-form and related forms that you can submit electronically. You can also securely upload required documentation when you file an e-form to retire.

## COST-OF-LIVING ADJUSTMENT

The following service retirees will receive a permanent cost-of-living adjustment (COLA) to their retirement allowance payments:

- Service retirees who are at least age 62 and have been retired for at least 5 years;
- Service retirees who are at least age 55 and have been retired for at least 10 years.

The COLA will be an annual adjustment between 1% and 3%, based on half of the Consumer Price Index (CPI) increase for the year ending March 31. This increase will be calculated on the lesser of your allowance under the Maximum Payment Option or $18,000.

### NOTE TO TIER III MEMBERS

If you are a Tier III member, you may elect to file for retirement under either Tier III or Tier IV. Before filing a retirement application, you should note the differences between the tier plans and carefully consider this irrevocable choice. The main difference between Tier III and Tier IV benefits is that, under Tier III, your retirement allowance would be reduced by 50% of the Social Security benefit you accrued in public employment within New York State. This reduction would take effect when your retirement allowance payments begin or when you reach age 62, whichever is later. This reduction does not apply to Tier IV benefits.

To elect to receive benefits under Tier IV, please file the "Tier IV Service Retirement Application (code RE19)." The "Tier III Service Retirement Application (code RE18)" is available upon request from our Member Services Center.

### Tier III Cost-of-Living Plan

If you elect a Tier III retirement and your payability date occurs after you have reached age 62, but before you become eligible for the COLA described above, your retirement allowance payments will be subject to a cost-of-living increase or decrease based on changes in the CPI.

The following conditions apply:

- If your payability date occurs after you reach your 65th birthday, your payments will be adjusted by 3% or the change in the CPI, whichever change is smaller. This adjustment is known as the full escalation (or de-escalation) rate. In any case, your benefit will not be reduced below the amount of your initial payment at retirement.
- If your payability date occurs on or after your 62nd birthday, but before your 65th birthday, the full escalation (or de-escalation) rate for your payments will be reduced by 1/36 for each month that your payability date precedes your 65th birthday.
- If you defer commencement of your retirement allowance payments beyond the date you are eligible to receive immediate payments, your benefits will be subject to the full escalation (or de-escalation) rate until the date your payments commence.

Once you become eligible for the COLA, your retirement allowance payments will be increased by the higher of the COLA or the Tier III cost-of-living plan.

*This publication should not be solely relied upon, as it is based on currently available information that is subject to change. In all cases, the specific provisions of the governing laws, rules, and regulations prevail.*

This page intentionally left blank.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELSA GULINO, MAYLING RALPH, PETER WILDS, and NIA GREENE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,<br><br>Defendant. | 96 Civ. 8414 (KMW) |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR MAURICE OPARAJI**

## I. PROCEDURAL HISTORY — MAURICE OPARAJI

A. As contemplated by the scheduling order in this case, on May 28, 2020, Plaintiffs' counsel ("Plaintiffs") submitted Maurice Oparaji's demand for damages (the "Demand") to the Board of Education of the City School District of the City of New York ("BOE" or "Defendant").[1] The Demand articulated the evidentiary basis for Mr. Oparaji's backpay damages, with and without interest; Mr. Oparaji's LAST-fee damages, with and without interest; Mr. Oparaji's tax-component award; and Mr. Oparaji's Cumulative Absence Reserve ("CAR") day damages.[2] The Court has previously found, and Defendant has not objected to the finding, that class members are entitled to pension-related relief based on their counterfactual service and salary histories, as determined pursuant to the procedures set forth in the Pension Stipulation & Order.[3] Because pension-related relief is determined pursuant to the Pension Stipulation & Order, the Demand did not detail the scope or the amounts of Mr. Oparaji's pension-related relief.

[1] Maurice Oparaji Individual Pre-Hearing Damages Chart, dated May 28, 2020, attached as Exhibit D ("M. Oparaji Demand").

[2] *Id.*

[3] *See* Classwide Conclusions of Law, [ECF No. 1008]; *see also* Pension Stipulation & Order, [ECF No. 1014]; *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, Opinion and Order, 1:96-cv-08414, [ECF No. 800] ("[T]he parties agree that class members are entitled to the lost pensions they would have received absent the discriminatory LAST.").

B. Mr. Oparaji's Demand did not seek to modify the Court-ordered backpay damages model.[4]

C. In total, Mr. Oparaji's Demand sought $37,338 in monetary damages, as of his presumed date of judgment of December 31, 2020.[5] The Demand noted that Mr. Oparaji's total monetary relief is subject to change based on Mr. Oparaji's actual date of judgment.[6]

D. On June 11, 2020, Defendant responded to Mr. Oparaji's Demand (the "Response").[7] Defendant objected that Mr. Oparaji was not entitled to damages other than the LAST fees.[8]

E. On July 9, 2020, Defendant withdrew its objection to Mr. Oparaji's Demand.[9]

F. During a conference held by the Special Master on July 23, 2020, Defendant did not request a hearing and did not contest Mr. Oparaji's credibility.[10]

G. Accordingly, the Special Master ruled that Mr. Oparaji satisfied his burden of proving that $37,338 is the appropriate total damages amount based on the evidence presented, as of his presumed date of judgment.[11] Mr. Oparaji's monetary damages continue to accrue through Mr. Oparaji's actual date of judgment.[12]

## II. FINDINGS OF FACT — MAURICE OPARAJI[13]

A. <u>Background</u>

1. Maurice Oparaji is an African-American man who was born on [redacted][14]

---

[4] *See* M. Oparaji Demand.

[5] *See id.*

[6] *See id.*

[7] Def.'s Responses & Objections to M. Oparaji Demand, attached as Exhibit E ("Def.'s Response").

[8] *See id.*

[9] *See* Maurice Oparaji Individual Final Damages Demand Chart, attached as Exhibit F ("M. Oparaji Final Demand").

[10] *See* July 23, 2020 Special Master Conference Summary, [ECF No. 6407].

[11] *See id.*; *see also* M. Oparaji Final Demand.

[12] The parties stipulate, without waiving any previous objections to the Special Master's prior rulings, that Exhibits A, B, and C set forth: (1) any agreed-upon corrections to Mr. Oparaji's damages calculations since the Special Master resolved his Demand, and (2) Mr. Oparaji's accrual of damages through his actual date of judgment.

[13] This section details the Special Master's findings of fact for Mr. Oparaji as of July 23, 2020, the date the Special Master resolved Mr. Oparaji's Demand.

[14] *See* M. Oparaji Demand.

2. Mr. Oparaji was employed by the BOE as a teacher after June 29, 1995.[15]

3. Mr. Oparaji failed the Liberal Arts and Sciences Test ("LAST").[16]

4. Because Mr. Oparaji failed the LAST, the BOE did not hire him for a regularly appointed teacher position.[17]

[15] *See* Stipulated Exhibit E, Classwide Exhibits referenced in the so-ordered Fifth Supplemental Stipulation Concerning Admissibility of Exhibits (the "Classwide Exhibits") at GULEX 1100.000001, [ECF No. 5942]; Stipulated Exhibit F, Classwide Exhibits at GULEX 1100.000002; Stipulated Exhibit G, Classwide Exhibits at GULEX 1200.000001; Stipulated Exhibit J, Classwide Exhibits at GULEX 1200.000002; Stipulated Exhibit K, Classwide Exhibits at GULEX 1200.000003; Stipulated Exhibit L, Classwide Exhibits at GULEX 1200.000004; Stipulated Exhibit R, Classwide Exhibits at GULEX 1200.000005; Stipulated Exhibit S, Classwide Exhibits at GULEX 1200.000006; Stipulated Exhibit AE, Classwide Exhibits at GULEX 1100.000006; Stipulated Exhibit AF, Classwide Exhibits at GULEX 1200.000013; Stipulated Exhibit AG, Classwide Exhibits at GULEX 1100.000007; Stipulated Exhibit AH, Classwide Exhibits at GULEX 1300.000015; Stipulated Exhibit AK, Classwide Exhibits at GULEX 1100.000008; Stipulated Exhibit AL, Classwide Exhibits at GULEX 1100.000009; Stipulated Exhibit AM, Classwide Exhibits at GULEX 1100.000010; Stipulated Exhibit AN, Classwide Exhibits at GULEX 1100.000011; Stipulated Exhibit AP, Classwide Exhibits at GULEX 1300.000016; Stipulated Exhibit AQ, Classwide Exhibits at GULEX 1100.000013; Stipulated Exhibit AR, Classwide Exhibits at GULEX 1100.000014; Stipulated Exhibit AS, Classwide Exhibits at GULEX 1100.000015; Stipulated Exhibit AT, Classwide Exhibits at GULEX 1100.000016; Stipulated Exhibit AU, Classwide Exhibits at GULEX 1300.000017; Stipulated Exhibit AX, Classwide Exhibits at GULEX 1100.000017; Stipulated Exhibit AV, Classwide Exhibits at GULEX 1200.000014; Stipulated Exhibit AW, Classwide Exhibits at GULEX 1200.000015; Stipulated Exhibit AY, Classwide Exhibits at GULEX 1100.000018; Stipulated Exhibit AZ, Classwide Exhibits at GULEX 1100.000019; Stipulated Exhibit BA, Classwide Exhibits at GULEX 1100.000020; Stipulated Exhibit BC, Classwide Exhibits at GULEX 1100.000021; Stipulated Exhibit BD, Classwide Exhibits at GULEX 1200.000016; Stipulated Exhibit BE, Classwide Exhibits at GULEX 1300.000018; Stipulated Exhibit BF, Classwide Exhibits at GULEX 1100.000022; Stipulated Exhibit BG, Classwide Exhibits at GULEX 1100.000023; Stipulated Exhibit BH, Classwide Exhibits at GULEX 1200.000017; Stipulated Exhibit BI, Classwide Exhibits at GULEX 1100.000024; Stipulated Exhibit BJ, Classwide Exhibits at GULEX 1300.000019; Stipulated Exhibit BS, Classwide Exhibits at GULEX 1200.000018; Stipulated Exhibit BT, Classwide Exhibits at GULEX 1200.000019; Stipulated Exhibit BU, Classwide Exhibits at GULEX 1100.000025; Stipulated Exhibit BV, Classwide Exhibits at GULEX 1100.000026; Stipulated Exhibit BW, Classwide Exhibits at GULEX 1100.000027; Stipulated Exhibit BX, Classwide Exhibits at GULEX 1300.000020; Stipulated Exhibit BY, Classwide Exhibits at GULEX 1200.000020; Stipulated Exhibit BZ, Classwide Exhibits at GULEX 1100.000028; Stipulated Exhibit CA, Classwide Exhibits at GULEX 1100.000029; Stipulated Exhibit CB, Classwide Exhibits at GULEX 1200.000021; Stipulated Exhibit CD, Classwide Exhibits at GULEX 1300.000021; Stipulated Exhibit CE, Classwide Exhibits at GULEX 1100.000030; Stipulated Exhibit CF, Classwide Exhibits at GULEX 1200.000022; Stipulated Exhibit CG, Classwide Exhibits at GULEX 1300.000022; Stipulated Exhibit CH; Classwide Exhibits at GULEX 1100.000031; Stipulated Exhibit CK, Classwide Exhibit at GULEX 1100.000032; Stipulated Exhibit CL, Classwide Exhibit at GULEX 1100.000033; Stipulated Exhibit CM, Classwide Exhibit at GULEX 1200.000024; Stipulated Exhibit CN, Classwide Exhibit at GULEX 1300.000023; Stipulated Exhibit CO, Classwide Exhibit at GULEX 1200.000025; Stipulated Exhibit CP, Classwide Exhibit at GULEX 1200.000026; Stipulated Exhibit UU, Classwide Exhibits at GULEX 1200.000007; Stipulated Exhibit VV, Classwide Exhibits at GULEX 1200.000008; Stipulated Exhibit WW, Classwide Exhibits at GULEX 1200.000009; Stipulated Exhibit XX, Classwide Exhibits at GULEX 1200.000010; Stipulated Exhibit YY, Classwide Exhibits at GULEX 1200.000011; Stipulated Exhibit ZZ, Classwide Exhibits at GULEX 1200.000012 (collectively, "BOE Payroll and Service Data").

[16] *See* Stipulated Exhibit EE, Classwide Exhibits at GULEX 1400.000001.

[17] *See* BOE Payroll and Service Data.

B. Class Membership

1. Mr. Oparaji is an African-American man who was employed as a New York City public school teacher by the BOE, after June 29, 1995, who failed to achieve a qualifying score on an administration of the LAST, and as a result was denied a permanent teaching appointment.

2. Mr. Oparaji submitted a claim form in this case and is a member of the Plaintiff class.

3. Accordingly, Mr. Oparaji is entitled to monetary relief from the BOE as compensation for the injuries he suffered as a result of the BOE's discrimination.[18]

C. Calculation of Backpay

The series of collective bargaining agreements between the BOE and the United Federation of Teachers ("UFT") that govern the salary and benefits for New York City public school teachers (collectively, the "CBA") provide that regularly appointed teachers with different educational credentials are paid at different levels.[19] The CBA also provides that a regularly appointed teacher's salary increases at regular intervals according to the CBA salary table, which also provides for various longevity bonuses and other incentives.

Based on the tables in the CBA and the evidence presented, determining what Mr. Oparaji's salary would have been absent the BOE's discrimination depends on this Court's determination of when he would have been appointed as a regularly appointed teacher for the BOE, how long he would have worked as a regularly appointed teacher, and the educational advancement he would have achieved absent the discrimination.[20]

1. *Counterfactual Appointment Date/Beginning of Damages Accrual Period*

a) The parties agree, based on the Special Master's prior rulings and without waiving their prior objections to those rulings, that:

---

[18] *See Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, Opinion and Order, 1:96-cv-08414, [ECF No. 321]; *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, Opinion and Order, 1:96-cv-08414, [ECF No. 386].

[19] *See, e.g.*, Appendix A to October 16, 1995-November 15, 2000 Collective Bargaining Agreement, Stipulated Exhibit T, Classwide Exhibits at GULEX 1600.000193-200; Stipulated Exhibit U, Classwide Exhibits at GULEX 1300.000006-13.

[20] *See Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, Opinion and Order, 1:96-cv-08414 at 10, [ECF No. 800] (adopting the Special Master's June 13, 2016 Interim Report and Recommendation, at 11, [ECF No. 777]); *see, e.g.*, Stipulated Exhibit T, Classwide Exhibits at GULEX 1600.000193-200; Stipulated Exhibit U, Classwide Exhibits at GULEX 1300.000006-13.

(1) Absent the BOE's discrimination, Mr. Oparaji would have been appointed as a regularly appointed teacher in April 1998; and

(2) Mr. Oparaji is eligible to accrue backpay damages beginning in April 1998.

b) Based on the evidence presented and the parties' agreement, the Court finds that Mr. Oparaji's counterfactual appointment date is April 1998, and Mr. Oparaji is eligible to accrue backpay damages beginning in April 1998.

2. *Counterfactual Salary-Step Advancement*

a) The parties agree, based on the Special Master's prior rulings and without waiving their prior objections to those rulings, that:

(1) Mr. Oparaji's Counterfactual Monthly Earnings on Exhibit A accurately reflect what Mr. Oparaji's salary-step advancement would have been, pursuant to the CBA, absent the BOE's discrimination; and

(2) Mr. Oparaji's Counterfactual Monthly Earnings on Exhibit A accurately reflect the longevity bonuses to which Mr. Oparaji would have been entitled, pursuant to the CBA, absent the BOE's discrimination.

b) Based on the evidence presented and the parties' agreement, the Court finds that Mr. Oparaji's Counterfactual Monthly Earnings on Exhibit A accurately reflect Mr. Oparaji's counterfactual salary-step advancement and counterfactual longevity bonuses.

3. *Counterfactual Educational Advancement*

a) The parties agree, based on the Special Master's prior rulings and without waiving their prior objections to those rulings, that Mr. Oparaji's Counterfactual Monthly Earnings on Exhibit A accurately reflect the educational advancement Mr. Oparaji would have achieved absent the BOE's discrimination.

b) Based on the evidence presented and the parties' agreement, the Court finds that Mr. Oparaji's Counterfactual Monthly Earnings on Exhibit A accurately reflect Mr. Oparaji's counterfactual educational advancement.

4. *Backpay Damages End Date*

a) The parties agree, based on the Special Master's prior rulings and without waiving their prior objections to those rulings, that:

(1) Absent the BOE's discrimination, Mr. Oparaji would have worked as a regularly appointed teacher until February 16, 2001; and

(2) Mr. Oparaji's backpay damages should not be reduced by a probability of pre-retirement attrition and he should receive full backpay damages until February 16, 2001.

b) Based on the evidence presented and the parties' agreement, the Court finds that Mr. Oparaji would have worked as a regularly appointed teacher until February 16, 2001, and his backpay damages should not be reduced by a probability of pre-retirement attrition.

5. *Counterfactual Earnings*

a) The parties agree, based on the Special Master's prior rulings and without waiving their prior objections to those rulings, that Mr. Oparaji's monthly BOE earnings as a regularly appointed teacher, absent the BOE's discrimination, would have been as listed in the column entitled Counterfactual Monthly Earnings on Exhibit A.

b) Based on the evidence presented and the parties' agreement, the Court finds that, absent the BOE's discrimination, Mr. Oparaji's counterfactual BOE earnings would have been as listed in Counterfactual Monthly Earnings on Exhibit A. The Court also finds that Mr. Oparaji's counterfactual annual BOE salary would have been as listed in the column entitled Annual Salary on Exhibit B.

6. *Additional Earnings*

a) The parties agree, based on the Special Master's prior rulings and without waiving their prior objections to those rulings, that absent the BOE's requirement that its teachers pass the LAST to be eligible to work in various job titles, Mr. Oparaji would have earned monetary compensation in addition to the base salary set forth in the CBA ("Additional Earnings").[21]

[21] These Additional Earnings derive from the average additional compensation regularly appointed BOE teachers earned during the damages period. *See* Stipulated Exhibit H, Classwide Exhibits at GULEX 1100.000003; *see also* Stipulated Exhibit AD, Classwide Exhibits at GULEX 1100.000005.

b) Based on the evidence presented and the parties' agreement, the Court finds that, absent the BOE's discrimination, Mr. Oparaji's Additional Earnings are accurately accounted for in the calculation of his Monthly Mitigation on Exhibit A.[22]

7. *Mitigation*

a) The parties agree, based on the Special Master's prior rulings and without waiving their prior objections to those rulings, that Mr. Oparaji's monthly mitigation during each month of the damages period was as listed in the column entitled Monthly Mitigation on Exhibit A.

b) Based on the evidence presented and the parties' agreement, the Court finds that Mr. Oparaji's monthly mitigation during each month of the damages period was as listed in the column entitled Monthly Mitigation on Exhibit A.

8. *Backpay Damages*

a) The parties agree, based on the Special Master's prior rulings and without waiving their prior objections to those rulings, that Mr. Oparaji is entitled to the monthly backpay damages listed in the column entitled Monthly Damages on Exhibit A.

b) Based on the evidence presented and the parties' agreement, the Court finds that Mr. Oparaji is entitled to the monthly backpay damages listed in the column entitled Monthly Damages on Exhibit A.

D. <u>LAST Fee Damages</u>

*LAST fees* — Mr. Oparaji took the LAST six times and is entitled to $420 to compensate him for the fees he paid to take the LAST.[23]

E. <u>Pension Damages</u>

The Court has previously found, and Defendant has not objected to the finding, that class members are entitled to pension-related relief based on their

[22] Additional Earnings are applied on a pro rata basis for the time periods when Mr. Oparaji was not employed by the BOE and his Social Security earnings are used to calculate his monthly mitigation, as detailed in Section II(C)(7) herein.

[23] *See* Stipulated Exhibit FF, Classwide Exhibits at GULEX 1500.000001-63; *see also* Stipulated Exhibit EE, Classwide Exhibits at GULEX 1400.000001.

counterfactual service and salary histories, as determined pursuant to the procedures set forth in the Pension Stipulation & Order.[24]

Based on the evidence presented, and pursuant to the procedures set forth in the Pension Stipulation & Order, the Court finds that the following information regarding Mr. Oparaji should be imported into the Teachers' Retirement System of the City of New York ("TRS"):

1. Date of Birth — [redacted]

2. Gender — Male

3. Address [redacted]

4. Counterfactual date of appointment as a regularly appointed teacher — April 26, 1998

5. BOE Employment Title — As listed in column entitled Title on Exhibit B

6. Annual contractual salary — As listed in column entitled Annual Salary on Exhibit B

7. Monthly contractual salary — As listed in column entitled Counterfactual Monthly Earnings on Exhibit A

8. Dates of breaks in service (if any) — N/A

9. Termination of regularly appointed teacher service (if any) — February 16, 2001

10. Retirement date (if any) — November 14, 2012

F. Retroactive Seniority Adjustment

1. The Court finds, and Defendant does not object to the finding, that Mr. Oparaji was denied seniority as a result of the BOE's discrimination.[25] Accordingly, the Court finds that Mr. Oparaji is entitled to the seniority he was denied from April 26, 1998 through February 16, 2001 ("Retroactive Seniority").

---

[24] *See* Classwide Conclusions of Law, [ECF No. 1008]; *see also* Pension Stipulation & Order, [ECF No. 1014]; *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, Opinion and Order, 1:96-cv-08414, [ECF No. 800] ("[T]he parties agree that class members are entitled to the lost pensions they would have received absent the discriminatory LAST.").

[25] *See* January 24, 2018 Special Master Conference Summary, Classwide Exhibits at GULCS 000380-387 ("The parties stated that they agree claimants will receive retroactive seniority with respect to salary-step advancement, longevity bonuses, accrual of years of service for pension, post-retirement health care benefits, accrual of CAR days, sabbatical leave rights, restoration of health leave rights, and hardship transfers.").

2. The Court finds that Mr. Oparaji is entitled to the following adjustments in the BOE's records to reflect his Retroactive Seniority:

   a) *CAR Days* — Mr. Oparaji should receive $430 in monetary damages for the CAR days he would have accrued as a regularly appointed BOE teacher during his counterfactual service period.

G. Tax-Component

The parties stipulate, without waiving any previous objections to the Special Master's prior rulings, that Mr. Oparaji is entitled to a tax-component award in the amount of $2,583.

Dated: October 27, 2020
New York, New York

# EXHIBIT

# A

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 1 of 52

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______
DATE FILED: 12/17/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELSA GULINO, MAYLING RALPH, PETER WILDS, and NIA GREENE, on behalf of themselves and all others similarly situated,

Plaintiffs,

- against -

THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,

Defendant.

96 Civ. 8414 (KMW)

**STIPULATION AND ORDER**

**WHEREAS:**

1. The Court in this Title VII class action has ordered that class members are entitled to pension damages to compensate them for pension benefits that they would have received absent the discrimination for which the Defendant Board of Education of the City School District of the City of New York ("BOE") has been found liable.[1] To facilitate the provision of these damages and benefits, the signatories agree to the following protocols and procedures. By agreeing to this Stipulation & Order, however, the BOE and Plaintiffs do not waive any other objections they have made to date in this action, or any rights related to those objections.

2. The New York City Teachers' Retirement System ("TRS"), the Board of Education Retirement System ("BERS"), and the New York City Employee Retirement System

[1] *See Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, No. 96-CV-8414 (KMW), 2016 WL 4129111, at *3 (S.D.N.Y. Aug. 3, 2016) ("[T]he parties agree that class members are entitled to the lost pensions they would have received absent the discriminatory LAST.").

("NYCERS")—public pension systems in which a portion of the plaintiff class are current or retired members—consent to those protocols and procedures detailed below that pertain to them.[2]

3. The pension relief a class member is entitled to receive as a result of this case derives from the service history he or she would have accrued and the salary he or she would have earned absent BOE discrimination (the "counterfactual" service and salary history), as determined by the parties' damages experts and found by the Court, as detailed in the class member's individual judgment award.

4. As described below, regularly appointed BOE Teachers who are members of TRS pursuant to Article 15 of the Retirement and Social Security Law ("RSSL"): (1) make contributions to, and accrue benefits from, the TRS Qualified Pension Plan ("QPP"); (2) select, or are mandated to join, supplementary early-retirement plans, depending on membership date; (3) select beneficiaries for certain benefits; and (4) upon retirement, select a retirement-payment option. Due to the BOE's discrimination, certain class members were denied the opportunity to accrue these benefits or make these selections, including class members who have passed away without having made selections.

Employee and Employer Contributions to TRS

5. BOE employees who join TRS are required to make certain employee contributions to TRS QPP accounts.

[2] TRS, BERS, and NYCERS are non-parties that have consented to the terms of this Stipulation & Order that pertain to them and for which consent has not been expressly withheld. TRS, BERS, and NYCERS have consented to these terms solely for the purpose of effectively administering the pension relief due to class members. TRS, BERS, and NYCERS were not parties to the discrimination for which the BOE has been found liable and take no position on the litigation.

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 3 of 52

a. BOE employees who joined TRS after August 31, 1983, but prior to April 1, 2012, are Tier IV members and contribute, generally on a pre-tax basis,[3] 3% of their BOE annual wages to TRS for the first ten (10) years of their credited service. Eligible Tier IV TRS members who opted into, or were mandated to enter, supplementary early-retirement plans make additional member contributions ("AMC"s) above this 3% contribution amount.

b. BOE employees who became TRS members on or after April 1, 2012, without prior public service entitling them to Tier IV membership, are Tier VI members and contribute between 3% and 6% of annual wages to their QPP accounts, depending on the amount of their wages, for the entirety of their credited service with TRS. Tier VI TRS members are not eligible for any supplementary early-retirement plans.[4]

6. In addition, the BOE makes actuarially determined contributions to TRS to fund the pension benefits that TRS members employed by the BOE accrue pursuant to the RSSL and other applicable law.

7. Class members who were unable to join TRS due to the BOE's discrimination will not have made any employee contributions to TRS.

8. Class members who were able to join TRS, and made employee contributions to their QPP accounts during their counterfactual service period, may have made contributions for fewer years and based on lower BOE salaries than would have been the case absent BOE discrimination. Consequently, when a class member's TRS QPP account is adjusted to reflect

---

[3] These contributions are pre-tax with respect to federal income taxes, but post-tax with respect to New York state and local income taxes. Wherever the phrases "pre-tax" or "post-tax" appear in this Stipulation & Order, they refer solely to the tax treatment of contributions under federal tax law.

[4] TRS members who do not participate in a supplementary early-retirement plan are referred to herein as "basic" members of Tier IV or Tier VI, and the contributions made and benefits received by these members are likewise referred to as "basic."

counterfactual-service-and-salary history, pursuant to the procedures set forth herein, there may be a deficit in historical employee contributions.

9. Class members who were able to join TRS during their counterfactual service period and made contributions to their QPP account during that period may have joined TRS as Tier VI members when they would have been Tier IV members absent BOE discrimination. As Tier VI members, these class members may have made contributions to TRS at rates that exceed Tier IV rates, and if these class members are reclassified as Tier IV members, there may be a surplus in employee contributions in their accounts.

Employee and Employer Contributions to Other Affected Retirement Systems

10. A number of class members, after suffering from BOE discrimination, obtained or maintained employment in positions that permitted or required participation in NYCERS or BERS. The protocol and procedures laid out in this Stipulation & Order afford these class members relief for the pension benefits they were denied, if any, due to BOE discrimination while allowing these class members to remain NYCERS or BERS members.

11. Members of NYCERS or BERS are required, upon joining, to make employee contributions to their pension accounts.[5] Specifically, all NYCERS or BERS members who joined the system on or after August 31, 1983, but prior to April 1, 2012, and are subject to Article 15 of the RSSL are Tier IV members and contribute, generally on a pre-tax basis, 3% of their annual wages to their retirement system for the first ten (10) years of their credited service. Under the RSSL, and to the extent these Tier IV NYCERS and BERS members do not participate in any

[5] New York City Police officers and firefighters are required to join, respectively, the New York City Police Pension Fund and the New York City Fire Department Pension Fund. To the extent class members participate in these funds and are eligible to receive a pension remedy pursuant to this Stipulation & Order, these pensions shall constitute "Outside Pensions," as that term is defined in Paragraph 43 of this Stipulation & Order, and the remedy available to these class members is set forth in Paragraph 61 of this Stipulation & Order.

supplementary early-retirement plan, as described below, the service-retirement benefits these members receive are identical to those of basic TRS Tier IV members.

12. All NYCERS or BERS members who joined the system on or after April 1, 2012, without prior public service entitling them to Tier IV membership, and who are subject to Article 15 of the RSSL, are Tier VI members and contribute between 3% and 6% of annual wages to their member accounts, depending on the amount of their wages, for the entirety of their credited service with the system. Under the RSSL, and to the extent these Tier VI NYCERS and BERS members do not participate in any supplementary early-retirement plan, as described below, the pension benefits these members receive are identical to those of basic TRS Tier VI members.[6]

13. As described below, eligible Tier IV and Tier VI members of NYCERS or BERS who opted into, or were mandated to enter, supplementary early-retirement plans make AMCs in addition to their basic employee contributions. The structure of some of these supplementary early-retirement plans, as set forth in the RSSL and described in Paragraph 27 of this Stipulation & Order, closely resembles that of the supplementary early-retirement plans available in TRS.[7]

14. Class members who were unable to join TRS due to BOE discrimination, but were able to secure positions resulting in membership in NYCERS or BERS may have made contributions, including AMCs, to NYCERS or BERS for fewer years and based on lower salaries than would have been the case absent BOE discrimination. Consequently, when these class members' accounts at their retirement system are adjusted to reflect counterfactual-service-and-salary history, pursuant to the procedures set forth herein, there may be a deficit in historical

[6] BERS and NYCERS members who do not participate in a supplementary early-retirement plan are referred to herein as "basic" members of BERS and NYCERS Tier IV or Tier VI plans, and the contributions made and benefits received by these members are likewise referred to as "basic."

[7] Certain other supplementary early-retirement plans administered by NYCERS and BERS do not closely resemble those available in TRS. These plans are described in Footnote 9 *infra*.

employee contributions. The deficit in historical AMCs may include amounts that these class members would not have paid as TRS members during the counterfactual service history, but that would have been required under the relevant NYCERS or BERS plans during that period of time if class members' counterfactual service is deemed to have been rendered in the positions that are the basis for their membership in NYCERS or BERS.

15. Class members who were able to join BERS or NYCERS during their counterfactual service period and made contributions to their member accounts during that period may have joined NYCERS or BERS as Tier VI members when they would have been Tier IV members absent BOE discrimination. As Tier VI members, they may have made contributions to NYCERS or BERS at rates that exceed Tier IV rates, and if these class members are reclassified as Tier IV members there may be a surplus in employee contributions in their accounts.

Interest Accrued on Employee Contributions

16. Ordinarily, when an account of a member of TRS, BERS, or NYCERS (collectively, the "Affected Systems") is adjusted to reflect additional past credited service, the member must pay employee contributions, including AMCs, attributable to that service, as well as interest on these delayed contributions. By law, interest on delayed employee contributions accrues at five percent (5%) per annum, compounded annually.

17. Because class members were either unable to participate in TRS or accrued reduced pension benefits due to BOE discrimination, when their Affected System accounts are created or adjusted to reflect counterfactual service and salary history, there will be statutory interest charges on the class members' delayed contributions that would not exist had the class members secured TRS-mandated positions with the BOE on their counterfactual appointment dates absent discrimination.

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 7 of 52

Tax Adjustment for Employee Contributions

18. As noted above, employee contributions to the Affected Systems that are attributable to ongoing employment are generally made pre-tax out of employees' paychecks in the normal course. Under the pension-relief structure described herein, however, class members will receive backpay awards from Defendant without historical-employee-pension contributions having been withheld and paid to TRS on a pre-tax basis. Class members who receive a pension remedy through one of the Affected Systems will then be required to pay employee contributions to the Affected System attributable to counterfactual service and salary out of their backpay awards. The employee contributions, having been paid to class members in backpay awards, will be taxed as ordinary income. Consequently, as a result of BOE discrimination, these class members will make contributions to the Affected Systems on a post-tax, rather than pre-tax, basis.

Supplementary Early-Retirement Plans in the Affected Systems

19. On February 27, 2008, Chapter 19 of the Laws of 2008 ("Chapter 19") amended the RSSL and the New York City Administrative Code to establish supplementary early-retirement programs to permit regularly appointed BOE teachers to retire prior to age 62.

20. Regularly appointed BOE teachers who were either: (a) in active service as of February 27, 2008; or (b) not in active service on February 27, 2008, but were entitled to a deferred vested benefit[8] based upon service rendered prior to that date and who returned to active service, were entitled to opt in to the "55/25 Plan." Under the 55/25 Plan, eligible TRS members who opted in to the program and paid AMCs, as set forth in the RSSL, could retire at age 55 if they have 25 or

[8] "Deferred vested" members of an Affected System are members not in active service, who have vested benefits, based upon credited service, and who will be eligible to receive a pension at normal retirement age. *See* RSSL § 612.

more years of credited service and would receive the same benefit as a basic Tier IV member retiring with the same amount of credited service at age 62.

21. Under Chapter 19, TRS members eligible to opt in to the 55/25 Plan had 180 days from the date of enactment to opt in to the 55/25 Plan (the "Enrollment Period"). Eligible members who did not elect to join the 55/25 Plan remained in the basic Tier IV plan, under which individuals could retire at age 62 provided that they had rendered at least 5 years of credited service, or at age 55 provided they had 30 or more years of credited service, without any reduction in benefits.

22. Regularly appointed BOE teachers who became members of TRS after February 27, 2008 and who had previously been members of a public retirement system of the State of New York prior to the enactment of Chapter 19, but were not eligible to receive a deferred vested benefit as a result of their service, were eligible to opt in to the "55/27 Plan." Under the 55/27 Plan, eligible TRS members who opted in to the program, and paid AMCs as provided in the RSSL, could retire at age 55 if they have 27 or more years of credited service and would receive the same benefit as a basic Tier IV member retiring with the same amount of credited service at age 62.

23. Under Chapter 19, regularly appointed BOE teachers eligible to opt in to the 55/27 Plan had 180 days from the date of returning to active service to opt in to the 55/27 Plan. Eligible members who did not elect to join the 55/27 Plan remained in the basic Tier IV plan.

24. Regularly appointed BOE teachers who joined TRS after February 27, 2008, but prior to April 1, 2012, and who had not previously been members of a public retirement system of the State of New York prior to the enactment of Chapter 19 were automatically enrolled into the 55/27 plan and were required to contribute AMCs as provided in the RSSL.

25. Many class members who would have been regularly appointed BOE teachers during the Enrollment Period absent the BOE's discrimination were either denied the opportunity

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 9 of 52

to enroll in the 55/25 or 55/27 Plans or made an election under circumstances that would not have existed absent the discrimination.

26. BERS administers 55/25 and 55/27 plans for certain BERS-eligible positions. Under the RSSL, these BERS 55/25 and 55/27 plans are substantially identical to the TRS 55/25 and 55/27 Plans.

27. NYCERS and BERS also administer similar supplementary early-retirement plans pursuant to Chapter 96 of the Laws of 1995 and other laws. In general, the statutory structure of these plans closely resembles that of the 55/25 and 55/27 Plans, insofar as members in an affected position upon the enactment of these plans were permitted to join these plans or remain basic Tier IV members if they declined to join these plans; members in affected positions who joined after the enactment date of the supplementary early-retirement plans were mandated to participate in these plans; and the plans provide that members must pay AMCs in exchange for the ability to retire prior to the standard Tier IV retirement age of 62 without any reduction in benefits, provided that specified age and service-credit requirements are met.[9] Hereinafter, these similar NYCERS and

[9] NYCERS and BERS also administer certain special plans—for sanitation workers, special officers, emergency medical technicians, and employees in certain designated "physically taxing" titles, for example—that require as a condition of the retirement benefit that the member render a specified period of service *in that specific title* and/or provide benefits that do not derive from the generally applicable Tier IV/VI benefit formula, and are therefore not comparable to the 55/27 and 55/25 Plans. To the extent class members participate in these special plans and are eligible to receive a pension remedy pursuant to this Stipulation & Order, such pensions shall constitute "Outside Pensions," as that term is defined in Paragraph 43 of this Stipulation & Order, and the remedy available to these class members is set forth in Paragraph 61 of this Stipulation & Order. NYCERS and BERS also administer similar special plans with respect to Tier VI members in particular titles and these plans likewise constitute "Outside Pensions" for purposes of this Stipulation & Order. In addition, certain claimants who are members of NYCERS or BERS may, by virtue of credited service in multiple positions and multiple retirement plans administered by their retirement system, be eligible for pensions consisting of a combination of benefits calculated under two or more such retirement plans. These multiple-benefit pensions also constitute "Outside Pensions" for purposes of this Stipulation & Order.

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 10 of 52

BERS supplementary early-retirement plans, along with the basic Tier IV and Tier VI NYCERS and BERS plans and the BERS 55/25 and 55/27 plans, are referred to as "Comparable Plans."[10]

Back-Pension Damages

28. Certain class members who were either never able to participate in TRS due to BOE discrimination, or whose credited service and final average salary, for purposes of the pensions they receive from an Affected System, are lower than they would have been absent BOE discrimination, have retired prior to entry of their individual judgments at or after reaching the normal retirement age required for retirement from an Affected System, or have reached such age since retiring.[11] Since retiring, these class members have either received no pension benefits or received lower monthly pension payments from an Affected System than they would have received based on their counterfactual-service-and-salary histories (the "Back-Pension Damages").

Death Benefits in the Affected Systems

29. When a member of an Affected System dies, either in active service; after separation from service, but before retirement; or following retirement, that member's estate, or beneficiaries

[10] As noted above, certain of the supplementary early-retirement plans available to Tier IV NYCERS and BERS members that constitute Comparable Plans are available to Tier VI members occupying the titles encompassed by the plan. *See*, e.g., RSSL § 604-g (concerning automotive workers). These Tier VI members pay the same AMCs as Tier IV participants in the supplementary early-retirement plan, but are otherwise subject to benefits alterations applicable to Tier VI members, such as changes in vesting periods, final average salary, and basic member contribution rates. These Tier VI supplementary early-retirement plans also constitute "Comparable Plans."

[11] The phrase "normal retirement age" refers to the age at which a member of TRS or an Affected System becomes eligible to retire and receive benefits on the basis of the age and service requirements of the retirement plan in which the member participates. For example, class members who are entitled to basic Tier IV benefits, the phrase "normal retirement age" refers to age 62, with at least five years of credited service. For class members who are entitled to basic Tier VI benefits, "normal retirement age" refers to age 63, with at least ten years of credited service. For class members who are entitled to benefits under the 55/25 Plan, "normal retirement age" refers to age 55, with at least 25 years of credited service. For class members who are entitled to benefits under the 55/27 Plan, "normal retirement age" refers to age 55, with at least 27 years of credited service. For members who have not satisfied these service requirements upon attaining the corresponding age requirements, "normal retirement age" refers to the age when the member will meet the applicable service requirement. With respect to disability retirees, as addressed in Paragraphs 39 and 60 below, "normal retirement age" refers to the date the member was retired for disability.

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 11 of 52

previously designated by the member, may be eligible to receive a lump-sum death benefit, as determined by law. For retired members, the death benefit also includes any portion of pension payments that may be payable for the month in which the member died (the "Fractional" benefit).

30. Members of an Affected System may designate one or more beneficiaries for the death benefit at any time.[12] If a member fails to designate a beneficiary for the death benefit or if all designated beneficiaries predecease the member, the benefit will be paid to the member's estate upon the member's death.

31. As noted above, certain class members who were denied the opportunity to participate in TRS have passed away. These class members' estates, or other potential beneficiaries, did not, therefore, receive the death benefit to which they would have been entitled absent BOE discrimination.

32. Certain other class members were able to become TRS members, or were able to attain positions that allowed them to become members of NYCERS or BERS, and then passed away either while in active service; after separation from service, but before retirement; or after retirement. These class members' designated beneficiaries, or the class members' estates if no beneficiaries had been designated, may have received lower death-benefit payments than they would have received absent the BOE's discrimination.

Election of a Retirement Payment Option at Retirement

33. Members of an Affected System generally file a retirement-application form to notify their system of their intent to retire and receive benefits. On this form, a member selects how the member's monthly pension payments will be distributed (the "Retirement Payment Option").

---

[12] NYCERS does not permit a member to designate a beneficiary for the portion of pension payments payable for the month in which a member dies. Such payments pass to the member's estate.

Case 1:96-cv-08414-KMW Document 998-1 Filed 11/28/18 Page 12 of 52

34. Members have a number of choices regarding the Retirement Payment Option. A member could elect one of the following:

a. The maximum monthly pension payments for the rest of his or her life, with no survivor benefits (the "Maximum Option");

b. Reduced monthly payments for the rest of his or her life, followed by ongoing payments for the life of a designated beneficiary after the member's death, provided the beneficiary is living at the time of the member's death (a "Joint and Survivor Option"). Members are permitted to designate a single beneficiary for a Joint and Survivor Option. If that beneficiary predeceases the member, there is no continuing payment after the member's death.[13]

c. Reduced monthly payments for the rest of his or her life, followed by a set number of monthly payments to one or more beneficiaries—in an amount necessary to guarantee either 60 or 120 total monthly payments to the member and all beneficiaries—in the event the member dies before 60 or 120 monthly payments are made (a "5/10 Year Certain Option"). Members who select a 5/10 Year Certain Option may name one or more primary beneficiaries and one or more contingent beneficiaries.[14] If the member dies before receiving the guaranteed number of monthly payments, the primary beneficiaries receive the remaining monthly payments in the proportion dictated by the member. If both the member and all primary beneficiaries die before receiving the specified number of monthly

[13] For this reason, there also exists a "pop-up" Joint and Survivor Option, whereby the member can revert to the maximum retirement allowance in the event the designated beneficiary predeceases the member.

[14] BERS does not permit a member who selects a 5/10 Year Certain Option to name multiple primary beneficiaries; BERS does permit these members to name multiple contingent beneficiaries.